# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
——————————————————————x

RONALD K. LINDE, *et al.,* Individually and on  :
Behalf of All Others Similarly Situated,        :     Case No. 1:16-cv-01941 (LAK)
                                                :
            **Plaintiffs,**                     :
                                                :
v.                                              :
                                                :
**FIFTH STREET ASSET MANAGEMENT**               :
**INC.,** *et al.,*                             :
                                                :
            **Defendants.**                     :
——————————————————————x

## STIPULATION OF SETTLEMENT

WHEREAS this putative securities class action (the "Action") was filed on January 7,

2016 against Defendants Fifth Street Asset Management Inc. ("FSAM"), Leonard M.

Tannenbaum, Bernard D. Berman, Alexander C. Frank, Steven M. Noreika, Wayne Cooper,

Mark J. Gordon, Thomas L. Harrison, and Frank C. Meyer (collective, the "Defendants") on

behalf of all persons and entities that had purchased FSAM common stock in or traceable to

FSAM's initial public offering (the "IPO"), alleging violations of the Securities Act of 1933 (the

"Securities Act"); and

WHEREAS, on April 22, 2016, the Court appointed Kieran and Susan Duffy as Lead

Plaintiffs ("Plaintiffs") and their counsel Glancy Prongay & Murray LLP as lead counsel ("Lead

Counsel") (*Linde* dkt. #35); and

WHEREAS, after conducting a thorough investigation of their claims and consulting with

appropriate experts, Plaintiffs filed their Amended Class Action Complaint (the "Complaint")

(dkt. #42) on June 13, 2016 on behalf of a putative class consisting of all persons and/or entities

who had purchased or otherwise acquired FSAM common stock issued pursuant or traceable to the Registration Statement and Prospectus issued in connection with FSAM's IPO; and

WHEREAS Lead Counsel and Defendants' counsel participated in a three-day mediation on June 15-17, 2016 (the "Mediation") with retired California Superior Court Judge Daniel Weinstein (the "Mediator"); and

WHEREAS, before the Mediation, Lead Counsel received approximately 5,300 pages of internal FSAM and/or Fifth Street Finance Corp. ("FSC") documents as well as all applicable insurance policies from Defendants; and

WHEREAS, before the Mediation, Lead Counsel also attended a two-day presentation on June 6-7, 2016 by Defendants' counsel to Lead Counsel, the Mediator, and counsel for plaintiffs in a securities class action against FSC and in shareholder derivative actions on behalf of FSC, which presentation was designed to enable Plaintiffs, Lead Counsel, and other counsel representing FSC shareholders to determine whether mediated discussions concerning potential settlements would be appropriate and fruitful (the "Pre-Mediation Presentation"); and

WHEREAS, during the Pre-Mediation Presentation, Defendants' counsel presented detailed factual information concerning, among other things, the events and circumstances relating to the principal allegations in the Complaint, as developed from Defendants' counsel's review of databases containing many millions of pages of internal FSAM and/or FSC documents and records, including internal emails, Board of Directors and Audit Committee materials, and analyses prepared by independent third-party valuation firms; and

WHEREAS, following the Pre-Mediation Presentation and their review of the internal FSC and/or FSAM documents provided by Defendants; Plaintiffs and Lead Counsel agreed to move forward with the Mediation; and

2

WHEREAS, at the Mediation, Lead Counsel and Defendants' counsel reached an agreement in principle to recommend to their respective clients a proposed settlement of the Action (the "Settlement"), subject to (*i*) approval by FSAM's management and Board of Directors and by Plaintiffs, (*ii*) execution of a formal settlement agreement, (*iii*) execution of documents relating to the agreement between and among Defendants and their insurers, and (*iv*) approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and section 27 of the Securities Act; and

WHEREAS, subject to additional discovery as further described below, and based upon Plaintiffs' and Lead Counsel's current belief that the terms of this Settlement Agreement are fair, reasonable, and adequate, Lead Counsel and Defendants' counsel prepared the settlement documents and executed this Settlement Agreement; and

WHEREAS, because of the related nature of various pending matters, Plaintiffs and Defendants will endeavor to coordinate the implementation and administration of the settlement of this Action, the settlement of the securities class action brought against FSC (the "FSC Class Settlement"), and the settlement of the shareholder derivative actions brought on behalf of FSC (the "FSC Derivative Settlement"); *provided, however,* that the proposed Settlement of the Action is not contingent on either the FSC Class Settlement or the FSC Derivative Settlement, and the presentation of the Settlement to the Court presiding over the Action will not be unduly delayed by any coordination with the FSC Class Settlement or the FSC Derivative Settlement; and

WHEREAS, throughout the pendency of the Action and the settlement negotiations, Plaintiffs and Defendants have been advised by various consultants and experts, including

individuals with expertise in estimating potential damages in cases involving allegations of

securities-law violations, and by counsel competent in securities lawsuits such as the Action; and

WHEREAS, based on Lead Counsel's pre- and post-filing investigation and evaluation of

the facts and law relating to the claims alleged in the Action, Lead Counsel's consultation with

experts, the Pre-Mediation Presentation, the documents received before the Mediation, and the

additional discovery that will be conducted, Plaintiffs and Lead Counsel have agreed to settle the

Action pursuant to the terms of this Settlement Agreement after considering, among other things:

(*i*) the substantial benefits that the terms of the proposed Settlement would provide to Class

Members; (*ii*) the attendant risks of litigation, especially in complex actions such as this one, the

defenses available to Defendants, and the difficulties and delays inherent in such litigation;

(*iii*) the desirability of consummating the proposed Settlement promptly to provide effective

relief to Class Members; and (*iv*) Plaintiffs' and Lead Counsel's current belief, to be verified

through the additional discovery that they will conduct, that the proposed Settlement is fair,

reasonable, and adequate and in the best interests of the Class Members; and

WHEREAS Defendants expressly deny the wrongdoing alleged in the Action and do not

concede any wrongdoing or liability in connection with any facts or Claims that have been or

could have been alleged in the Action, but nevertheless consider it desirable for the Action to be

settled and dismissed because the proposed Settlement would, among other things:  (*i*) bring to

an end the substantial expense, burdens, and uncertainties associated with continued litigation of

the Claims asserted in this Action, (*ii*) finally put to rest those Claims and the underlying matters;

and (*iii*) confer substantial benefits upon Defendants, including the avoidance of further

disruption of the management and operation of FSAM's business due to the pendency and

defense of the Action; and

4

WHEREAS this Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed to be an admission by Defendants or the other Releasees, or any of them individually, of any wrongdoing or liability; and

WHEREAS, except as otherwise provided in this Settlement Agreement, this Agreement shall not be admissible in any judicial, administrative, or other proceeding or cause of action as an admission of liability or for any purpose other than to enforce the terms of this Settlement;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, including Plaintiffs (individually and in their representative capacity) and Defendants, by and through their duly authorized counsel, that the Action and the matters raised by it are hereby settled and compromised as to Defendants, that the Action will be dismissed on the merits and with prejudice as to Defendants, that the Released Plaintiffs' Claims will be released as to the Releasees, that the Released Defendants' Claims will be released as to the Releasors, and that the Defendants' Mutually Released Claims will be released as to the Defendants, all based upon the terms and conditions set forth in this Settlement Agreement (including the Release), subject to the Court's approval and such approval's becoming Final.

## I.    DEFINITIONS AND ADDITIONAL DISCOVERY

### A.    Definitions

As used in this Settlement Agreement, the following terms have the meanings set forth herein:

1.    "Action" means the putative securities class action originally filed on January 7, 2016 as *Linde v. Fifth Street Asset Management Inc.*, No. 3:16-cv-00025 (D. Conn.), and currently pending (after transfer pursuant to 28 U.S.C. § 1404(a)) in the United States

District Court for the Southern District of New York under the caption *Linde v. Fifth Street Asset Management Inc.,* No. 1:16-cv-01941 (LAK), including any other cases that might be consolidated into that action as of the Final Settlement Date.

2.     "Affiliate" or "Affiliated" means such persons or entities as are defined in sections 2(a)(2) and (3) of the Investment Company Act of 1940, 15 U.S.C. §§ 80a-2(a)(2), (3).

3.     "Attorneys' Fees and Expenses Application" means the motion for fees and expenses to be made by Lead Counsel pursuant to Section IX below.

4.     "Attorneys' Fees and Expenses Award" means the amount(s) that the Court awards to plaintiffs' counsel to compensate them for their fees and expenses in connection with investigating, prosecuting, and/or settling the Action, as provided in Section IX below.

5.     "Authorized Claimant" means a Class Member (or the representative of such Class Member, including agents, administrators, executors, heirs, predecessors, successors, Affiliates, or assigns) whose claim for recovery from the Settlement Fund has been allowed pursuant to the terms of the Settlement Agreement.

6.     "CAFA" means the Class Action Fairness Act of 2005.

7.     "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees, and losses whatsoever, whether in law, in admiralty, or in equity, and whether based on any U.S. federal or state or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known

or unknown, accrued or not accrued, existing now or to be created in the future, including Unknown Claims.

8.    "Claim Form" means the claim form, as approved by the Court, that will be provided to potential Class Members and pursuant to which such Class Members may submit claims for Settlement relief under the procedures set out in this Settlement Agreement.  The Claim Form shall be substantially in the form set out as Exhibit E.

9.    "Claims Administrator" means the third-party agent or administrator that the Court shall appoint in the Notice Order to provide notice to potential Class Members, distribute the Individual Notice, publish the Publication Notice, operate a settlement website, respond to potential Class Members' calls and e-mails, receive requests for exclusion, process, review, and make recommendations on claims for Settlement relief, administer and distribute the Net Settlement Fund in accordance with the terms of this Settlement Agreement, and otherwise administer the terms of this Settlement Agreement.  Plaintiffs and Lead Counsel shall select the Claims Administrator, subject to Court approval and to Defendants' consent, which shall not be unreasonably withheld.

10.    "Class" or "Class Members" means, for purposes of this Settlement, all persons and entities (or legal beneficiaries) who purchased or otherwise acquired FSAM common stock pursuant or traceable to the Registration Statement.  Excluded from the Class are:

a.    all Defendants; any other individuals who were officers or directors (as determined under section 16 of the Exchange Act) of FSAM between the date of the IPO and the Filing Date; Family Members of any of the foregoing, and their legal representatives, trustees, administrators, heirs, successors, or assigns; and any entity in which any Defendant had a Controlling Interest between the date of the IPO and the Filing Date;

7

b.      persons or entities who submit timely and valid requests for exclusion from the Class; and

c.      persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against the Releasees and released the Releasees from any further Claims concerning their purchase or other acquisition of FSAM common stock pursuant or traceable to the Registration Statement.

11.      "Complaint" means the Amended Class Action Complaint filed in the Action on June 13, 2016.

12.      "Complete Bar Order" means the bar order whose text is set forth in Subsection XI.C below.  The Complete Bar Order will be part of the proposed Final Order.

13.      "Confidentiality Agreement" means the Confidentiality Agreement in the form attached as Exhibit G, entered into by Plaintiffs and Defendants.

14.      "Control," "Controlling," or "Controlling Interest" means an interest within the meaning prescribed in section 2(a)(9) of the Investment Company Act of 1940, 15 U.S.C. § 80a-2(a)(9).

15.      "Court" means the United States District Court for the Southern District of New York.

16.      "Defendants" means FSAM, Leonard M. Tannenbaum, Bernard D. Berman, Alexander C. Frank, Steven M. Noreika, Wayne Cooper, Mark J. Gordon, Thomas L. Harrison, and Frank C. Meyer.

17.      "Defendants' Counsel" means the law firm of Proskauer Rose LLP.

18.      "Defendants' Mutually Released Claims" means each and every Claim arising out of or relating to any or all of the acts, failures to act, omissions, misrepresentations,

facts, events, matters, transactions, occurrences, or oral or written statements or representations on or before the Filing Date (including in the Registration Statement) that were or could have been alleged under the facts and circumstances pled in the Action (including in the Complaint and the original complaint filed in the Action), including the matters described in Subsections I.A.64.a-dd below; *provided, however,* that the term "Defendants' Mutually Released Claims" shall not apply to (*i*) any right to indemnification or advancement under any statute, charter, bylaw, or contract, (*ii*) any other contractual rights between or among Defendants, and (*iii*) any claims asserted in the FSC Derivative Actions.

19.   "Escrow Account" means the account described in Section II into which the Settlement Amount shall be paid, which account shall be treated for tax purposes as a Qualified Settlement Fund, as defined below.

20.   "Escrow Agent" means the individual or entity acting as escrow agent for the Escrow Account.  The Escrow Agent shall be selected by Lead Counsel upon approval by FSAM, which approval shall not be unreasonably withheld.  Lead Counsel, after consultation with FSAM, has selected Huntington Bank as Escrow Agent for the Settlement, subject to the terms of this Settlement Agreement, and FSAM has approved the selection.

21.   "Exchange Act" means the Securities Exchange Act of 1934, as amended.

22.   "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

23.   "Fairness Hearing" means the hearing at or after which the Court will be asked to make a decision, pursuant to Fed. R. Civ. P. 23, as to whether this Settlement Agreement is fair, reasonable, and adequate to settle the Class Members' Claims against

Defendants and the other Releasees and whether the Court should approve the proposed Settlement.

24. "Family Members" means an individual's father, mother, grandfather, grandmother, sister, brother, spouse/partner, son, and/or daughter, and any person living in or a member of an individual's household.

25. "Filing Date" means January 7, 2016.

26. "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

   a. if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired; or

   b. if any appeal is taken therefrom, on the date on which all appeals therefrom – including petitions for rehearing or reargument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and any related appeals or petitions, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the relevant order or judgment.

27. "Final Order" means the Order of Dismissal entered by the Court as contemplated in Section XI of this Settlement Agreement, which Order shall be substantially in the form set out as Exhibit B or such other form that the Court may enter where none of the Settling Parties elects to terminate the Settlement because of any variance from Exhibit B.

28. "Final Settlement Date" means the date on which the Final Order and the Judgment become Final.

29. "FSAM" means Fifth Street Asset Management Inc.

30.     "FSAM Releasees" means each and all of FSAM and any or all of its respective past or present parents, predecessors, successors, Affiliates, divisions, business units, and subsidiaries, and any other entities in which FSAM has a Controlling Interest or that have a Controlling Interest in it, including FSM, FSC CT, and Fifth Street Holdings LP.

31.     "FSC" means Fifth Street Finance Corp.

32.     "FSC Class Action" means the consolidated putative securities class action now pending as *In re Fifth Street Finance Corp. Securities Litigation*, No. 15-cv-7759 (LAK) (S.D.N.Y.).

33.     "FSC Class Settlement" means the settlement of the FSC Class Action.

34.     "FSC Complaint" means the Consolidated Amended Complaint filed on April 1, 2016 in the FSC Class Action.

35.     "FSC CT" means FSC CT LLC.

36.     "FSC Derivative Actions" means the consolidated actions captioned *In re Fifth Street Finance Corp. Shareholder Derivative Litigation*, No. 3:15-cv-01795 (D. Conn.), *In re Fifth Street Finance Corp. Shareholder Derivative Litigation*, No. FST-CV16-6027659-S (Conn. Super. Ct., Stamford/Norwalk), and *in re Fifth Street Finance Corp. Stockholder Litigation*, C.A. No. 12157-VCG (Del. Ch.).

37.     "FSC Derivative Settlement" means the settlement of the FSC Derivative Actions.

38.     "FSFR" means Fifth Street Senior Floating Rate Corp.

39.     "FSM" means Fifth Street Management LLC.

40.     "Individual Notice" means the notice described in Subsection III.A and the Notice Order, as approved by the Court, that Lead Counsel will cause the Claims

Administrator to disseminate to potential Class Members informing them of the proposed Settlement contemplated by this Settlement Agreement. The Individual Notice shall be substantially in the form set out in Exhibit D. The Claim Form will accompany the Individual Notice and will be included in mailings and distributions of the Individual Notice.

      41.    "Investment Decision" means any decision regarding an investment in FSAM common stock issued pursuant or traceable to the Registration Statement, including any decision to hold or retain such stock.

      42.    "IPO" means FSAM's initial public offering, which was announced on approximately October 29, 2014, and which closed on approximately November 4, 2014.

      43.    "ITP" means an independent third-party valuation firm.

      44.    "Judgment" means the Final Judgment entered by the Court as contemplated in Section XI of this Settlement Agreement, which judgment shall be substantially in the form set out as Exhibit C or such other form that the Court may enter where none of the Settling Parties elects to terminate the Settlement because of any variance from Exhibit C.

      45.    "Lead Counsel" means the law firm of Glancy Prongay & Murray LLP.

      46.    "Mediator" means retired California Superior Court Judge Daniel Weinstein or, if his services are further needed pursuant to the terms of this Settlement Agreement, but he is unavailable, someone of similar stature upon whom the Settling Parties agree.

      47.    "Net Settlement Fund" means the balance remaining in the Escrow Account (including any interest that has accrued, less Tax Expenses paid or owing) after payments of the Notice and Administrative Expenses and the Attorneys' Fees and Expenses Award pursuant to Sections III, IV, and IX below have been made.

48.     "Nominees" means brokerage firms, banks, and other institutions that hold FSAM securities in street name or other similar fashion for the benefit of other persons or entities.

49.     "Notice and Administrative Expenses" means all expenses associated with the administration of the Settlement contemplated by this Settlement Agreement, including the Claims Administrator's fees and expenses and all other fees and expenses associated with printing and sending the Individual Notice to potential Class Members, publishing the Publication Notice, assisting Class Members with filing Claim Forms, processing and providing recommendations on Claim Forms, maintaining the Escrow Account, responding to potential Class Members' calls and e-mails, operating a settlement website, and distributing the Net Settlement Fund; *provided, however*, that Notice and Administrative Expenses shall not include the Attorneys' Fees and Expenses Award or any costs and fees related to providing notice under CAFA.

50.     "Notice Hearing" means the hearing at or after which the Court provisionally certifies the Class for settlement purposes and authorizes the issuance of notice to potential Class Members.

51.     "Notice Order" means the order to be entered by the Court (*i*) provisionally certifying the Class solely for settlement purposes, (*ii*) appointing the Claims Administrator, (*iii*) approving the Notice Program and preliminarily determining that the proposed provision of notice to potential members of the Class pursuant to the Notice Program meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, the PSLRA, the Constitution of the United States, and any other applicable law, and that such notice is the best practicable notice under the circumstances and constitutes due and sufficient notice to all persons

13

and entities entitled to such notice, (*iv*) preliminarily enjoining Class Members, and anyone

purporting to represent or to pursue claims on behalf of Class Members, from commencing,

prosecuting, intervening in, or participating in any claims or causes of action relating to the

Action or the Released Plaintiffs' Claims, (*v*) preliminarily enjoining Defendants, and anyone

purporting to represent or to pursue claims on behalf of Defendants, from commencing,

prosecuting, intervening in, or participating in any claims or causes of action relating to the

Action or the Defendants' Mutually Released Claims, and (*vi*) scheduling the Fairness Hearing.

The Notice Order shall be substantially in the form set out in Exhibit A.

52.     "Notice Program" means the program for informing potential Class

Members about the proposed Settlement, including the Individual Notice, the Publication Notice,

and the manner of delivering and publishing such notices.

53.     "PIK" means payment in kind.

54.     "Plaintiffs" means lead plaintiffs Kieran and Susan Duffy, in their

individual capacity and as representatives of the Class.

55.     "Plan of Allocation" means the terms and procedures for allocating the

Net Settlement Fund among, and distributing the Net Settlement Fund to, Authorized Claimants,

or such other Plan of Allocation as the Court shall approve.

56.     "Pre-Mediation Presentation" means the two-day presentation on June 6-7,

2016 by Defendants' Counsel and others to Lead Counsel, the Mediator, and counsel for

plaintiffs in the FSC Class Action and the FSC Derivative Actions that was designed to lay the

foundation for whether mediated discussions concerning potential settlements would be

appropriate and fruitful.  The Pre-Mediation Presentation involved the presentation of detailed

factual information concerning, among other matters, the events and circumstances relating to

the principal allegations in the Complaint, as developed from Defendants' counsel's review of databases containing many millions of pages of internal FSAM and/or FSC documents and records, including internal emails, Board of Directors and Audit Committee materials, and analyses prepared by ITPs. Defendants' Counsel also discussed the applicable insurance coverage.

57.     "PSLRA" means the Private Securities Litigation Reform Act of 1995, as codified in the Securities Act and the Exchange Act.

58.     "PSLRA Contribution Bar Order" means the Order, the text of which is set forth in Subsection XI.B below, to be entered by the Court pursuant to § 11(f) of the Securities Act and § 21D(f)(7)(A) of the Exchange Act (15 U.S.C. § 78u-4(f)(7)(A)). The PSLRA Contribution Bar Order will be part of the proposed Final Order.

59.     "Publication Notice" means the notice that is described in Subsection III.B and that shall be substantially in the form set out as Exhibit F.

60.     "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulation § 1.468B-1. The Escrow Account shall be treated for tax purposes as a Qualified Settlement Fund under this Settlement Agreement.

61.     "Registration Statement" means the Registration Statement and Prospectus (including all drafts and amendments) issued in connection with FSAM's IPO.

62.     "Releases" means the release provisions set out in Section VIII.A below.

63.     "Released Defendants' Claims" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee, including any Defendant or the successors and assigns of any Defendant, against Plaintiffs, any other Class Members, or their attorneys (including Lead Counsel), that arises out

of or relates in any way to the institution, prosecution, or settlement of the Action, except for claims to enforce the Settlement.

64.     "Released Plaintiffs' Claims" means each and every Claim that Plaintiffs or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in any complaint filed in the Action or in any action consolidated into it) or (*ii*) could have asserted or could assert against any of the Releasees in connection with the facts and circumstances alleged in the Action, whether arising under any federal, state, or other statutory or common-law rule, in any court, tribunal, agency, or other forum, that both (A) arises out of or relates to the purchase or other acquisition, on or before the Filing Date, of FSAM common stock issued pursuant or traceable to the Registration Statement, or any other Investment Decision concerning those securities on or before the Filing Date, and (B) relates directly or indirectly to the matters described in Subsections I.A.64.a-dd below and/or any alleged statements about or characterizations of – or alleged failures to disclose information about – any of those matters (including in connection with the Registration Statement), including with respect to both Subsections I.A.64(i) and (ii):

a.     the valuation and management of FSC's investments, including the approach used in calculating the fair values of investments and the inputs used, assumptions made, and comparables and quotations relied upon, the quality checks that were conducted regarding valuation calculations, documentation concerning valuation decisions and calculations, decisions whether to write down or impair FSC's investments and the timing and amount of any investment write-downs, decisions whether to place investments on non-accrual status, decisions whether to obtain ITP valuations for particular investments, the selection of ITPs to perform such valuations, and the timing of ITP valuations of FSC's investments;

b.      the origination of investments for FSC's portfolio, including FSC's communications with and due diligence on investment sponsors, FSC's pre-investment due diligence and underwriting, the approval process for investments, and the structuring, negotiation, documentation, pricing, and terms of FSC's investments;

c.      FSC's risk management, including FSC's investment approach, the selection of its individual investments, creditor protections negotiated in connection with those investments, underwriting policies, the overall risk profile and credit quality of FSC's portfolio, and any characterizations or descriptions of those matters;

d.      FSC's leverage, including the aggregate amount of its indebtedness and the terms and structure of its various financing arrangements;

e.      the management of FSC's portfolio, including the processes used to manage the investments, the inputs into the Black Mountain platform regarding investments, the review, ranking, and rating of investments, and decisions to place investments on FSC's "Watchlist";

f.      waivers, amendments, and loan modifications effected regarding FSC's investments, including decisions regarding waivers of cash interest, conversion of loans to PIK interest, the modification of loan terms or interest rates, the provision of any additional financing to companies in which FSC had already made a debt or equity investment, the acquisition of control investments, or the sale, liquidation, or other disposal of investments;

g.      FSC's fair-value accounting and recognition of income, including its revenue recognition for original-issue discounts, accruals, accruals on contingent-payment debt instruments, PIK interest, loan-origination fee income, and other fee income;

17

h.      policies, processes, and procedures concerning the valuation of investments, portfolio management, revenue recognition, and disclosure, including FSC's Valuation Policy, Valuation Narrative, Portfolio Management Narrative, Revenue Recognition Narrative, and Disclosure Policy;

i.      decisions regarding FSC's dividends, including whether to pay dividends in any particular quarter, the amount of dividends to be paid, announcements of and statements regarding dividends, and the timing of dividend payments;

j.      FSC's investment-advisory arrangements with FSM and/or its Affiliates, including the services provided by FSM, all base, incentive, and other fees, costs, and expenses paid by FSC under the Investment Advisory Agreement ("IAA"), the provisions of the IAA, communications between FSC and its shareholders (including RiverNorth Capital Management LLC) regarding the IAA, and FSC's indemnity and advancement obligations to FSM or its Affiliates;

k.      FSC's administration arrangements with FSC CT and/or its Affiliates, including the services provided by FSC CT, all costs, fees, and expenses paid by FSC under the Administration Agreement with FSC CT, the provisions of the Administration Agreement, and FSC's indemnity and advancement obligations to FSC CT or its Affiliates;

l.      FSC's participation in investments in which other affiliates within the Fifth Street platform also participated, including the allocation of the investment participation among the various Fifth Street entities and implementation of the Investment Allocation Policy;

m.      FSC's participation in any agreements, ventures, partnerships, or any similar arrangements with any of its affiliates, including any alleged conflicts of interest and FSC's waiver of any alleged conflicts;

18

n.      FSC's partnership with Trinity Universal Insurance Company (a subsidiary of Kemper Corporation) to establish Senior Loan Fund JV 1, LLC ("SLF JV1"), and the financial performance and income generation of SLF JV1;

o.      FSC's September 26, 2013 follow-on offering of common stock, July 10, 2014 secondary offering of common stock, and September 2014 at-the-market offering of common stock, as well as any materials disseminated and statements made in connection with those offerings;

p.      accounting treatment relating to investments (including the recognition of revenue) and to fees paid to FSC's investment advisor and administrator;

q.      FSC's assets, asset quality, financial condition, revenues, income (including fee income, net investment income, and PIK income), expenses, earnings per share, and other financial metrics, and auditors' comments about FSC's financial condition;

r.      FSC's governance and internal controls, including any deficiencies and weaknesses in such controls;

s.      FSC's earnings announcements and other public statements about financial results on or before the Filing Date;

t.      FSFR's investment advisory agreements with FSM and/or its affiliates, including the services provided by FSM and/or its affiliates, all base, incentive, and other fees, costs, and expenses paid by FSFR under those agreements, and the provisions of those agreements;

u.      FSFR's August 19, 2014 follow-on offering of common stock, and any materials disseminated and statements made in connection with that offering;

19

        v.        FSAM's IPO, the offering's alleged impact on FSAM's, FSM's, and/or FSC CT's performance of services for FSC or FSFR, and the uses of the IPO proceeds;

        w.        FSAM's financial position and financial metrics, including assets under management, revenue, income, loan-origination income, receipt of management and advisory fees, and earnings per share;

        x.        FSAM's decisions regarding its dividends, including the amount of dividends to be paid and announcements of and statements regarding dividends;

        y.        FSAM's revenue-recognition practices and recognition of revenue from fees, loan originations, or other sources;

        z.        the membership of FSAM's Board of Directors and/or any Committees of its Board of Directors (including the Corporate Governance Committee);

        aa.        FSAM's governance, compliance procedures, and internal controls, including any deficiencies and weaknesses in such controls;

        bb.        FSAM's membership interest in and dealings with IMME LLC;

        cc.        FSAM's Registration Statement, earnings announcements, rescheduling of earnings announcements, and other public statements about financial results on or before the Filing Date; and

        dd.        Releasees' statements about, characterizations of, or alleged omissions concerning any or all of the above matters, including any alleged failures to comply with Item 303 of SEC Regulation S-K.

The term "Released Plaintiffs' Claims" also includes any Claim relating to the initiation, litigation, settlement, or dissemination of notice of the Action, including the payment of any settlement relief to settle the Action; *provided however*, that the term "Released Plaintiffs'

Claims" does not include any claims to enforce this Settlement Agreement or brought on behalf of FSC stock purchasers in the FSC Class Action.

65.     "Releasee" means each and every one of, and "Releasees" means all of, the following:

a.     Defendants and their Family Members, heirs, trustees, administrators, successors, representatives, agents, and assigns;

b.     Each and every entity that falls within the definition of FSAM Releasees; and

c.     Each of the FSAM Releasees' respective past and present directors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys (including in-house or outside attorneys (including Defendants' Counsel) employed or retained by the FSAM Releasees), advisors, investment bankers, trustees, administrators, fiduciaries, consultants, actuaries, representatives, accountants, accounting advisors, auditors, insurers, reinsurers, service providers, and valuation firms (including ITPs).

66.     "Releasor" means each and every one of, and "Releasors" means all of, (*i*) Plaintiffs, (*ii*) all other Class Members, (*iii*) their respective past or present parents, predecessors, successors, heirs, beneficiaries, representatives, agents, assigns, Affiliates, divisions, business units, subsidiaries, any entities in which any Releasor has or had a Controlling Interest or that has or had a Controlling Interest in him, her, or it, and any other person or entity claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Plaintiffs or any other Class Member, and (*iv*) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members,

21

partners, principals, agents, attorneys (including their General Counsel and other in-house or

outside attorneys), advisors, trustees, administrators, fiduciaries, consultants, service providers,

representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants,

accounting advisors, and auditors of any or all of the above persons or entities.

67.     "Securities Act" means the Securities Act of 1933, as amended.

68.     "Settlement" means the settlement contemplated by this Settlement

Agreement.

69.     "Settlement Agreement" means this Stipulation of Settlement and any

accompanying exhibits, including any subsequent amendments thereto and any exhibits to such

amendments.

70.     "Settlement Amount" means nine million two hundred and fifty thousand

United States dollars ($9,250,000.00).

71.     "Settlement Fund" means the Settlement Amount, plus accrued interest, if

any.

72.     "Settling Parties" means Plaintiffs (on behalf of themselves and the Class

Members) and Defendants.

73.     "Supplemental Agreement" means the separate agreement among the

Settling Parties concerning Defendants' right to terminate the Settlement based on exclusion

requests submitted by potential Class Members.  The Settling Parties agree to keep the

Supplemental Agreement confidential and not to disclose it or file it with the Court unless (*i*) the

Court otherwise orders or (*ii*) a dispute arises among the Settling Parties concerning that

agreement's interpretation or application.  If the Supplemental Agreement must be provided to

the Court, the Settling Parties shall seek leave to submit it *in camera* or to file it under seal.

74.     "Tax Expenses" means (*i*) all taxes on the income of the monies in the Escrow Account and (*ii*) any expenses and costs incurred in connection with the taxation of the Escrow Account (including expenses of tax attorneys and accountants).

75.     "Termination Threshold" means the threshold of exclusion requests (as specified in the Supplemental Agreement) that gives rise to Defendants' right to terminate the Settlement Agreement.

76.     "Unknown Claims" means any and all Released Plaintiffs' Claims that any Plaintiff or any other Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Releasees, and any Released Defendants' Claims or Defendants' Mutually Released Claims that any Defendant does not know or suspect to exist in his or its favor, which, if known by Plaintiffs, the other Class Members, or Defendants, might have affected his, her, its, or their decision(s) concerning the Settlement.  As to any and all Released Plaintiffs' Claims, Released Defendants' Claims, and Defendants' Mutually Released Claims, the Settling Parties stipulate and agree that, upon the Final Settlement Date, Plaintiffs and Defendants shall expressly waive, and each other Class Member, Releasor, and Releasee shall be deemed to have waived, and by operation of the Final Order and the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and Defendants acknowledge, and the other Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Plaintiffs' Claims, Released Defendants' Claims, and Defendants' Mutually Released Claims was separately bargained for and was a key element of the Settlement.

B.   **Capitalized Terms**

1.   Capitalized terms used in this Settlement Agreement, but not defined below, shall have the meaning ascribed to them in Subsection I.A, above.

C.   **Additional Discovery**

1.   Subject to the provisions of the Confidentiality Agreement, Plaintiffs (through Lead Counsel) will conduct additional reasonable discovery into the facts underlying the claims in the Complaint and the investigation being conducted pursuant to a formal order of the Securities and Exchange Commission (the "SEC") to explore whether the underlying facts are consistent with Plaintiffs' and Lead Counsel's current understanding that the proposed Settlement is fair, reasonable, and adequate.  The SEC's investigation relates to certain of the facts and circumstances that gave rise to the claims in the Complaint, including the placing of certain of FSC's assets on non-accrual status.

2.   Additional discovery, as determined by Plaintiffs, Lead Counsel, and FSAM, will begin after execution of the Settlement Agreement and will consist of providing Plaintiffs and Lead Counsel with documents that underlie the Pre-Mediation Presentation (including underlying emails obtained through search terms and custodians agreed to by counsel for the Settling Parties) and the SEC investigation and allowing Plaintiffs and Lead Counsel to conduct informal interviews of relevant FSC and FSAM officials.

3.      The additional discovery may be used solely for purposes of assessing the fairness, reasonableness, and adequacy of the proposed Settlement and for no other purpose whatsoever (including litigation of claims in the Action or in any other proceeding).

4.      The additional discovery contemplated by this Settlement Agreement shall be coordinated with additional discovery for the proposed settlements in the FSC Class Action and the FSC Derivative Actions (if such actions are settled) and shall be completed by August 30, 2016.  Additional discovery will be conducted solely by Plaintiffs and Lead Counsel if coordination with the proposed settlements in the FSC Class Action and the FSC Derivative Actions would unduly delay completion of the additional discovery in the Action beyond that date.

5.      The Confidentiality Agreement will govern any use of Settlement Information (as defined in the Confidentiality Order) in connection with the proposed Settlement and its potential presentation to the Court.

6.      Subject to Sections XII, XIV, and XV below, if the additional discovery contemplated by this Subsection I.C causes Plaintiffs and Lead Counsel reasonably and in good faith to believe that the proposed Settlement Agreement is not fair, reasonable, and adequate, they will have the right to terminate this Settlement Agreement within three (3) business days after the conclusion of the additional discovery.

## II.      TERMS AND CONDITIONS OF THE SETTLEMENT

### A.      Payment of Settlement Amount

1.      FSAM shall cause the Settlement Amount to be paid into the Escrow Account in two installments:  (*i*) $150,000 within ten (10) days after the motion for the Notice Order has been filed with the Court and (*ii*) the balance of the Settlement Amount within twenty

(20) business days after entry of the Notice Order.  If the Settlement Amount is not paid into the

Escrow Account within twenty (20) business days after entry of the Notice Order, Lead Counsel

shall notify Defendants' Counsel that the payment has not occurred, and FSAM shall have ten

(10) business days to obtain compliance with the obligation to pay the Settlement Amount into

the Escrow Account.  If payment has still not occurred after the additional period of ten (10)

business days, Plaintiffs may, subject to Section XV below, terminate this Settlement

Agreement.

        2.      The Settlement Amount shall be "non-recapture," meaning that no portion

of it shall revert to Defendants or any other payor if any money remains after the Settlement

becomes Final and effective pursuant to this Settlement Agreement and all claims, fees, and

expenses have been paid.

        3.      Neither Defendants nor any other payor of the Settlement Amount shall

have any legal or equitable interest in the funds in the Escrow Account unless and until an event

of termination occurs as provided in this Settlement Agreement, or the Settlement otherwise does

not become Final; *provided, however,* that, except as otherwise specified in Subsections II.B

through II.E below, Plaintiffs and FSAM shall have joint control over the Escrow Account until

the Final Settlement Date or the Settlement's termination, and Defendants shall be entitled in

accordance with the terms of the Settlement Agreement to monitor and approve expenses paid

from the Escrow Account before the Final Settlement Date or termination date.

      B.    **Escrow Agent**

        1.      The Escrow Agent shall (*i*) administer the Escrow Account, (*ii*) invest the

Settlement Amount, as directed by Lead Counsel, in instruments backed by the full faith and

credit of the United States Government or fully insured by the United States Government or an

agency thereof, and (*iii*) reinvest the proceeds of those instruments as they mature in similar instruments at their then-current market rates, as directed by Lead Counsel. The Escrow Account shall bear all risks related to investment of the amounts in the Escrow Account.

2.      The proceeds of the Escrow Account shall be disbursed only as provided in this Settlement Agreement, by an order of the Court, or, before the Final Settlement Date, with the written agreement of Defendants' Counsel and Lead Counsel; *provided, however*, that disbursements from the Escrow Account for the payment of Tax Expenses or Notice and Administrative Expenses, as set forth herein, shall be made by the Escrow Agent at the direction of Lead Counsel in accordance with the terms of this Settlement Agreement. After the Final Settlement Date, Lead Counsel shall have sole responsibility for the administration of the Escrow Account in accordance with the terms of this Settlement Agreement.

3.      After the Settlement Amount is deposited into the Escrow Account and before the Final Settlement Date, Lead Counsel may direct the Escrow Agent to pay from the Escrow Account all reasonable Notice and Administrative Expenses up to the sum of $150,000. Any expenditures exceeding $150,000 before the Final Settlement Date will be subject to agreement by Defendants' Counsel, which agreement shall not be unreasonably withheld. After the Final Settlement Date, Lead Counsel may direct the payment of any Notice and Administrative Expenses that Lead Counsel believes in its discretion are necessary and appropriate to carry out the terms of this Settlement Agreement.

4.      Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of this Settlement Agreement.

5.      The Settlement Fund and the Net Settlement Fund shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the Court's jurisdiction until such time as they shall be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

6.      Any dispute about the payment of expenses from the Escrow Account before the Final Settlement Date will be submitted to the Mediator for binding resolution.

C.      **Qualified Settlement Fund**

1.      All necessary steps to enable the Escrow Account to be treated as a Qualified Settlement Fund for tax purposes shall be taken, including the timely filing by Lead Counsel and/or its agents of all elections and statements required for tax purposes pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations, or published rulings now or hereafter enacted or promulgated, for all taxable years of the Escrow Account, beginning with the date of its establishment.  Lead Counsel shall be the "administrator" of the Qualified Settlement Fund for tax purposes under Treas. Reg. §§ 1468 B-0 through B-5, shall file or cause to be filed on a timely basis any required federal, state, and local tax returns, and shall cause any taxes due on the income of the Qualified Settlement Fund to be paid from the Escrow Account.  The Settling Parties agree that the Escrow Account shall be treated as a Qualified Settlement Fund, as provided in Treas. Reg. §§ 1.468B-0 through 1.468B-5, from the earliest date possible, and hereby agree to any relation-back election required to treat the Escrow Account as a Qualified Settlement Fund from the earliest date possible.  In no event shall Defendants or Defendants' Counsel have any responsibility whatsoever for filing elections, other required statements, or tax returns, or for paying the costs associated therewith, any taxes due on the income of the Qualified Settlement Fund, or the expenses of notice or administration of the

Escrow Account.  Lead Counsel and Defendants' Counsel shall cooperate to the extent necessary to comply with this Subsection II.C.  Upon request by Lead Counsel, FSAM shall promptly provide the statement described in Treasury Regulation § 1.468B-3(e).

        2.      Upon request by Defendants' Counsel, Lead Counsel shall promptly provide to Defendants' Counsel all information reasonably available to Lead Counsel and requested in connection with any tax returns that FSAM or any other Releasee must file or with any other report or filing that FSAM or any other Releasee must make concerning the Settlement Fund or any portion of it.

        D.     **Plan of Allocation**

        1.      If the proposed Settlement becomes Final, the Net Settlement Fund shall be distributed pursuant to such Plan of Allocation as the Court approves.  The Plan of Allocation is not a necessary term of this Settlement Agreement, and this Settlement Agreement is not conditioned on the approval of any particular plan of allocation.

        2.      No person or entity shall have any Claim against Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent, or any of their agents, or against any Releasee (including Defendants' Counsel), relating to or arising out of any distributions or lack thereof made under any Court-approved Plan of Allocation, this Settlement Agreement, or orders of the Court.

        3.      The Settling Parties understand and agree that, notwithstanding any other provision of this Settlement Agreement, a court-ordered or court-approved change to the Plan of Allocation shall not operate to modify, terminate, or cancel this Settlement Agreement or affect the finality of the Final Order and the Judgment or any other orders entered by the Court giving effect or pursuant to this Settlement Agreement.

4.      Development of the Plan of Allocation shall be exclusively the responsibility of Plaintiffs and Lead Counsel.  Defendants, the other Releasees, and their respective counsel, including Defendants' Counsel, shall have no role in, responsibility for, or liability as to or in connection with, and shall take no position on, (*i*) the Plan of Allocation, (*ii*) the form, substance, method, or manner of allocation, administration, or distribution of the Net Settlement Fund, (*iii*) any tax liability that a Class Member might incur as a result of this Settlement Agreement, or (*iv*) the administration or processing of claims (including determinations as to the validity of Claim Forms), the amounts of claims or distribution of the Net Settlement Fund, or (except as set out above) the maintenance of the Escrow Account as a Qualified Settlement Fund.

5.      Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of all Released Plaintiffs' Claims and only to the extent expressly provided by this Settlement Agreement, the Court-approved Plan of Allocation, or an order of the Court. Under no circumstances will any of the Settling Parties or any Releasee be responsible for the payment of any fees, costs, expenses, or other funds associated with or arising out of the Settlement contemplated by this Settlement Agreement other than as provided herein.

E.      **Distribution of Net Settlement Fund**

1.      All cash distributions to Authorized Claimants shall be paid from the Net Settlement Fund pursuant to a Plan of Allocation approved by the Court.

2.      To receive a cash distribution from the Net Settlement Fund pursuant to any approved Plan of Allocation, a Class Member must be an Authorized Claimant pursuant to the procedures set out in this Settlement Agreement or by order of the Court.

30

3.      Unless otherwise authorized by the Court, each Class Member who wishes to receive a distribution from the Net Settlement Fund must complete and submit a Claim Form, as directed in the Individual Notice or the Claim Form. The Claim Form must be postmarked no later than the date stated in the form, unless otherwise allowed by Lead Counsel or the Court, and must be sent to an address stated in the form.

4.      The Claim Form must be made subject to the penalties of perjury pursuant to 28 U.S.C. § 1746 and be supported by such documents and other information as called for in the Claim Form.

5.      The validity of each submitted Claim Form will initially be determined by the Claims Administrator in accordance with the Plan of Allocation approved by the Court and with this Settlement Agreement. The Claims Administrator shall advise the claimant in writing if it determines to reject the claim. Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive, in the interests of achieving substantial justice, what Lead Counsel deems to be formal or technical defects in any Claim Forms submitted. Lead Counsel, its designees or agents, Plaintiffs, Defendants' Counsel, Defendants, the other Releasees, and their counsel shall not have any liability arising out of any such determinations.

6.      If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must submit to the Claims Administrator, within the deadline set by the Claims Administrator, a notice and statement of reasons explaining the claimant's grounds for contesting the rejection, along with any supporting documentation. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court. The administration of the Escrow Account and the Settlement Fund, and decisions on all disputed questions of law and fact concerning the validity

of any Claim Form or regarding the rejection or amount of any claim, shall remain under the jurisdiction of the Court. All claimants and Settling Parties expressly waive trial by court or jury (to the extent any such right might exist) and any right of appeal or review as to the Court's determinations concerning any Claim Form. Any claimant pursuing a dispute shall be responsible for his, her, or its own costs, including attorneys' fees, incurred in pursuing the dispute.

7. The Net Settlement Fund shall not be distributed to Authorized Claimants until the Final Settlement Date has occurred.

8. Unless otherwise ordered by the Court or otherwise provided for herein, any Class Member who fails to submit a valid and timely Claim Form shall be barred from receiving a distribution from the Net Settlement Fund, but shall nevertheless be bound by the Release and all proceedings, orders, and judgments in the Action even if he, she, or it has pending, or subsequently initiates, any litigation, arbitration, or other proceeding, or has any Claim, against any or all of the Releasees that is a Released Plaintiffs' Claim.

9. To the extent that any monies remain in the Escrow Account after the Claims Administrator has caused an initial distribution to be made from the Net Settlement Fund to all Authorized Claimants, such monies shall be (*i*) used for the payment of any unpaid Notice and Administrative Expenses and the costs or fees to be incurred in a redistribution of the remaining funds and then (*ii*) distributed in an economical fashion to Authorized Claimants who have cashed their initial distribution checks. If any funds remain in the Escrow Account after such redistribution(s), or if any such redistribution is not economically feasible, the unpaid residue shall be given to a nonprofit organization to be designated by Plaintiffs and approved by the Court and by FSAM (whose approval will not be unreasonably withheld).

III.    **NOTICE TO THE CLASS**

    A.    **Individual Notice**

        1.    Subject to the requirements of the Notice Order, and in accordance with all applicable laws, Lead Counsel shall cause to be delivered a copy of the Individual Notice and the Claim Form by first-class mail to all potential Class Members who can be identified through reasonable efforts from FSAM's records, depositary institutions' records, and any other inquiries conducted by the Claims Administrator.  FSAM will provide its transfer agent's (or agents') list of record holders of FSAM stock through the Filing Date in electronic format (such as Excel) within five (5) business days after entry of the Notice Order, and at no cost to the Class.  The Claims Administrator will implement the mailing of the Individual Notice and the Claim Form.

        2.    The Individual Notice shall be mailed at least sixty (60) days before the deadline for objecting to the proposed Settlement.

        3.    If any Individual Notices are returned to the Claims Administrator with updated addresses, or if updated addresses are otherwise reasonably available, the Claims Administrator shall remail such notices to the updated addresses; *provided, however,* that, if the Claims Administrator does not obtain such updated addresses at least five business days before the date of the Fairness Hearing, no remailing shall be required.

        4.    Defendants' Counsel will provide Lead Counsel with the names and addresses of any investors who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against the Releasees and released the Releasees from any further Claims concerning their purchase or other acquisition of FSAM common stock pursuant or traceable to the Registration Statement.

5.      Notices also will be provided by FSAM to U.S. federal and state officials if and to the extent required by CAFA.  The Settling Parties shall request a schedule for the Fairness Hearing that allows for the notice period prescribed in CAFA.  CAFA notice shall be at FSAM's expense.

6.      The Claims Administrator will also post the Individual Notice on the Settlement website by no later than the date on which the first Individual Notices are mailed to potential Class Members.

B.      **Publication Notice**

1.      Subject to the requirements of the Notice Order, and in accordance with all applicable laws, Lead Counsel shall cause a copy of the Publication Notice to be published once each in *The Wall Street Journal* and in *Investor's Business Daily* as well as on PRNewswire.

2.      The Publication Notice shall be published within ten (10) days after the mailing date for the Individual Notice and at least fifty (50) days before the deadline for objecting to the proposed Settlement.

C.      **Notice Costs**

1.      All expenses incurred in connection with the provision of the Individual Notice and the publication of the Publication Notice will be paid from the Settlement Fund as Notice and Administrative Expenses.

IV.     **APPOINTMENT OF CLAIMS ADMINISTRATOR**

A.      As provided in the Notice Order, the Claims Administrator shall be appointed to help implement the Settlement contemplated by this Settlement Agreement.

B.      The Claims Administrator shall perform various tasks as directed by Lead Counsel, including:  (*i*) distributing the Individual Notice to potential Class Members; (*ii*) arranging for publication of the Publication Notice; (*iii*) publishing the Individual Notice and other documents about the Action on a website for the Settlement; (*iv*)  operating a toll-free telephone number with access to operators to answer inquiries from potential Class Members and/or to forward such inquiries to Lead Counsel; (*v*) training staff members and operators to be knowledgeable about the proposed Settlement and the Plan of Allocation; (*vi*) responding to written inquiries from potential Class Members and/or forwarding such inquiries to Lead Counsel; (*vii*) providing additional copies of the Individual Notice, upon request, to Nominees or potential Class Members; (*viii*) receiving and maintaining any potential Class Members' requests for exclusion from the Settlement; (*ix*) receiving, processing, and making recommendations about Claim Forms; (*x*) mailing or causing to be mailed to Authorized Claimants their distributions under the Plan of Allocation; and (*xi*) otherwise administering and implementing this Settlement Agreement.

C.      All Notice and Administrative Expenses, including the Claims Administrator's fees and expenses, will be paid from the Settlement Fund.

## V.      RIGHT TO COMMUNICATE WITH CLASS MEMBERS

A.      Plaintiffs acknowledge and agree that FSAM maintains the right to communicate orally and in writing with its shareholders (including potential Class Members).  To the extent that any such communications relate to the Action or the proposed Settlement, such communications shall be limited to the following:

1.      Communications between potential Class Members and representatives of the Releasees whose responsibilities include investor relations;

2.     Communications as may be necessary to implement the terms of this Settlement Agreement; and

3.     Such communications as may be made in the conduct of Releasees' business, including complying with any applicable NASDAQ requirements.

B.     Subject to Subsection XV.C below, the Settling Parties, Lead Counsel, and Defendants' Counsel agree in good faith to ensure that any comments about or descriptions of the proposed Settlement are balanced, fair, accurate, and nondisparaging.  The Settling Parties, Lead Counsel, and Defendants' Counsel agree that they will refrain from asserting that the Action was brought or defended in bad faith.  Except as provided in the Individual Notice and the Publication Notice, or as permitted by Sections IV, V, and XV.C, the Settling Parties, Lead Counsel, and Defendants' Counsel agree that none of them will comment publicly on the merits of the Claims or defenses asserted in the Action except in the most general terms in the context of supporting or commending the proposed Settlement.

## VI.    REQUESTS FOR EXCLUSION

A.     Any potential Class Member who wishes to be excluded from the Class must mail by first-class mail or otherwise deliver a written request for exclusion to the Claims Administrator, at the address provided in the Individual Notice or the Publication Notice.  Exclusion requests must be received no later than twenty-one (21) days before the Fairness Hearing, or as the Court may otherwise direct.  A list of the persons and entities who have validly and timely requested exclusion from the Class shall be provided by the Settling Parties to the Court at or before the Fairness Hearing.

B.     A potential Class Member's request for exclusion must include the following information:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) e-mail address, if available,

(*v*) number of shares of FSAM common stock purchased or otherwise acquired pursuant or traceable to the Registration Statement, and any sales of such common stock, on or before the Filing Date, (*vi*) price(s) paid or value at receipt, and, if sold, the sales price(s), and (*vii*) the date of each such transaction involving each share of FSAM common stock.

C.     Any potential Class Member who does not submit a timely written request for exclusion as provided by this Section VI shall be bound by the Release and by all proceedings, orders, and judgments in the Action, even if he, she, or it has pending or subsequently initiates litigation, arbitration, or any other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Released Plaintiffs' Claims.

D.     Plaintiffs agree that they will not exclude themselves from the Class or the Settlement.

## VII.   OBJECTIONS TO SETTLEMENT

A.     Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the proposed Settlement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, or to the Attorneys' Fees and Expenses Application must both serve on Lead Counsel and Defendants' Counsel and file with the Court a statement of his, her, or its objection(s); *provided, however*, that a potential Class Member who requests exclusion from the Class shall not be entitled to submit an objection. Any such objection must be received by Lead Counsel, Defendants' Counsel, and the Court by no later than twenty-one (21) days before the Fairness Hearing, or as the Court may otherwise direct.

B.     The Class Member's statement of objection shall state the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such

objection.  Any objection must also include the following information about the Class Member: (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) e-mail address, if available, (*v*) number of shares of FSAM common stock purchased or otherwise acquired pursuant or traceable to the Registration Statement, and any sales of such common stock, on or before the Filing Date, (*vi*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*vii*) the date of each transaction involving each share of FSAM common stock, and (*viii*) account statements verifying all such transactions.

   C. Any Class Member may file an objection on his, her, or its own, or through an attorney hired at his, her, or its own expense.  If a Class Member hires an attorney to represent him, her, or it in connection with filing an objection, the attorney must both serve on Lead Counsel and Defendants' Counsel and file with the Court a notice of appearance.  Any such notice of appearance must be received by Lead Counsel, Defendants' Counsel, and the Court by the date on which objections to the Settlement are due, or as the Court otherwise may direct.

   D. A Class Member who files and serves a written objection pursuant to this Section VII may appear at the Fairness Hearing, either in person or through counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of the proposed Settlement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, or to the Attorneys' Fees and Expenses Application; *provided* that any such Class Member or his, her, or its attorney intending to make an appearance at the Fairness Hearing must both serve on Lead Counsel and Defendants' Counsel and file with the Court a notice of appearance.  Any such notice must be received by Lead Counsel, Defendants' Counsel, and the Court by the date on which objections to the Settlement are due, or as the Court otherwise may direct.

E.      Any Class Member who fails to comply with any of the provisions of this

Section VII shall waive and forfeit any and all rights he, she, or it might otherwise have to appear

separately at the Fairness Hearing and/or to object to this Settlement Agreement, the Plan of

Allocation, or the Attorneys' Fees and Expenses Application, and shall be bound by all the terms

of this Settlement Agreement and by all proceedings, orders, and judgments in the Action.

## VIII.   RELEASE AND WAIVER, AND ORDER OF DISMISSAL

### A.      Release and Waiver

1.      Pursuant to the Final Order and the Judgment, without further action by

anyone, and whether or not a Claim Form has been executed and/or delivered by or on behalf of

any such Class Member, and subject to Subsection VIII.A.5 below, on and after the Final

Settlement Date, Plaintiffs and all other Class Members, on behalf of themselves and the other

Releasors, for good and sufficient consideration, shall be deemed to have, and by operation of

law and of the Final Order and the Judgment shall have, fully, finally, and forever released,

relinquished, settled, and discharged:

a.      all Released Plaintiffs' Claims against each and every one of the

Releasees;

b.      all Claims, damages, and liabilities as to each and every one of the

Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or

all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written

statements or representations in connection with, or directly or indirectly relating to, (*i*) the

prosecution, defense, or settlement of the Action, (*ii*) the facts and circumstances of this

Settlement Agreement, the Settlement terms, and their implementation, (*iii*) the provision of

notice in connection with the proposed Settlement, and/or (*iv*) the resolution of any Claim Forms submitted in connection with the Settlement; and

    c. all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Lead Counsel or any other counsel representing Plaintiffs or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its settlement, except to the extent otherwise specified in this Settlement Agreement.

    2. Pursuant to the Final Order and the Judgment, without further action by anyone, and subject to Subsection VIII.A.5 below, on and after the Final Settlement Date, each and all Releasees, including Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged each and all Releasors, as well as Lead Counsel, from any and all Released Defendants' Claims, except to the extent otherwise specified in this Settlement Agreement.

    3. Pursuant to the Final Order and the Judgment, without further action by anyone, and subject to Subsection VIII.A.5 below, on and after the Final Settlement Date, Plaintiffs and their counsel (including Lead Counsel), on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants' Counsel and all other Releasees from

any and all Claims that relate in any way to any and all acts directly or indirectly relating to the prosecution, defense, or settlement of the Action or to this Settlement Agreement, except to the extent otherwise specified in this Settlement Agreement.

        4.    Pursuant to the Final Order and the Judgment, without further action by anyone, and subject to Subsection VIII.A.5 below, on and after the Final Settlement Date, Defendants, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged each other from any and all Defendants' Mutually Released Claims.

        5.    Notwithstanding Subsections VIII.A.1 through VIII.A.4 above, nothing in the Final Order or the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of this Settlement Agreement, the Final Order, or the Judgment.

        6.    The releases and waivers contained in this Section VIII were separately bargained for and are essential elements of this Settlement Agreement.

    B.    **Final Judgment and Order of Dismissal**

        1.    The Settling Parties will seek and obtain from the Court a Final Order and a Judgment as further described in Section XI below.

## IX.   ATTORNEYS' FEES AND EXPENSES

    A.    Lead Counsel may apply for an award of attorneys' fees and expenses at or after the Fairness Hearing, and Plaintiffs may also apply for reimbursement of their time and expenses, including lost wages.

B.      Subject to Subsections IX.C through IX.E, below, and subject to the Court's specific approval, the requested attorneys' fees and expenses shall be paid to Lead Counsel from the Escrow Account within ten (10) business days after the Court issues the Notice Order; *provided, however*, that such payment shall be subject to Lead Counsel's obligation to make appropriate repayment to the Escrow Account (plus interest calculated at the same net rate as earned by the balance of the Escrow Account, such calculation to begin as of the day the attorneys' fees and expenses were paid and to end as of the day the repayment is made pursuant to this Subsection IX.B) within ten (10) business days if (*i*) the proposed Settlement is terminated, is not approved, or does not become Final pursuant to the terms of this Settlement Agreement, (*ii*) the Court does not award the full amount of attorneys' fees and expenses actually paid to Lead Counsel pursuant to this Subsection IX.B, or (*iii*) as a result of any reconsideration proceedings, appellate review, and/or further proceedings on remand, the Attorneys' Fees and Expenses Award is reduced or reversed.

C.      As a condition of receiving a distribution of attorneys' fees and expenses, Lead Counsel shall provide appropriate security to ensure any necessary repayment of the attorneys' fees and expenses (plus interest).  Such security shall consist of a personal note issued by Lead Counsel, on behalf of itself and each of its partners, members, and/or shareholders.

D.      Lead Counsel, on behalf of itself and each of its partners, members, and/or shareholders, further agrees that the law firm and its partners, members, and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the obligations in this Section IX and that the Court may, upon application and notice, summarily issue orders against Lead Counsel if it fails to make any required repayment.

E.      No Releasee shall be liable or obligated to pay any fees, expenses, costs, or

disbursements to, or incur any expense on behalf of, any person or entity (including Plaintiffs

and Lead Counsel), directly or indirectly, in connection with the Action or this Settlement

Agreement, except as expressly provided for in this Settlement Agreement.

F.      No Releasee shall have any responsibility whatsoever in connection with the

allocation of the attorneys' fees and expenses or the Attorneys' Fees and Expenses Award

between or among Plaintiffs' counsel, any other counsel purporting to represent any Class

Member, or any other counsel asserting a right to receive a portion of the Attorneys' Fees and

Expenses Award or any other amount of attorneys' fees or expenses in connection with this

Action.

## X.      NOTICE HEARING AND NOTICE ORDER

A.      Lead Counsel and Defendants' Counsel shall jointly apply to the Court for

entry of a Notice Order substantially in the form annexed hereto as Exhibit A no later

than twenty (20) days following completion of the additional discovery described above.

The Notice Order shall contain, among other provisions, a preliminary injunction

providing that:

1.      Plaintiffs and all other Class Members (and their heirs, executors,

administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who

have not validly and timely requested exclusion from the Class – and anyone else purporting to

act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are

preliminarily enjoined from filing, commencing, prosecuting, intervening in, participating in (as

class members or otherwise), or receiving any benefits or other relief from any other lawsuit,

arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint

43

in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating in any way to the Released Plaintiffs' Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Action;

        2.      All persons are preliminarily enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Class Members as to the Releasees, if such other lawsuit is based on or related in any way to the Released Plaintiffs' Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Action; and

        3.      All Defendants, and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities, are preliminarily enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Defendants' Mutually Released Claims or the Released Defendants' Claims.

        B.      Plaintiffs and Defendants stipulate to the certification of the Class and certification of Plaintiffs as representative of the Class solely for the purpose of this proposed Settlement.  If the proposed Settlement is not approved by the Court or is not consummated for any other reason, Defendants reserve the right to oppose certification of the Class, or any other class, and to oppose certification or appointment of Plaintiffs as representative of and Lead Counsel as counsel for the Class, or any other class, in the Action.

## XI.    FINAL APPROVAL AND FINAL JUDGMENT

A.    If the Court approves the Settlement contemplated by this Settlement Agreement, Lead Counsel and Defendants' Counsel shall jointly request that the Court enter a Final Order and a Judgment substantially in the forms annexed hereto as Exhibits B and C.  The Final Order and the Judgment shall include, among other provisions, a permanent injunction providing that:

1.    Plaintiffs and all other Class Members (and their heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating in any way to the Released Plaintiffs' Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Action;

2.    All persons are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Class Members as to the Releasees, if such other lawsuit is based on or related in any way to the Released Plaintiffs' Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Action; and

45

3.      All Defendants, and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities, are permanently enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Defendants' Mutually Released Claims or the Released Defendants' Claims.

B.      The Settling Parties shall request that the Court enter a PSLRA Contribution Bar Order in the Final Order as follows:  To the extent authorized by § 11 of the Securities Act, and in accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all Claims for contribution arising out of any Released Plaintiffs' Claim (*i*) by any person or entity against any of the Releasees and (*ii*) by any of the Releasees against any person or entity other than as set out in 15 U.S.C. § 78u-4(f)(7)(A)(ii) are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable.  Accordingly, without limitation to any of the above, (*i*) any person or entity is hereby permanently enjoined from commencing, prosecuting, or asserting against any of the Releasees any such Claim for contribution, and (*ii*) the Releasees are hereby permanently enjoined from commencing, prosecuting, or asserting against any person or entity any such Claim for contribution.  In accordance with 15 U.S.C. § 78u-4(f)(7)(B), any final verdict or judgment that might be obtained by or on behalf of the Class or a Class Member against any person or entity for loss for which such person or entity and any Releasees are found to be jointly liable shall be reduced by the greater of (*i*) an amount that corresponds to Defendants' percentage of responsibility for the loss to the Class or Class Member or (*ii*) either (a) the Settlement Amount, in the case of the Class, or (b) that portion of the Settlement Amount applicable to the Class Member, in the case of a Class Member, unless the court entering such judgment orders otherwise.

C.      The Settling Parties shall also request that the Court enter a Complete Bar Order in the Final Order.  The Complete Bar Order shall provide as follows:

1.      Any and all persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract or for misrepresentation, where the Claim is or arises from a Released Plaintiffs' Claim and the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Class or any Class Member, including any Claim in which a person or entity seeks to recover from any of the Releasees (*i*) any amounts that such person or entity has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions of this Subsection XI.C are intended to preclude any liability of any of the Releasees to any person or entity for indemnification, contribution, or otherwise on any Claim that is or arises from a Released Plaintiffs' Claim and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Class or any Class Member; *provided, however,* that if the Class or any Class Member obtains any judgment against any such person or entity based upon, arising out of, or relating to any Released Plaintiffs' Claim for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (*i*) an amount that corresponds to such Releasee's or Releasees' percentage of responsibility for the loss to the Class or Class Member or (*ii*) either (a) the Settlement Amount,

in the case of the Class, or (b) that portion of the Settlement Amount applicable to the Class Member, in the case of a Class Member, unless the court entering such judgment orders otherwise.

2.      Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including any other Releasee) arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract and for misrepresentation, where the Claim is or arises from a Released Plaintiffs' Claim and the alleged injury to such Releasee arises from that Releasee's alleged liability to the Class or any Class Member, including any Claim in which any Releasee seeks to recover from any person or entity (including another Releasee) (*i*) any amounts that any such Releasee has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

3.      Each and every Defendant is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other Defendant arising under any federal, state, or foreign statutory or common-law rule, however styled, where the Claim is or arises from a Defendants' Mutually Released Claim.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

4.      Notwithstanding anything stated in the Complete Bar Order, if any person or entity (for purposes of this Subsection XI.C.4, a "petitioner") commences against any of the Releasees any action either (*i*) asserting a Claim that is or arises from a Released Plaintiffs'

Claim and where the alleged injury to such petitioner arises from that petitioner's alleged liability to the Class or any Class Member or (*ii*) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such action or Claim is not barred by a court pursuant to this Subsection XI.C or is otherwise not barred by the Complete Bar Order, neither the Complete Bar Order nor the Settlement Agreement shall bar Claims by that Releasee against (*a*) such petitioner, (*b*) any person or entity who is or was controlled by, controlling, or under common control with the petitioner, whose assets or estate are or were controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*c*) any person or entity that participated with any of the preceding persons or entities described in items (*a*) and (*b*) of this Subsection XI.C.4 in connection with the assertion of the Claim brought against the Releasee(s); *provided, however,* that nothing in the Complete Bar Order or Settlement Agreement shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement.

5.     Plaintiffs and the Class Members will use reasonable efforts, in settling with any other person or entity any Claim based upon, arising out of, or relating to the Action or any of the Released Plaintiffs' Claims that the person or entity might have against any of the Releasees, to obtain from such person or entity a release of any and all such Claims.

6.     If any term of the Complete Bar Order entered by the Court is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Plaintiffs' Claim or any Defendants' Mutually Released Claim, as applicable.

49

7.      Notwithstanding the Complete Bar Order or anything else in the Settlement Agreement, nothing shall release, interfere with, limit, or bar the assertion by any Releasee of (*i*) any Claim for insurance coverage under any insurance, reinsurance, or indemnity policy that provides coverage respecting the conduct at issue in the Action or (*ii*) any contractual right to indemnification or advancement as against any other Releasee, or (*iii*) any contractual right as against any other Releasee.

D.      The Judgment will contain a statement that, during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

## XII.   MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT

A.      The terms and provisions of this Settlement Agreement may not be altered or modified except by a written instrument executed by counsel for each of the Settling Parties. Additionally, after entry of the Final Order and the Judgment, Lead Counsel (on behalf of Plaintiffs and the Class) and Defendants' Counsel (on behalf of Defendants) may by written agreement effect any amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits to this Settlement Agreement) without notice to or approval by the Court if such changes are not materially inconsistent with the Court's Final Order and Judgment and do not materially limit the rights of Class Members under this Settlement Agreement.

B.      Subject to Sections XIII through XV below, this Settlement Agreement will terminate at the sole option and discretion of Defendants' Counsel (on behalf of Defendants) and/or Lead Counsel (on behalf of Plaintiffs and the Class) if (*i*) the Court, or any appellate court, rejects, modifies, or denies approval of any portion of this Settlement Agreement or the

proposed Settlement that the terminating Settling Party reasonably and in good faith determines is material, including the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class, the Complete Bar Order, the permanent injunction, and/or the terms of the Release, or (*ii*) the Court, or any appellate court, does not enter or completely affirm, or alters or expands, any portion of the Notice Order, the Final Order, or the Judgment that the terminating Settling Party reasonably and in good faith believes is material.  If the Settling Parties disagree about whether a change is material, they will submit the dispute to the Mediator for a final and binding decision.  In any of the above circumstances, the terminating Settling Party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section XII, no later than thirty (30) days after receiving actual notice of the event prompting the termination by providing written notice of its election to do so through counsel listed in Section XV.L.1, below.

C.      Notwithstanding the preceding Subsection XII.B, neither Plaintiffs nor Lead Counsel may terminate this Settlement Agreement on the basis of the Attorneys' Fees and Expenses Award ordered by the Court, or as modified by any appellate court.

## XIII.   DEFENDANTS' TERMINATION RIGHTS

A.      Without limiting any other rights under this Settlement Agreement, by no later than five (5) days before the Fairness Hearing, Defendants may unilaterally and in their sole discretion withdraw from and terminate this Settlement Agreement if valid and timely requests for exclusion are received from potential Class Members in an amount that meets or exceeds the Termination Threshold set forth in the Supplemental Agreement.

B.      The Claims Administrator shall promptly notify Lead Counsel and Defendants' Counsel of all requests for exclusion submitted by potential Class Members and shall also

51

provide Lead Counsel and Defendants' Counsel with copies of any such requests for exclusion and the supporting information and documentation submitted by such persons or entities.

C.     Lead Counsel may attempt to cause retraction of any exclusion requests submitted by potential Class Members.  If Lead Counsel succeeds in causing the retraction (within the time period for such retractions specified in the next sentence) of sufficient requests for exclusion such that the remaining requests for exclusion do not exceed the Termination Threshold, then Defendants' notice of withdrawal from the Settlement shall automatically be deemed a nullity. To retract a prior request for exclusion, a potential Class Member (either individually or through Lead Counsel) must provide to Defendants' Counsel, at least five business days before the Fairness Hearing, or any adjournment thereof, a written notice signed by or on behalf of the potential Class Member stating his, her, or its desire to retract the request for exclusion from the Class.

D.     If Defendants elect to terminate the Settlement Agreement in accordance with this Section XIII, and if such termination is not nullified in accordance with Subsection XIII.C, the Settlement Agreement shall be withdrawn from, terminated, and deemed null and void, and the provisions of Section XV of the Settlement Agreement shall apply.

## XIV. PLAINTIFFS' TERMINATION RIGHTS

A.     In addition to having the right to terminate this Settlement Agreement as provided in Subsection II.A and Section XII above, Plaintiffs may terminate this Settlement Agreement if, within three (3) business days following the completion of the additional discovery described above, Plaintiffs and Lead Counsel reasonably and in good faith believe that the proposed Settlement set forth in this Agreement is not fair, reasonable, or adequate.

B.     Plaintiffs may also terminate this Settlement Agreement if one or more of the Defendants files for bankruptcy protection and a court orders that some portion of the Settlement Amount be returned to Defendants or their representatives; *provided, however,* that the remaining Defendants shall be given a period of twenty (20) business days to reimburse Plaintiffs and the Class for any portion of the Settlement Amount that a court has ordered to be returned.  If Plaintiffs and the Class are compensated for that amount, the Settlement Agreement shall not terminate pursuant to this Subsection.

C.     If Plaintiffs decide to terminate this Settlement Agreement pursuant to its terms, Plaintiffs must provide written notice of their election to do so to counsel listed in Subsection XV.L.1 below within fourteen (14) days after the terminating event, or such lesser period as provided for in this Agreement; *provided, however,* that, if Plaintiffs decide to terminate this Settlement Agreement pursuant to Subsection XIV.A (concerning termination after completion of additional discovery), the period of three business days specified in that Subsection shall apply.

**XV.    GENERAL MATTERS AND RESERVATIONS**

A.     If an option to withdraw from and terminate this Settlement Agreement arises under this Settlement Agreement, (*i*) neither Defendants nor Plaintiffs will be required for any reason or under any circumstance to exercise that option, and (*ii*) if Defendants or Plaintiffs exercise the option to withdraw from or terminate the Settlement, they shall exercise that option in good faith.

B.     If this Settlement Agreement does not become Final or is otherwise terminated pursuant to the terms hereof, or if the releases contemplated in Section VIII.A do not become effective, or if the Settlement otherwise does not become Final by operation of law, then:

53

1.      This Settlement Agreement shall be null and void and shall have no force or effect, and no party to this Settlement Agreement shall be bound by any of its terms, except for the terms set out in this Section XV;

2.      This Settlement Agreement, all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Defendants, Plaintiffs, or any other Class Members, all of whom shall be restored to their respective positions existing as of June 17, 2016, except with respect to:

    a.      the payment from the Settlement Fund of such Notice and Administrative Expenses and Tax Expenses as have been actually expended or incurred, regardless of amount, as described in Sections II and III above; and

    b.      the use of information obtained in the additional discovery, as described in Section I.C.3 above and in the Confidentiality Agreement (Exhibit G), whose terms shall continue to apply;

3.      Releasees and their current and former predecessors, successors, heirs, Affiliates, agents, attorneys, representatives, and assigns expressly and affirmatively reserve all defenses, arguments, and motions as to all Claims that have been or might later be asserted in the Action, including any argument that the Action may not be litigated as a class action;

4.      Plaintiffs and their current and former predecessors, successors, heirs, Affiliates, agents, attorneys, representatives, and assigns expressly and affirmatively reserve all motions as to, and arguments in support of, all Claims that have been or might later be asserted in the Action, including any argument concerning class certification;

5.      Neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence for any purpose whatsoever, with the exception of Subsection II.C and Sections XII, XIII, XIV, and XV;

6.      Within ten (10) business days after receiving notice of termination, the Escrow Agent shall return to FSAM (for return to any insurers, if applicable) all funds remaining in the Escrow Account (after subtraction of any amounts needed to pay incurred but as yet unpaid Tax Expenses and Notice and Administrative Expenses); and

7.      Except as specifically provided herein, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees or expenses.

C.      Except as provided in this Section XV, or as may otherwise be required by law:

1.      The Settling Parties and their counsel agree to keep the contents of this Settlement Agreement and all related negotiations confidential until the motion for a Notice Order is filed with the Court; *provided, however*, that (*i*) this Section XV shall not prevent earlier disclosure of such information by the Settling Parties or their counsel to any person or entity (such as clients, experts, courts, regulatory entities, insurers, reinsurers, and/or administrators) to whom disclosure must be made to effectuate the terms and conditions of this Settlement Agreement, and (*ii*) FSAM, in its sole discretion, may otherwise determine.

2.      The Settling Parties will attempt to coordinate in good faith the timing of any press releases concerning the proposed Settlement.  Plaintiffs, Lead Counsel, and FSAM each shall have the opportunity to review and comment on the other's press release (if any) before it is issued.  Any press release issued by Plaintiffs, Lead Counsel, or Defendants must be consistent with the terms of this Settlement Agreement.

3.    Notwithstanding any other provision of this Section XV, Defendants shall be entitled to make, without prior review or approval by Lead Counsel, any and all disclosures regarding this Settlement Agreement that they believe might be required or appropriate, including to regulators, governmental entities or bodies, stock exchanges, attorneys, accountants, auditors, financial institutions, lenders, insurers, and reinsurers; *provided, however,* that (*i*) any such disclosures or statements shall be balanced, fair, and accurate; (*ii*) Defendants shall refrain from asserting that any Claim asserted in the Action was brought in bad faith; and (*iii*) Defendants shall not disclose the Termination Threshold.

4.    The Settling Parties further agree that any media statements regarding the Settlement should be balanced, fair, accurate, and non-disparaging.

D.    All of the exhibits attached to this Settlement Agreement are incorporated by reference as though fully set forth herein.

E.    The Settling Parties intend that the Settlement Agreement shall be a final and complete resolution of all disputes that were, could have been, or could be asserted as to the Released Plaintiffs' Claims, the Released Defendants' Claims, and the Defendants' Mutually Released Claims.  Accordingly, the Settling Parties agree not to assert in any forum that any conduct of Plaintiffs and/or Defendants, or any of them, in connection with this Action, the settlement of this Action, or any of the Released Plaintiffs' Claims, the Released Defendants' Claims, or the Defendants' Mutually Released Claims was in bad faith or was unreasonable.  No Settling Party shall assert any Claim that any other Settling Party violated Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action.

F.    The Settling Parties agree that the amount paid and the other terms of the Settlement Agreement were negotiated at arm's length in good faith by the Settling Parties and

reflect an agreement that was reached voluntarily, after consultation with experienced legal counsel and under the auspices of the Mediator.

G.    Each Settling Party's counsel signing this Settlement Agreement represents that he or she is authorized to enter into this Settlement Agreement on behalf of his or her clients.

H.    Plaintiffs, through Lead Counsel, represent that they (*i*) have agreed to serve as representatives of the Class proposed to be certified in the Action, (*ii*) have consulted with Lead Counsel about the Action, this Settlement Agreement, and the obligations of a representative of the Class, and (*iii*) will remain in and not request exclusion from the Class and will serve as representatives of the Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that Plaintiffs cannot represent the Class.

I.    This Settlement Agreement and the Supplemental Agreement set forth the entire agreement among the Settling Parties as to the Settlement.  Plaintiffs and Defendants expressly acknowledge that there are no agreements, arrangements, or understandings among or between them concerning the subject matter of this Settlement Agreement other than those expressed or referred to in this Settlement Agreement and the Supplemental Agreement.  In entering into this Settlement Agreement, no Settling Party has relied upon any representation or warranty not set forth expressly herein or in the Supplemental Agreement.

J.    This Settlement Agreement shall be governed by and interpreted according to the laws of the State of New York, excluding its conflict-of-laws provisions.

K.    Any action arising under or to enforce this Settlement Agreement or the Supplemental Agreement shall be commenced and maintained only in the Court, which shall retain continuing, exclusive jurisdiction over all matters relating to the Settlement.  All Settling

Parties and their counsel agree to submit to the Court's jurisdiction for purposes of any such proceedings.

L. Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to the other, notice shall be provided by facsimile, e-mail, and/or next-day (excluding Saturday, Sunday, and legal holidays) express-delivery service as follows and shall be deemed effective upon such facsimile or e-mail transmission or delivery to the facsimile number, e-mail address, or street address, as the case may be, below:

    1. If to Defendants, then to:

        Ralph C. Ferrara
        Ann M. Ashton
        Proskauer Rose LLP
        1001 Pennsylvania Avenue, N.W.
        Suite 600 South
        Washington, D.C. 20004
        Telephone: (202) 416-5820
        Facsimile: (202) 416-6899
        rferrara@proskauer.com
        aashton@proskauer.com

        Jonathan E. Richman
        Proskauer Rose LLP
        Eleven Times Square
        New York, NY 10036-8299
        Telephone: (212) 969-3448
        Facsimile: (212) 969-2900
        jerichman@proskauer.com

2.      If to Plaintiffs, then to:

Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Peter A. Binkow
Glancy Prongay & Murray LLP
1925 Century Plaza East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 432-1495
lglancy@glancylaw.com
rprongay@glancylaw.com
csadler@glancylaw.com
pbinkow@glancylaw.com

M.      All time periods set forth herein shall be computed in calendar days unless

otherwise expressly provided.  In computing any period of time prescribed or allowed by this

Settlement Agreement or by order of court, the day of the act, event, or default from which the

designated period of time begins to run shall not be included.  The last day of the period so

computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act

to be done is the filing of a paper in Court, a day on which weather or other conditions have

made the office of the Clerk of Court inaccessible, in which event the period shall run until the

end of the next day that is not one of the aforementioned days.  As used in this Subsection, "legal

holiday" includes New Year's Day, the observance of the Birthday of Martin Luther King, Jr.,

Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day,

Thanksgiving Day, Christmas Day, and any other day appointed as a federal or New York state

holiday.

N.      The Settling Parties reserve the right, subject to the Court's approval, to make any

reasonable extensions of time that might be necessary to carry out any of the provisions of this

Settlement Agreement.

59

O.     All Settling Parties agree that this Settlement Agreement and the Supplemental Agreement were drafted by counsel for the Settling Parties at arm's length and that no parol or other evidence may be offered to explain, construe, contradict, or clarify their terms, the intent of the Settling Parties or their counsel, or the circumstances under which those Agreements were made or executed.  Nor shall there be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement or the Supplemental Agreement.

P.     This Settlement Agreement, offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability.  This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Plaintiffs' Claims.  In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce this Settlement Agreement.  Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including Defendants, or as a waiver by Defendants of any applicable defense.

Q.     No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members or any of the Settling Parties is being given or will be given by Defendants' Counsel or Lead Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement.  Class Members will be directed to consult their own tax

60

advisors regarding the tax consequences of the proposed Settlement and any tax reporting obligations they might have with respect to it.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

      R.     The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to use good faith in resolving any disputes that might arise in the implementation of the terms of this Settlement Agreement.

      S.     The Settling Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

      T.     This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or e-mail in PDF format shall be fully and legally binding on a Settling Party.

U.    All Releasees who are not Settling Parties are intended third-party beneficiaries who are entitled as of the Final Settlement Date to enforce the terms of the Release set forth in this Settlement Agreement.

Agreed to as of this 27th day of July 2016.

Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Peter A. Binkow
Glancy Prongay & Murray LLP
1925 Century Plaza East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 432-1495

ON BEHALF OF PLAINTIFFS, THE
CLASS, AND LEAD COUNSEL

Ralph C. Ferrara
Jonathan E. Richman
Ann M. Ashton
Proskauer Rose LLP
1001 Pennsylvania Ave., N.W.
Suite 600 South
Washington, D.C.  20004
Telephone:  (202) 416-5820
Facsimile:  (202) 416-6899

ON BEHALF OF DEFENDANTS

# TABLE OF CONTENTS

*Page*

I.   DEFINITIONS AND ADDITIONAL DISCOVERY ..........................................5

  A.   Definitions..................................................................................5

  B.   Capitalized Terms ....................................................................24

  C.   Additional Discovery ..............................................................24

II.  TERMS AND CONDITIONS OF THE SETTLEMENT ..........................25

  A.   Payment of Settlement Amount................................................25

  B.   Escrow Agent............................................................................26

  C.   Qualified Settlement Fund .......................................................28

  D.   Plan of Allocation ....................................................................29

  E.   Distribution of Net Settlement Fund ........................................30

III. NOTICE TO THE CLASS ........................................................................33

  A.   Individual Notice ......................................................................33

  B.   Publication Notice ....................................................................34

  C.   Notice Costs ..............................................................................34

IV.  APPOINTMENT OF CLAIMS ADMINISTRATOR ..............................34

V.   RIGHT TO COMMUNICATE WITH CLASS MEMBERS ....................35

VI.  REQUESTS FOR EXCLUSION ...............................................................36

VII. OBJECTIONS TO SETTLEMENT ..........................................................37

VIII. RELEASE AND WAIVER, AND ORDER OF DISMISSAL....................39

  A.   Release and Waiver....................................................................39

  B.   Final Judgment and Order of Dismissal....................................41

IX.  ATTORNEYS' FEES AND EXPENSES....................................................41

X.   NOTICE HEARING AND NOTICE ORDER ...........................................43

i

XI.     FINAL APPROVAL AND FINAL JUDGMENT................................................45

XII.    MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT ......50

XIII.   DEFENDANTS' TERMINATION RIGHTS....................................................51

XIV.    PLAINTIFFS' TERMINATION RIGHTS.......................................................52

XV.     GENERAL MATTERS AND RESERVATIONS.............................................53

**EXHIBITS**

Exhibit A:       Notice Order

Exhibit B:       Final Order

Exhibit C:       Judgment

Exhibit D:       Individual Notice

Exhibit E:       Claim Form

Exhibit F:       Publication Notice

Exhibit G:       Confidentiality Agreement

i

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————x

**RONALD K. LINDE,** *et al.,* **Individually and on** :
**Behalf of All Others Similarly Situated,** :     **Case No. 1:16-cv-01941 (LAK)**
                                                                          :
                              **Plaintiffs,** :
                                                                          :
**v.** :
                                                                          :
**FIFTH STREET ASSET MANAGEMENT** :
**INC.,** *et al.,* :
                                                                          :
                              **Defendants.** :
————————————————————————x

## [PROPOSED] ORDER
## PROVISIONALLY CERTIFYING SETTLEMENT CLASS
## AND APPROVING NOTICE TO SETTLEMENT CLASS

WHEREAS Lead Plaintiffs Kieran and Susan Duffy ("Plaintiffs"), on behalf of

the Class (as defined below), has applied to the Court pursuant to Fed. R. Civ. P. 23(e)

and the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for an Order

provisionally certifying the Class in the above-captioned action for settlement purposes

and authorizing the dissemination of notice of the proposed Settlement to the Class; and

WHEREAS the proposed Settlement is embodied in the Stipulation of Settlement

dated as of July 27, 2016, with annexed exhibits (collectively, the "Settlement

Agreement"), which has been submitted to the Court with Plaintiffs' motion; and

WHEREAS the Court has considered the Settlement Agreement and the Settling

Parties' submissions; and

WHEREAS all terms of the proposed Settlement are subject to the Court's approval after notice has been provided to the Class and the Court has held a Fairness Hearing;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:[1]

1. **<u>Provisional Certification of Class for Settlement Purposes.</u>**  The Court hereby provisionally certifies the Class solely for purposes of the proposed Settlement pursuant to Fed. R. Civ. P. 23(b)(3).  The Class (consisting of "Class Members") is defined to consist of all persons and entities (or legal beneficiaries) who purchased or otherwise acquired common stock of Fifth Street Asset Management Inc. ("FSAM") pursuant or traceable to the Registration Statement issued in connection with FSAM's initial public offering (the "IPO").  Excluded from the Class are:

a. all Defendants; any other individuals who were officers or directors (as determined under section 16 of the Exchange Act) of FSAM between the date of the IPO and January 7, 2016 (the "Filing Date"); Family Members of any of the foregoing, and their legal representatives, trustees, administrators, heirs, successors, or assigns; and any entity in which any Defendant had a Controlling Interest between the date of the IPO and the Filing Date;

b. persons or entities who submit timely and valid requests for exclusion from the Class; and

---

[1]     Terms not defined in this Order shall have the definitions given to them in the Settlement Agreement.

c.      persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against the Releasees and released the Releasees from any further Claims concerning their purchase or other acquisition of FSAM common stock pursuant or traceable to the Registration Statement.

2.      This provisional certification of the Class is made for the sole purpose of the potential consummation of the proposed settlement of the Action in accordance with the Settlement Agreement.  If the Court does not grant final approval of the proposed Settlement, or if the Court's grant of final approval does not become Final for any reason whatsoever, or is modified in any material respect, this provisional class certification shall be deemed void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or used for any purpose whatsoever, including in any later attempt by or on behalf of Plaintiffs or anyone else to seek class certification in this or any other matter.

3.      For purposes of the proposed settlement of the Action, and only for those purposes, and subject to the terms of the Settlement Agreement, the Court provisionally finds that the requirements of Fed. R. Civ. P. 23 and any other applicable laws (including the PSLRA) appear to be satisfied, in that:

a.      The Class appears to be so numerous that joinder of all members would be impractical;

b.      Plaintiffs have alleged one or more questions of fact and law that appear to be common to all Class Members;

3

c.      Based on Plaintiffs' allegations that Defendants engaged in uniform conduct affecting all Class Members, Plaintiffs' claims appear to be typical of those of the other members of the Class;

d.      Plaintiffs appear to be capable of fairly and adequately protecting the interests of the members of the Class, in that (*i*) Plaintiffs' interests appear to be consistent with those of the other Class Members, (*ii*) Lead Counsel appears to be able and qualified to represent the Class, and (*iii*) Plaintiffs and Lead Counsel appear to have fairly and adequately represented the Class Members in prosecuting this Action and in negotiating and entering into the proposed Settlement; and

e.      For settlement purposes, questions of law and/or fact common to members of the Class appear to predominate over any such questions affecting only individual Class Members, and a class action appears to be superior to all other available methods for the fair and efficient resolution of the Action.  In making these provisional findings for settlement purposes, the Court has considered, among other things, (*i*) the Class Members' interests in individually controlling the prosecution of separate actions, (*ii*) the impracticability or inefficiency of prosecuting separate actions, (*iii*) the extent and nature of any litigation concerning these claims already commenced, and (*iv*) the desirability of concentrating the litigation of the claims in a particular forum.

4.      **Certification of Class Representative and Appointment of Class Counsel for Settlement Purposes.**  Solely for purposes of the proposed Settlement, the Court hereby provisionally certifies Kieran and Susan Duffy as the class representatives

4

and provisionally appoints Glancy Prongay & Murray LLP as class counsel pursuant to
Fed. R. Civ. P. 23(g).

5.      **Fairness Hearing**.  Pursuant to Fed. R. Civ. P. 23(e), the Court will hold a
hearing (the "Fairness Hearing") on _____ __, 2016, at _____ _.m. (a date
no fewer than 100 days from the date of this Order), before The Honorable Lewis A.
Kaplan, United States District Judge for the Southern District of New York, at the United
States Courthouse, 500 Pearl Street, New York, New York, 10007, in Courtroom 2240.
The Court may adjourn the Fairness Hearing and reconvene it at some other date or time
without further notice to potential Class Members and may approve the proposed
Settlement at or after the Fairness Hearing with such modifications as may be consented
to by the parties to the Settlement Agreement and without further notice to the Class.

6.      At the Fairness Hearing, the Court will consider, among other things:

a.      whether the Court should grant final certification of the Action as a
class action for settlement purposes and confirm its appointment of Plaintiffs and Lead
Counsel as Class representative and Class counsel, respectively;

b.      whether the Court should approve the proposed Settlement as fair,
reasonable, and adequate;

c.      whether the Court should approve the proposed Plan of Allocation
as fair and reasonable;

d.      whether a Final Order and a Judgment, substantially in the forms
attached to the Settlement Agreement as Exhibits B and C, should be entered dismissing

5

the Action on the merits and with prejudice, and whether the releases in the Settlement

Agreement should be provided to the released parties;

        e.        whether the Court should enter the permanent injunctions and bar

orders requested in the Settlement Agreement;

        f.        whether the Court should approve Lead Counsel's request for

attorneys' fees and expenses; and

        g.        any other matters that the Court may deem appropriate.

        7.        **Administration of Proposed Settlement.**

        a.        **Retention of Claims Administrator.**  The Court approves

Plaintiffs' selection of A.B. Data, Ltd. to serve as claims administrator (the "Claims

Administrator").  The Claims Administrator shall perform various tasks as directed by

Lead Counsel, including:  (*i*) distributing the Individual Notice to potential Class

Members; (*ii*) arranging for publication of the Publication Notice; (*iii*) posting the

Individual Notice and other documents about the Action on a website for the Settlement;

(*iv*)  setting up and operating a toll-free telephone number with access to operators to

answer inquiries from potential Class Members and/or to forward such inquiries to Lead

Counsel; (*v*) training staff members and operators to be knowledgeable about the

proposed Settlement and the Plan of Allocation; (*vi*) responding to written inquiries from

potential Class Members and/or forwarding such inquiries to Lead Counsel;

(*vii*) providing additional copies of the Individual Notice, upon request, to Nominees or

potential Class Members; (*viii*) receiving and maintaining any potential Class Members'

requests for exclusion from the proposed Settlement; (*ix*) receiving, processing, and

making recommendations about Claim Forms submitted by claimants; (*x*) mailing or causing to be mailed to Authorized Claimants their distributions under the Plan of Allocation; and (*xi*) otherwise administering and implementing the Settlement Agreement.

      b.    **Notice and Administration Costs and Taxes.**  As provided in the Settlement Agreement, (*i*) before the Final Settlement Date, all reasonable costs up to the sum of $150,000 incurred in identifying and notifying potential Class Members and in administering the Settlement (including the Claims Administrator's fees and expenses) shall be paid from the Settlement Fund as set forth in the Settlement Agreement without further order of the Court, and (*ii*) Lead Counsel or the Claims Administrator or their agents are authorized and directed to prepare any tax returns required to be filed on behalf of or concerning the Settlement Fund and the Net Settlement Fund, to cause any Taxes due and owing to be paid from the funds in the Escrow Account, and to otherwise perform all obligations as to Taxes and any reporting or filings relating to them as contemplated by the Settlement Agreement, without further order of the Court.

      8.    **Notice to Class Members.**  The Court hereby approves, as to form and content, the Individual Notice, Claim Form, and Publication Notice attached to the Settlement Agreement as Exhibits D, E, and F, respectively.  The Court finds that the Individual Notice, Claim Form, and Publication Notice will sufficiently inform the potential Class Members of all material elements of the proposed Settlement, of their right to be excluded from the Class, and of each Class Member's right and opportunity to object to the proposed Settlement.  The Court further finds that the mailing and

distribution of the Individual Notice and Claim Form and the publication of the Publication Notice substantially in the manner and form set forth in this Order will meet the requirements of due process, Fed. R. Civ. P. 23, the PSLRA, and constitute the best notice practicable under the circumstances and due and sufficient notice to all persons entitled to such notice.

9.      Within five (5) business days after entry of this Order, FSAM and/or its transfer agent(s), to the extent they have not already done so, shall provide or cause to be provided to the Claims Administrator lists of all persons and entities that purchased FSAM common stock pursuant or traceable to the Registration Statement (the "Shareholder Lists"), so that the Claims Administrator can provide notice to such potential Class Members.  To the extent practicable, the Shareholder Lists shall be in electronic form (such as Excel) and shall contain the names and addresses of all potential Class Members who can be identified through reasonable efforts from FSAM's and its transfer agents' records.

10.     By at least sixty (60) calendar days (the "Notice Date") before the deadline for objecting to the proposed Settlement, the Claims Administrator shall mail or cause to be mailed the Individual Notice and the Claim Form, substantially in the forms attached to the Settlement Agreement as Exhibits D and E, by first-class mail, postage prepaid, to all potential Class Members at the address of each such person or entity as set forth in the Shareholder Lists or who are identified by further reasonable efforts.  Notices will also be provided by FSAM (at its own expense) to U.S. federal and state officials if and to the extent required by the Class Action Fairness Act of 2005 ("CAFA").

11.     Within ten (10) calendar days after the Notice Date, the Claims Administrator shall cause the Publication Notice (substantially in the form attached to the Settlement Agreement as Exhibit F) to be published once in each of *The Wall Street Journal* and *Investor's Business Daily* as well as on PRNewswire.

12.     The Claims Administrator shall also cause copies of the Individual Notice and Claim Form to be mailed as soon as practicable to persons who assert, in response to the Publication Notice or otherwise, that they are potential Class Members.

13.     If any Individual Notices are returned to the Claims Administrator with updated addresses, or if updated addresses are otherwise reasonably available, the Claims Administrator shall remail such notices to the updated addresses; *provided, however,* that, if the Claims Administrator does not obtain such updated addresses at least five (5) business days before the date of the Fairness Hearing, no remailing shall be required.

14.     The Claims Administrator shall cause a website to be established so that potential Class Members can find information relating to the Action and the proposed Settlement.  The website shall contain, among other things, copies of (*i*) the Individual Notice, including the Plan of Allocation, (*ii*) the Claim Form, (*iii*) the Publication Notice, (*iv*) the Settlement Agreement (including the exhibits), (*v*) motions for approval of the proposed Settlement, and any responsive papers, (*vi*) Lead Counsel's motion for an award of attorneys' fees and expenses, and any responsive papers, (*vii*) the Complaint in the Action, (*viii*) this Order and any subsequent Orders concerning the proposed Settlement and the Fairness Hearing, and (*ix*) such other materials as the Settling Parties determine should be posted.

15.    At least seven (7) calendar days before the Fairness Hearing, Lead Counsel and/or the Claims Administrator shall serve and file with the Court proof by affidavit or declaration of the mailing and publication of the Individual Notice and the Publication Notice and the posting of the various materials on the Claims Administrator's website, all as required by this Order.

16.    The costs of providing class notice (other than CAFA notice) pursuant to the Settlement Agreement and this Order will be paid from the Settlement Fund, as addressed in the Settlement Agreement.  Lead Counsel is hereby empowered to supervise and administer the notice procedures set out in this Order.

17.    The Claims Administrator shall make reasonable efforts to identify all persons who are potential Class Members, including beneficial owners whose FSAM securities are or were held by banks, brokerage firms, depository institutions, or other nominees.  Nominees who purchased or otherwise acquired FSAM common stock pursuant or traceable to the Registration Statement must, within fourteen (14) calendar days after receipt of the Individual Notice and Claim Form, either (*a*) request from the Claims Administrator sufficient copies of the Individual Notice and Claim Form to forward to all such beneficial owners and, within fourteen (14) calendar days after receipt of the copies of the Individual Notice and Claim Form, forward them to all such beneficial owners, or (*b*) provide a list of the names and addresses of all such beneficial owners to the Claims Administrator.  If the Nominee mails Individual Notices and Claim Forms to beneficial owners, such Nominee shall, upon making such mailing, send a statement to the Claims Administrator confirming that the mailing was made as directed,

10

and the Nominee shall retain the list of names and addresses for use in connection with any possible future notice to the Class.  Upon full compliance with this Order, including the timely mailing of the Individual Notice and Claim Form to beneficial owners, such Nominees may seek reimbursement of their reasonable expenses actually incurred in complying with this Order by providing the Claims Administrator with proper documentation supporting the reasonable expenses for which reimbursement is sought and reflecting compliance with these instructions, including timely mailing of the Individual Notice and Claim Form.  Such properly documented reasonable expenses incurred by Nominees in compliance with the terms of this Order shall be paid from the funds in the Escrow Account.

18.    The Settling Parties and their counsel may by agreement effect any amendments to or modifications of the proposed Individual Notice, the Publication Notice, the Claim Form, and the Plan of Allocation without notice to or approval by the Court if such changes are not materially inconsistent with this Order and do not materially limit the rights of potential Class Members.

19.    **Filing of Claims**.  To be entitled to participate in recovery from the Net Settlement Fund, each Class Member shall take the following actions and be subject to the following conditions:

a.    A properly completed and executed Claim Form must be submitted to the Claims Administrator, at the Post Office Box stated in the Notice, postmarked no later than the date stated in the Claim Form (120 calendar days from the Notice Date).  Such deadline may be further extended by Order of the Court.  Each Claim Form shall be

11

deemed to have been submitted when legibly postmarked (if properly addressed and mailed by first-class mail), provided that such Claim Form is actually received before the filing of a motion for an Order of the Court approving distribution of the Net Settlement Fund.  Any Claim Form submitted in any other manner shall be deemed to have been submitted on the date that the Claims Administrator actually receives it at the address designated in the Notice.

        b.      The Claim Form submitted by each Class Member must satisfy the following conditions:  (*i*) it must be properly filled out, signed, and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (*ii*) it must be accompanied by adequate supporting documentation for the reported transactions, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation that the Claims Administrator or Lead Counsel deems adequate; (*iii*) if the person executing the Claim Form is acting in a representative capacity, he or she must provide with the Claim Form a certification of his or her current authority to act on behalf of the Class Member; and (*iv*) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter in the form and must be signed under penalty of perjury.

        c.      Once the Claims Administrator has considered a timely submitted Claim Form, the Claims Administrator shall determine whether such claim is valid, deficient, or rejected.  For each claim determined to be either deficient or rejected, the Claims Administrator shall send a deficiency letter or rejection letter, as appropriate,

describing the basis for the determination and giving the claimant an opportunity to remedy any curable deficiencies.  Claimants who timely submit a Claim Form that is deficient or otherwise rejected shall be afforded a reasonable time to cure such deficiency if it shall appear that such deficiency may be curable.

       d.     All claimants shall submit to the jurisdiction of the Court for all matters concerning the filing of and determinations concerning their Claim Forms.

     20.    **Communications with Class Members**.  The Releasees shall maintain the right to communicate orally and in writing with FSAM's shareholders (including potential Class Members).  To the extent that any such communications relate to the Action or the proposed Settlement, such communications shall be limited to the following:

       a.     Communications between potential Class Members and representatives of the Releasees whose responsibilities include investor relations;

       b.     Communications as may be necessary to implement the terms of the Settlement Agreement; and

       c.     Such communications as may be made in the conduct of the Releasees' businesses, including to comply with any applicable NASDAQ requirements.

     21.    **Exclusion from Class**.  All potential Class Members who wish to exclude themselves from the Class must submit timely, written requests for exclusion to the Claims Administrator.  The exclusion request must include the following information: (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) e-mail address, if available, (*v*) a statement that the potential Class Member wishes to request exclusion from the Class in

"*Linde v. Fifth Street Asset Management Inc.*, No. 1:16-cv-01941 (LAK)"; (*vi*) number of shares of FSAM common stock purchased or otherwise pursuant or traceable to the Registration Statement, and any sales of such common stock, on or before the Filing Date, (*vii*) price(s) paid or value at receipt, and, if sold, the sales price(s), and (*viii*) the date of each such transaction involving each share of FSAM common stock.

22.     To be valid, any request for exclusion must be in writing, must contain all the required information, and must be received by the Claims Administrator no later than twenty-one (21) calendar days before the date initially set for the Fairness Hearing.

23.     If the proposed Settlement is approved, any potential Class Member who has not filed a timely and valid written request for exclusion from the Class (and his, her, or its heirs, executors, administrators, predecessors, successors, Affiliates, agents, representatives, and assigns, and anyone else purporting to act on behalf of, in the interest of, or derivatively for any of the foregoing persons or entities) shall be bound by the Release in the Settlement Agreement and by all proceedings, orders, and judgments in the Action, whether favorable or unfavorable, even if he, she, or it has pending or subsequently initiates any litigation, arbitration, or other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Released Plaintiffs' Claims.

24.     At or before the Fairness Hearing, the Settling Parties shall provide to the Court a list of the persons and entities, if any, who have validly and timely requested exclusion from the Class.  Persons requesting exclusion from the Class shall not be entitled to receive any payment in connection with the proposed Settlement.

25.     **Objections**.  Any Class Member who has not filed a request for exclusion from the Class and who wishes to object to the fairness, reasonableness, or adequacy of the proposed Settlement, including the Plan of Allocation and/or the request for attorneys' fees and expenses, must serve on Lead Counsel and Defendants' Counsel and file with the Court a statement of his, her, or its objection(s), as well as the specific reason(s), if any, for each such objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection.

26.     Each objection must include the name and docket number of this case (as set out at the top of this Order) and must also include the following information about the Class Member:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) e-mail address, if available, (*v*) number of shares of FSAM common stock purchased or otherwise acquired pursuant to the Registration Statement, and any sales of such common stock, on or before the Filing Date, (*vi*) price(s) paid or value received, and, if sold, the sales price(s), (*vii*) the date of each such transaction involving each share of FSAM common stock, and (*viii*) account statements verifying all such transactions.

27.     All such objections – whether sent by mail, express delivery, hand delivery, or otherwise – must be received by the Court and by Lead Counsel and Defendants' Counsel at least twenty-one (21) calendar days before the date initially set for the Fairness Hearing.  Objections should be sent or delivered to the following addresses:

a.   The Court:

Clerk of Court
United States District Court for the Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY  10007

b.   Lead Counsel:

Lionel Z. Glancy, Esq.
Glancy Prongay & Murray LLP
1925 Century Plaza East, Suite 2100
Los Angeles, CA  90067

c.   Defendants' Counsel:

Ralph C. Ferrara, Esq.
Proskauer Rose LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, DC  20004

28.     If a Class Member hires an attorney (at his, her, or its own expense) to represent him, her, or it for purposes of objecting, such attorney must serve a notice of appearance on Lead Counsel and Defendants' Counsel and file it with the Court (at the addresses set out above) so that it is received no later than twenty-one (21) calendar days before the date initially set for the Fairness Hearing.

29.     Any Class Member who does not make an objection in the time and manner provided in the Individual Notice and this Order shall be deemed to have waived such objection, shall be bound by the terms of the Settlement Agreement and the Final Order and Judgment, and shall be foreclosed forever from making any objection to the fairness or adequacy of the proposed Settlement unless otherwise allowed by the Court.

30.     Potential Class Members who exclude themselves from the proposed Settlement and the Class are not entitled to object to the proposed Settlement.

31.     **Appearance at Fairness Hearing**.  Any Class Member may appear at the Fairness Hearing either in person or through counsel retained at the Class Member's expense to speak about the fairness, reasonableness, or adequacy of any aspect of the proposed Settlement; *provided* that any such Class Member or his, her, or its attorney intending to appear at the Fairness Hearing must file and serve a notice of intention to appear, setting forth, among other things, the name, address, telephone number, and e-mail address (if available) of the Class Member (and, if applicable, of the Class Member's attorney).  Such notice of intention to appear must be received by Lead Counsel, Defendants' Counsel, and the Court, at the addresses set forth above, by no later than twenty-one (21) calendar days before the date initially set for the Fairness Hearing. Any Class Member (or attorney) who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except for good cause shown.

32.     Any Class Member who wishes to appear at the Fairness Hearing in order to object to the proposed Settlement and/or the related relief must also comply with the provisions of paragraphs 25 through 30 above.

33.     **Preliminary Injunction**.  Pending final determination of whether the proposed Settlement should be approved:

a.     Plaintiffs and all other Class Members (and their heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns)

who have not validly and timely requested exclusion from the Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are preliminarily enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating in any way to the Released Plaintiffs' Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Action;

       b.    All persons are preliminarily enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Class Members as to the Releasees, if such other lawsuit is based on or related in any way to the Released Plaintiffs' Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Action; and

       c.    All Defendants, and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities, are preliminarily enjoined from commencing, prosecuting, intervening in, or participating in any claims or

causes of action relating to the Defendants' Mutually Released Claims or the Released Defendants' Claims.

34.     **Filing of Papers**.  All papers in support of the proposed Settlement and the related relief shall be filed and served as set forth below:

a.     Any motions for final approval of the proposed Settlement and Plan of Allocation and any motions for an award of attorneys' fees and expenses must be filed no later than thirty-five (35) calendar days before the date initially set for the Fairness Hearing.

b.     Any oppositions to any motions for final approval of the proposed Settlement or the Plan of Allocation and/or for attorneys' fees and expenses – and any objections to the proposed Settlement or the Plan of Allocation and/or the request for attorneys' fees and expenses – must be filed with the Court and received by Lead Counsel and Defendants' Counsel, at the addresses set out above, no later than twenty-one (21) calendar days before the date initially set for the Fairness Hearing.

c.     Any reply papers in support of final approval of the proposed Settlement, the Plan of Allocation, and/or an award of attorneys' fees and expenses, and any responses to objections or oppositions, must be filed and served no later than seven (7) calendar days before the Fairness Hearing.

35.     **Qualified Settlement Fund.**  The Settlement Fund and the Net Settlement Fund shall be considered a Qualified Settlement Fund *in custodia legis* of the Court, in accordance with Treas. Reg. §§ 1.468B-0 through 1.468B-5.

36. **Termination of Settlement**. This Order shall become null and void, and shall be without prejudice to the rights of the Settling Parties, all of whom shall be restored to their respective positions existing as of June 17, 2016, if (*i*) the proposed Settlement is not finally approved by the Court, or does not become Final, pursuant to the terms of the Settlement Agreement or (*ii*) the proposed Settlement is terminated in accordance with the terms of the Settlement Agreement or does not become effective as required by the terms of the Settlement Agreement for any other reason. In such event, the Settlement Agreement shall become null and void and of no further force and effect in accordance with its terms, and it shall not be used or referred to for any purpose whatsoever.

37. **Use of Order**. This Order shall be of no force or effect if the proposed Settlement does not become Final. This Order shall not be construed or used as an admission, concession, or declaration by or against the Releasees of any fault, wrongdoing, breach, or liability. Nor shall this Order be construed or used as an admission, concession, or declaration by or against Plaintiffs or the other Class Members that their claims lack merit or that the relief requested in the Complaint is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she, or it might have.

38. **Sharing of Papers.** Lead Counsel and Defendants' Counsel shall promptly furnish each other with copies of any and all objections or written requests for exclusion that come into their possession.

20

39.     **Potential Continuance of Fairness Hearing**.  The Court reserves the right to adjourn the date of the Fairness Hearing, and any adjournment thereof, without further notice to potential Class Members.

40.     **Retention of Jurisdiction.**  The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

Dated: New York, New York
       _____, 2016

_____
              Lewis A. Kaplan
              United States District Judge

21

57223899v5

EXHIBIT B

EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————x

RONALD K. LINDE, *et al.,* Individually and on : 
Behalf of All Others Similarly Situated, :

                            Plaintiffs, :

v. :

FIFTH STREET ASSET MANAGEMENT :
INC., *et al.,* :

                        Defendants. :

————————————————————x

Case No. 1:16-cv-01941 (LAK)

## [PROPOSED]
## ORDER APPROVING CLASS-ACTION SETTLEMENT

WHEREAS Lead Plaintiffs Kieran and Susan Duffy ("Plaintiffs"), on behalf of the Class (as defined below), have applied to the Court pursuant to Fed. R. Civ. P. 23(e) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for an Order granting final approval of the proposed settlement of the above-captioned action in accordance with the Stipulation of Settlement dated as of July 27, 2016 (including its exhibits) (the "Settlement Agreement"), which sets forth the terms and conditions for a proposed settlement of the Action against defendants Fifth Street Asset Management Inc. ("FSAM") and the other named defendants (the "Settlement"); and

WHEREAS, on _____, 2016, the Court entered an Order (the "Notice Order") provisionally certifying the Class for settlement purposes, directing notice to be disseminated to potential Class Members, and scheduling a hearing (the "Fairness Hearing") to consider whether to grant final approval of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and expenses; and

WHEREAS the Court held the Fairness Hearing on _____, 2016 to determine, among other things, (*i*) whether the terms and conditions of the proposed Settlement are fair, reasonable, and adequate and should therefore be approved; (*ii*) whether the Class should be finally certified for settlement purposes; (*iii*) whether notice to the Class was implemented pursuant to the Notice Order and constituted due and adequate notice to the Class in accordance with the Federal Rules of Civil Procedure, the PSLRA, the United States Constitution (including the Due Process Clause), and the Rules of the Court; (*iv*) whether to approve the proposed Plan of Allocation; (*v*) whether to enter a final judgment and order dismissing the Action on the merits and with prejudice as to Defendants and against all Class Members, and releasing and barring all the Released Defendants' Claims, Released Plaintiffs' Claims, and Defendants' Mutually Released Claims as provided in the Settlement Agreement; and (*vi*) whether and in what amount to award attorneys' fees and expenses to Lead Counsel; and

WHEREAS the Court received submissions and heard argument at the Fairness Hearing from Lead Counsel and from Defendants' Counsel;

NOW, THEREFORE, based on the written submissions received before the Fairness Hearing, the arguments at the Fairness Hearing, and the other materials of record in this Action, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1. **Incorporation of Settlement Documents.** This Order incorporates and makes a part hereof the Settlement Agreement dated as of July 27, 2016, including its defined terms. Terms not defined in this Order shall have the definitions given to them in the Settlement Agreement.

2.       **Jurisdiction**.  The Court has jurisdiction over the subject matter of the Action, the

Plaintiffs, all other Class Members (as defined below), and the Defendants and has jurisdiction to

enter this Order and the Final Judgment (the "Judgment").

3.       **Final Class Certification**.  The Court grants final certification of the Class solely

for purposes of the Settlement pursuant to Fed. R. Civ. P. 23(b)(3).  The "Class" (consisting of

"Class Members") is defined to consist of all persons and entities (or legal beneficiaries) who

purchased or otherwise acquired FSAM common stock pursuant or traceable to the Registration

Statement issued in connection with FSAM's initial public offering (the "IPO").  Excluded from

the Class are:

a.       All Defendants; any other individuals who were officers or directors (as

determined under section 16 of the Exchange Act) of FSAM between the date of the IPO and

January 7, 2016 (the "Filing Date"); Family Members of any of the foregoing, and their legal

representatives, trustees, administrators, heirs, successors, or assigns; and any entity in which

any Defendant had a Controlling Interest between the date of the IPO and the Filing Date;

b.       persons or entities who submitted valid and timely requests for exclusion

from the Class (a list of whom is annexed to this Order as Exhibit 1); and

c.       persons or entities who, while represented by counsel, settled an actual or

threatened lawsuit or other proceeding against the Releasees and released the Releasees from any

further Claims concerning their purchase or other acquisition of FSAM common stock pursuant

or traceable to the Registration Statement.

4.       This certification of the Class is made for the sole purpose of consummating the

settlement of the Action in accordance with the Settlement Agreement.  If the Court's grant of

final approval does not become Final for any reason whatsoever, or if it is modified in any

3

material respect, this class certification shall be deemed void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or used for any purpose whatsoever, including in any later attempt by or on behalf of Plaintiffs or anyone else to seek class certification in this or any other matter.

      5.      For purposes of the settlement of the Action, and only for those purposes, and subject to the terms of the Settlement Agreement, the Court finds that the requirements of Fed. R. Civ. P. 23 and any other applicable laws (including the PSLRA) have been satisfied, in that:

      a.      The Class is so numerous that joinder of all members would be impractical;

      b.      One or more questions of fact and law are common to all Class Members;

      c.      Plaintiffs' claims are typical of those of the other members of the Class;

      d.      Plaintiffs have been and are capable of fairly and adequately protecting the interests of the members of the Class, in that (*i*) Plaintiffs' interests have been and are consistent with those of the other Class Members, (*ii*) Lead Counsel has been and is able and qualified to represent the Class, and (*iii*) Plaintiffs and Lead Counsel have fairly and adequately represented the Class Members in prosecuting this Action and in negotiating and entering into the proposed Settlement; and

      e.      For settlement purposes, questions of law and/or fact common to members of the Class predominate over any such questions affecting only individual Class Members, and a class action is superior to all other available methods for the fair and efficient resolution of the Action.  In making these findings for settlement purposes, the Court has considered, among other things, (*i*) the Class Members' interests in individually controlling the prosecution of separate

4

actions, (*ii*) the impracticability or inefficiency of prosecuting separate actions, (*iii*) the extent and nature of any litigation concerning these claims already commenced, and (*iv*) the desirability of concentrating the litigation of the claims in a particular forum.

6.    **Final Appointment of Class Representative and Class Counsel for Settlement Purposes.**  Solely for purposes of the proposed Settlement, the Court hereby (*i*) confirms its appointment of Kieran and Susan Duffy as the class representatives and (*ii*) confirms its appointment of Glancy Prongay & Murray LLP as class counsel pursuant to Fed. R. Civ. P. 23(g).

7.    **Notice.**  The Court finds that the distribution of the Individual Notice (including the Claim Form), the publication of the Publication Notice, and the notice methodology as set forth in the Notice Order all were implemented in accordance with the terms of that Order.  The Court further finds that the Individual Notice (including the Claim Form), the Publication Notice, and the notice methodology implemented pursuant to the Notice Order (*i*) constituted the best practicable notice, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, the nature and terms of the proposed Settlement, the effect of the Settlement Agreement (including the release of claims), their right to object to the proposed Settlement, their right to exclude themselves from the Class, and their right to appear at the Fairness Hearing, (*iii*) were reasonable and constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice (including any State and/or federal authorities entitled to receive notice under the Class Action Fairness Act), and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the PSLRA, and the Rules of the Court.

8.      **Final Settlement Approval.** The Court finds that the proposed Settlement resulted from serious, informed, non-collusive negotiations conducted at arm's length by the Settling Parties and their counsel – with the assistance of an experienced mediator – and was entered into in good faith. The terms of the Settlement Agreement do not have any material deficiencies and do not improperly grant preferential treatment to any individual Class Member. Accordingly, the proposed Settlement as set forth in the Settlement Agreement is hereby fully and finally approved as fair, reasonable, and adequate, consistent and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the PSLRA, and the Rules of the Court, and in the best interests of the Class Members.

9.      In making these findings, the Court considered, among other factors, (*i*) the complexity, expense, and likely duration of the litigation if it were to continue, (*ii*) the potential Class Members' reactions to the proposed Settlement, including the number of exclusion requests and the number of objections, (*iii*) the stage of the proceedings and the amount of discovery and other materials available to Plaintiffs' counsel, including the documents provided to Lead Counsel, the two-day Pre-Mediation Presentation that Defendants' Counsel made to Lead Counsel, and the additional discovery provided to Lead Counsel, (*iv*) the risks of establishing liability and damages, including the nature of the claims asserted and the strength of Plaintiffs' claims and Defendants' defenses as to liability and damages, (*v*) Plaintiffs' risks of obtaining certification of a litigation class and of maintaining certification through trial, (*vi*) Defendants' ability to withstand a greater judgment, (*vii*) the range of reasonableness of the Settlement Amount in light of the best possible recovery, (*viii*) the range of reasonableness of the Settlement Amount to a possible recovery in light of all the attendant risks of litigation, (*ix*) the

experience and views of the Settling Parties' counsel, (*x*) the involvement of an experienced mediator (retired California Superior Court Judge Daniel Weinstein), (*xi*) the submissions and arguments made throughout these proceedings by the Settling Parties, and (*xii*) the submissions and arguments made in connection with the Fairness Hearing.

10.    The Settling Parties are directed to implement and consummate the Settlement Agreement in accordance with its terms and provisions.  The Court approves the documents submitted to the Court in connection with the implementation of the Settlement Agreement.

11.    **Releases.**  Pursuant to this Order and the Judgment, without further action by anyone, and whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Class Member, and subject to paragraph 15 below, on and after the Final Settlement Date, Plaintiffs and all other Class Members, on behalf of themselves and the other Releasors, for good and sufficient consideration, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a.    all Released Plaintiffs' Claims against each and every one of the Releasees;

b.    all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the facts and circumstances of the Settlement Agreement, the Settlement terms, and their implementation, (*iii*) the provision of

7

notice in connection with the proposed Settlement, and/or (*iv*) the resolution of any Claim Forms submitted in connection with the Settlement; and

    c.  all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Lead Counsel or any other counsel representing Plaintiffs or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its settlement, except to the extent otherwise specified in the Settlement Agreement.

    12.  Pursuant to this Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, each and all Releasees, including Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged each and all Releasors, as well as Lead Counsel, from any and all Released Defendants' Claims, except to the extent otherwise specified in the Settlement Agreement.

    13.  Pursuant to this Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, Plaintiffs and their counsel (including Lead Counsel), on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants' Counsel and all other Releasees from any and all Claims that relate in

any way to any and all acts directly or indirectly relating to the prosecution, defense, or settlement of the Action or to the Settlement Agreement, except to the extent otherwise specified in the Settlement Agreement.

14.    Pursuant to this Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, Defendants, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged each other from any and all Defendants' Mutually Released Claims.

15.    Notwithstanding paragraphs 11 through 14 above, nothing in this Order or the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement Agreement, the Final Order, or the Judgment.

16.    **Permanent Injunction.**  The Court enters the following permanent injunction:

a.    Plaintiffs and all other Class Members (and their heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in

9

intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating in any way to the Released Plaintiffs' Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Action;

    b.  All persons are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Class Members as to the Releasees, if such other lawsuit is based on or related in any way to the Released Plaintiffs' Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Action; and

    c.  All Defendants, and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities, are permanently enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Defendants' Mutually Released Claims or the Released Defendants' Claims.

    17. **Contribution Bar Order.** To the extent authorized by § 11 of the Securities Act of 1933, and in accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all Claims for contribution arising out of any Released Plaintiffs' Claim (*i*) by any person or entity against any of the Releasees and (*ii*) by any of the Releasees against any person or entity other than as set out in 15 U.S.C. § 78u-4(f)(7)(A)(ii) are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable. Accordingly, without limitation to any of the above, (*i*) any person or entity is hereby permanently enjoined from commencing, prosecuting, or asserting against any of the Releasees any such Claim for contribution, and (*ii*) the Releasees are hereby permanently enjoined from commencing, prosecuting, or asserting against any person or entity any such

Claim for contribution.  In accordance with 15 U.S.C. § 78u-4(f)(7)(B), any final verdict or judgment that might be obtained by or on behalf of the Class or a Class Member against any person or entity for loss for which such person or entity and any Releasees are found to be jointly liable shall be reduced by the greater of (*i*) an amount that corresponds to Defendants' percentage of responsibility for the loss to the Class or Class Member or (*ii*) either (a) the Settlement Amount, in the case of the Class, or (b) that portion of the Settlement Amount applicable to the Class Member, in the case of a Class Member, unless the court entering such judgment orders otherwise.

18.    **Complete Bar Order.**  To effectuate the Settlement, the Court hereby enters the following Complete Bar:

a.    Any and all persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract or for misrepresentation, where the Claim is or arises from a Released Plaintiffs' Claim and the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Class or any Class Member, including any Claim in which a person or entity seeks to recover from any of the Releasees (*i*) any amounts that such person or entity has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions of this subparagraph are intended to preclude any liability of any of the Releasees to any person or entity for indemnification, contribution, or

otherwise on any Claim that is or arises from a Released Plaintiffs' Claim and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Class or any Class Member; *provided, however,* that if the Class or any Class Member obtains any judgment against any such person or entity based upon, arising out of, or relating to any Released Plaintiffs' Claim for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (*i*) an amount that corresponds to such Releasee's or Releasees' percentage of responsibility for the loss to the Class or Class Member or (*ii*) either (a) the Settlement Amount, in the case of the Class, or (b) that portion of the Settlement Amount applicable to the Class Member, in the case of a Class Member, unless the court entering such judgment orders otherwise.

b.     Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including any other Releasee) arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract and for misrepresentation, where the Claim is or arises from a Released Plaintiffs' Claim and the alleged injury to such Releasee arises from that Releasee's alleged liability to the Class or any Class Member, including any Claim in which any Releasee seeks to recover from any person or entity (including another Releasee) (*i*) any amounts that any such Releasee has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

c.        Each and every Defendant is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other Defendant arising under any federal, state, or foreign statutory or common-law rule, however styled, where the Claim is or arises from a Defendants' Mutually Released Claim.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

d.        Notwithstanding anything stated in the Complete Bar Order, if any person or entity (for purposes of this subparagraph, a "petitioner") commences against any of the Releasees any action either (*i*) asserting a Claim that is or arises from a Released Plaintiffs' Claim and where the alleged injury to such petitioner arises from that petitioner's alleged liability to the Class or any Class Member or (*ii*) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such action or Claim is not barred by a court pursuant to this paragraph or is otherwise not barred by the Complete Bar Order, neither the Complete Bar Order nor the Settlement Agreement shall bar Claims by that Releasee against (*a*) such petitioner, (*b*) any person or entity who is or was controlled by, controlling, or under common control with the petitioner, whose assets or estate are or were controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*c*) any person or entity that participated with any of the preceding persons or entities described in items (*a*) and (*b*) of this subparagraph in connection with the assertion of the Claim brought against the Releasee(s); *provided, however,* that nothing in the Complete Bar Order or Settlement Agreement shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement.

e.        Plaintiffs and the Class Members will use reasonable efforts, in settling with any other person or entity any Claim based upon, arising out of, or relating to the Action or

any of the Released Plaintiffs' Claims that the person or entity might have against any of the Releasees, to obtain from such person or entity a release of any and all such Claims.

f.    If any term of the Complete Bar Order entered by the Court is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Plaintiffs' Claim or any Defendants' Mutually Released Claim, as applicable.

g.    Notwithstanding the Complete Bar Order or anything else in the Settlement Agreement, nothing shall release, interfere with, limit, or bar the assertion by any Releasee of (*i*) any Claim for insurance coverage under any insurance, reinsurance, or indemnity policy that provides coverage respecting the conduct at issue in the Action, (*ii*) any contractual right to indemnification or advancement as against any other Releasee, or (*iii*) any contractual right as against any other Releasee.

19.    **No Admissions.**  This Order and the Judgment, the Settlement Agreement, the offer of the Settlement Agreement, and compliance with the Judgment or the Settlement Agreement shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability.  This Order, the Judgment, and the Settlement Agreement are to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Plaintiffs' Claims, the Released Defendants' Claims, and Defendants' Mutually Released Claims.  In no event shall this Order, the Judgment, the Settlement Agreement, any of their provisions, or any negotiations, statements, or court proceedings relating to their provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind against the Settling Parties, the other Releasees, and the

other Releasors in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce the Settlement Agreement.  Without limiting the foregoing, this Order, the Judgment, the Settlement Agreement, and any related negotiations, statements, or court proceedings shall not be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including Defendants, or as a waiver by Defendants of any applicable defense, or as a waiver by Plaintiffs or the Class of any Claims, causes of action, or remedies; *provided, however,* that this Order, the Judgment, and/or the Settlement Agreement may be filed in any action against or by Releasees to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

20.    **Modification of Settlement Agreement.**  Without further approval from the Court, the Settling Parties are hereby authorized to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement (including its exhibits) as (*i*) are not materially inconsistent with this Order and the Judgment and (*ii*) do not materially limit the rights of Class Members under the Settlement Agreement.

21.    **Dismissal of Action.**  The Action, including all Claims that have been asserted, is hereby dismissed on the merits and with prejudice, without fees or costs to any Settling Party except as otherwise provided in the Settlement Agreement.

22.    **Retention of Jurisdiction.**  Without in any way affecting the finality of this Order and the Judgment, the Court expressly retains continuing and exclusive jurisdiction over the Settling Parties, the Class Members, and anyone else who appeared before this Court for all matters relating to the Action, including the administration, consummation, interpretation,

15

effectuation, or enforcement of the Settlement Agreement and of this Order and the Judgment, and for any other reasonably necessary purpose, including:

        a.      enforcing the terms and conditions of the Settlement Agreement, this Order, and the Judgment (including the Complete Bar Order, the PSLRA Contribution Bar Order, and the permanent injunction);

        b.      resolving any disputes, claims, or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order, or the Judgment (including whether a person or entity is or is not a Class Member and whether claims or causes of action allegedly related to the Action are or are not barred by this Order and the Judgment or the releases);

        c.      entering such additional orders as may be necessary or appropriate to protect or effectuate this Order and the Judgment, including whether to impose a bond on any parties who appeal from this Order or the Judgment;

        d.      considering the approval of the proposed Plan of Allocation and any applications for awards of attorneys' fees and litigation expenses, which shall be the subject of separate orders, and such orders shall in no way affect or delay the finality of this Order or the Judgment and shall not affect or delay the Final Settlement Date; and

        e.      entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction; *provided, however,* that nothing in this Order or the Judgment shall interfere with the Mediator's ability to make any final, binding, and nonappealable rulings as prescribed in the Settlement Agreement.

23.     **Rule 11 Findings.**  The Court finds that all of the complaints filed in the Action were filed on a good-faith basis in accordance with the PSLRA and with Rule 11 of the Federal

Rules of Civil Procedure based upon all publicly available information. The Court finds that all Settling Parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

24.   **Termination.** If the Settlement does not become Final in accordance with the terms of the Settlement Agreement, or is terminated pursuant to the Settlement Agreement (including Sections XII, XIII, and/or XIV), this Order and the Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement.

25.   **Entry of Judgment.** There is no just reason to delay the entry of this Order and the Judgment, and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

Dated:          New York, New York
                _____, 201_


                          _____
                          The Honorable Lewis A. Kaplan
                          United States District Judge

17

# APPENDIX OF SELECTED TERMS AND DEFINITIONS

## "Action"

"Action" means the putative securities class action originally filed on January 7, 2016 as *Linde v. Fifth Street Asset Management Inc.*, No. 3:16-cv-00025 (D. Conn.), and currently pending (after transfer pursuant to 28 U.S.C. § 1404(a)) in the United States District Court for the Southern District of New York under the caption *Linde v. Fifth Street Asset Management Inc.,* No. 1:16-cv-01941 (LAK), including any other cases that might be consolidated into that action as of the Final Settlement Date.

## Defendants' Mutually Released Claims"

"Defendants' Mutually Released Claims" means each and every Claim arising out of or relating to any or all of the acts, failures to act, omissions, misrepresentations, facts, events, matters, transactions, occurrences, or oral or written statements or representations on or before the Filing Date (including in the Registration Statement) that were or could have been alleged under the facts and circumstances pled in the Action (including in the Complaint and the original complaint filed in the Action), including the matters described in Subsections a through dd of the definition of "Released Plaintiffs' Claims" below; *provided, however,* that the term "Defendants' Mutually Released Claims" shall not apply to (*i*) any right to indemnification or advancement under any statute, charter, bylaw, or contract, (*ii*) any other contractual rights between or among Defendants, and (*iii*) any claims asserted in the FSC Derivative Actions.

**"Released Defendants' Claims"**

"Released Defendants' Claims" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee, including any Defendant or the successors and assigns of any Defendant, against Plaintiffs, any other Class Members, or their attorneys (including Lead Counsel), that arises out of or relates in any way to the institution, prosecution, or settlement of the Action, except for claims to enforce the Settlement.

**"Released Plaintiffs' Claims"**

"Released Plaintiffs' Claims" means each and every Claim that Plaintiffs or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in any complaint filed in the Action or in any action consolidated into it) or (*ii*) could have asserted or could assert against any of the Releasees in connection with the facts and circumstances alleged in the Action, whether arising under any federal, state, or other statutory or common-law rule, in any court, tribunal, agency, or other forum, that both (A) arises out of or relates to the purchase or other acquisition, on or before the Filing Date, of FSAM common stock issued pursuant or traceable to the Registration Statement, or any other Investment Decision concerning those securities on or before the Filing Date, and (B) relates directly or indirectly to the matters described in Subsections a through dd below and/or any alleged statements about or characterizations of – or alleged failures to disclose information about – any of those matters (including in connection with the Registration Statement), including with respect to both Subsections (i) and (ii):

APP-2

a.      the valuation and management of FSC's investments, including the approach used in calculating the fair values of investments and the inputs used, assumptions made, and comparables and quotations relied upon, the quality checks that were conducted regarding valuation calculations, documentation concerning valuation decisions and calculations, decisions whether to write down or impair FSC's investments and the timing and amount of any investment write-downs, decisions whether to place investments on non-accrual status, decisions whether to obtain ITP valuations for particular investments, the selection of ITPs to perform such valuations, and the timing of ITP valuations of FSC's investments;

b.      the origination of investments for FSC's portfolio, including FSC's communications with and due diligence on investment sponsors, FSC's pre-investment due diligence and underwriting, the approval process for investments, and the structuring, negotiation, documentation, pricing, and terms of FSC's investments;

c.      FSC's risk management, including FSC's investment approach, the selection of its individual investments, creditor protections negotiated in connection with those investments, underwriting policies, the overall risk profile and credit quality of FSC's portfolio, and any characterizations or descriptions of those matters;

d.      FSC's leverage, including the aggregate amount of its indebtedness and the terms and structure of its various financing arrangements;

e.      the management of FSC's portfolio, including the processes used to manage the investments, the inputs into the Black Mountain platform regarding investments, the review, ranking, and rating of investments, and decisions to place investments on FSC's "Watchlist";

f.      waivers, amendments, and loan modifications effected regarding FSC's investments, including decisions regarding waivers of cash interest, conversion of loans to PIK

interest, the modification of loan terms or interest rates, the provision of any additional financing to companies in which FSC had already made a debt or equity investment, the acquisition of control investments, or the sale, liquidation, or other disposal of investments;

g.      FSC's fair-value accounting and recognition of income, including its revenue recognition for original-issue discounts, accruals, accruals on contingent-payment debt instruments, PIK interest, loan-origination fee income, and other fee income;

h.      policies, processes, and procedures concerning the valuation of investments, portfolio management, revenue recognition, and disclosure, including FSC's Valuation Policy, Valuation Narrative, Portfolio Management Narrative, Revenue Recognition Narrative, and Disclosure Policy;

i.      decisions regarding FSC's dividends, including whether to pay dividends in any particular quarter, the amount of dividends to be paid, announcements of and statements regarding dividends, and the timing of dividend payments;

j.      FSC's investment-advisory arrangements with FSM and/or its Affiliates, including the services provided by FSM, all base, incentive, and other fees, costs, and expenses paid by FSC under the Investment Advisory Agreement ("IAA"), the provisions of the IAA, communications between FSC and its shareholders (including RiverNorth Capital Management LLC) regarding the IAA, and FSC's indemnity and advancement obligations to FSM or its Affiliates;

k.      FSC's administration arrangements with FSC CT and/or its Affiliates, including the services provided by FSC CT, all costs, fees, and expenses paid by FSC under the Administration Agreement with FSC CT, the provisions of the Administration Agreement, and FSC's indemnity and advancement obligations to FSC CT or its Affiliates;

APP-4

l.      FSC's participation in investments in which other affiliates within the Fifth Street platform also participated, including the allocation of the investment participation among the various Fifth Street entities and implementation of the Investment Allocation Policy;

m.      FSC's participation in any agreements, ventures, partnerships, or any similar arrangements with any of its affiliates, including any alleged conflicts of interest and FSC's waiver of any alleged conflicts;

n.      FSC's partnership with Trinity Universal Insurance Company (a subsidiary of Kemper Corporation) to establish Senior Loan Fund JV 1, LLC ("SLF JV1"), and the financial performance and income generation of SLF JV1;

o.      FSC's September 26, 2013 follow-on offering of common stock, July 10, 2014 secondary offering of common stock, and September 2014 at-the-market offering of common stock, as well as any materials disseminated and statements made in connection with those offerings;

p.      accounting treatment relating to investments (including the recognition of revenue) and to fees paid to FSC's investment advisor and administrator;

q.      FSC's assets, asset quality, financial condition, revenues, income (including fee income, net investment income, and PIK income), expenses, earnings per share, and other financial metrics, and auditors' comments about FSC's financial condition;

r.      FSC's governance and internal controls, including any deficiencies and weaknesses in such controls;

s.      FSC's earnings announcements and other public statements about financial results on or before the Filing Date;

t.      FSFR's investment advisory agreements with FSM and/or its affiliates, including the services provided by FSM and/or its affiliates, all base, incentive, and other fees, costs, and expenses paid by FSFR under those agreements, and the provisions of those agreements;

u.      FSFR's August 19, 2014 follow-on offering of common stock, and any materials disseminated and statements made in connection with that offering;

v.      FSAM's IPO, the offering's alleged impact on FSAM's, FSM's, and/or FSC CT's performance of services for FSC or FSFR, and the uses of the IPO proceeds;

w.      FSAM's financial position and financial metrics, including assets under management, revenue, income, loan-origination income, receipt of management and advisory fees, and earnings per share;

x.      FSAM's decisions regarding its dividends, including the amount of dividends to be paid and announcements of and statements regarding dividends;

y.      FSAM's revenue-recognition practices and recognition of revenue from fees, loan originations, or other sources;

z.      the membership of FSAM's Board of Directors and/or any Committees of its Board of Directors (including the Corporate Governance Committee);

aa.     FSAM's governance, compliance procedures, and internal controls, including any deficiencies and weaknesses in such controls;

bb.     FSAM's membership interest in and dealings with IMME LLC;

cc.     FSAM's Registration Statement, earnings announcements, rescheduling of earnings announcements, and other public statements about financial results on or before the Filing Date; and

dd.      Releasees' statements about, characterizations of, or alleged omissions concerning any or all of the above matters, including any alleged failures to comply with Item 303 of SEC Regulation S-K.

The term "Released Plaintiffs' Claims" also includes any Claim relating to the initiation, litigation, settlement, or dissemination of notice of the Action, including the payment of any settlement relief to settle the Action; *provided however*, that the term "Released Plaintiffs' Claims" does not include any claims to enforce the Settlement Agreement or brought on behalf of FSC stock purchasers in the FSC Class Action.


**"Releasees"**

"Releasee" means each and every one of, and "Releasees" means all of, the following:

a.      Defendants and their Family Members, heirs, trustees, administrators, successors, representatives, agents, and assigns;

b.      Each and every entity that falls within the definition of FSAM Releasees; and

c.      Each of the FSAM Releasees' respective past and present directors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys (including in-house or outside attorneys (including Defendants' Counsel) employed or retained by the FSAM Releasees), advisors, investment bankers, trustees, administrators, fiduciaries, consultants, actuaries, representatives, accountants, accounting advisors, auditors, insurers, reinsurers, service providers, and valuation firms (including ITPs).

APP-7

**Releasor:**

"Releasor" means each and every one of, and "Releasors" means all of, (*i*) Plaintiffs, (*ii*) all other Class Members, (*iii*) their respective past or present parents, predecessors, successors, heirs, beneficiaries, representatives, agents, assigns, Affiliates, divisions, business units, subsidiaries, any entities in which any Releasor has or had a Controlling Interest or that has or had a Controlling Interest in him, her, or it, and any other person or entity claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Plaintiffs or any other Class Member, and (*iv*) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys (including their General Counsel and other in-house or outside attorneys), advisors, trustees, administrators, fiduciaries, consultants, service providers, representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities.

APP-8

EXHIBIT C

**EXHIBIT C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————x
RONALD K. LINDE, *et al.,* Individually and on  :
Behalf of All Others Similarly Situated,        :        Case No. 1:16-cv-01941 (LAK)
                                                :
                    Plaintiffs,                 :
                                                :
v.                                              :
                                                :
FIFTH STREET ASSET MANAGEMENT                   :
INC., *et al.,*                                 :
                                                :
                    Defendants.                 :
————————————————————————x

## [PROPOSED] FINAL JUDGMENT

Consistent with the terms of the Order Approving Class-Action Settlement entered on

_____ __, 2016 (the "Final Order"), the settlement of this class action on the terms set forth in

the parties' Stipulation of Settlement dated as of July 27, 2016, including all exhibits

(collectively, the "Settlement Agreement"), is approved as fair, reasonable, and adequate and

consistent with and in compliance with all applicable requirements of the Federal Rules of Civil

Procedure, the United States Constitution (including the Due Process Clause), the Private

Securities Litigation Reform Act of 1995 (the "PSLRA"), the Rules of this Court, and in the best

interests of the Class Members.  Unless otherwise defined in this Final Judgment, the capitalized

terms in this Final Judgment have the same meaning as in the Settlement Agreement.

1.     The Court finally certifies the following Class for settlement purposes pursuant to

Fed. R. Civ. P. 23(a) and (b)(3):  all persons and entities (or legal beneficiaries) who purchased

or otherwise acquired common stock of Fifth Street Asset Management Inc. ("FSAM") pursuant

or traceable to the Registration Statement issued in connection with FSAM's initial public

offering (the "IPO").  Excluded from the Class are:

(a)      All Defendants; any other individuals who were officers or directors (as determined under section 16 of the Exchange Act) of FSAM between the date of the IPO and January 7, 2016 (the "Filing Date"); Family Members of any of the foregoing, and their legal representatives, trustees, administrators, heirs, successors, or assigns; and any entity in which any Defendant had a Controlling Interest between the date of the IPO and the Filing Date;

(b)      persons or entities who submitted valid and timely requests for exclusion from the Class (a listing is annexed to this Judgment as Exhibit 1); and

(c)      persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against the Releasees and released the Releasees from any further Claims concerning their purchase or other acquisition of FSAM common stock pursuant or traceable to the Registration Statement.

2.      The Individual Notice (including the Claim Form), the Publication Notice, and the notice methodology implemented pursuant to the Court's Order entered _____, 2016 (*i*) constituted the best practicable notice, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, the effect of the Settlement Agreement (including the Release), their right to object to the proposed Settlement and the related relief, their right to exclude themselves from the Class, and Class Members' right to appear at the Fairness Hearing, (*iii*) were reasonable and constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice, and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the PSLRA, and the Rules of the Court.

3.      The claims in the Action are hereby dismissed on the merits and with prejudice according to the terms of the Settlement Agreement and the Final Order, without costs to any party except as provided therein.

4.      Pursuant to this Judgment, without further action by anyone, and whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Class Member, and subject to paragraph 8 below, on and after the Final Settlement Date, Plaintiffs and all other Class Members, on behalf of themselves and the other Releasors, for good and sufficient consideration, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a.      all Released Plaintiffs' Claims against each and every one of the Releasees;

b.      all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the facts and circumstances of the Settlement Agreement, the Settlement terms, and their implementation, (*iii*) the provision of notice in connection with the proposed Settlement, and/or (*iv*) the resolution of any Claim Forms submitted in connection with the Settlement; and

c.      all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Lead Counsel or any other counsel representing Plaintiffs or any other Class Member in connection with or related in any manner to the Action, the settlement of the

3

Action, or the administration of the Action and/or its settlement, except to the extent otherwise specified in the Settlement Agreement.

5.      Pursuant to this Judgment, without further action by anyone, and subject to paragraph 8 below, on and after the Final Settlement Date, each and all Releasees, including Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged each and all Releasors, as well as Lead Counsel, from any and all Released Defendants' Claims, except to the extent otherwise specified in the Settlement Agreement.

6.      Pursuant to this Judgment, without further action by anyone, and subject to paragraph 8 below, on and after the Final Settlement Date, Plaintiffs and their counsel (including Lead Counsel), on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants' Counsel and all other Releasees from any and all Claims that relate in any way to any and all acts directly or indirectly relating to the prosecution, defense, or settlement of the Action or to the Settlement Agreement, except to the extent otherwise specified in the Settlement Agreement.

7.      Pursuant to this Judgment, without further action by anyone, and subject to paragraph 8 below, on and after the Final Settlement Date, Defendants, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any

4

person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged each other from any and all Defendants' Mutually Released Claims.

8.     Notwithstanding paragraphs 4 through 7 above, nothing in this Order or the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement Agreement, the Final Order, or the Judgment.

9.     Plaintiffs and all other Class Members (and their heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating in any way to the Released Plaintiffs' Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Action.  In addition, all persons are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Class Members as to the

Releasees, if such other lawsuit is based on or related in any way to the Released Plaintiffs' Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Action; *provided, however,* that nothing in this Judgment shall enjoin the pursuit of any Claims to enforce the Settlement Agreement.

10.    All Defendants, and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities, are permanently enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Defendants' Mutually Released Claims or the Released Defendants' Claims.

11.    All of the complaints filed in the Action were filed on a good-faith basis in accordance with the PSLRA and with Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information.  All Settling Parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

12.    Neither the Final Order nor the Final Judgment applies to the persons or entities who submitted timely and valid exclusion requests and are named on the list annexed as Exhibit 1.

13.    Without affecting the extent to which the Final Judgment and the Final Order are final for purposes of any appeals, this Court retains continuing and exclusive jurisdiction over the Action as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Final Judgment, and the Final Order, and for any other reasonably necessary purpose.

14.     FINAL JUDGMENT in the Action is hereby entered in accordance with Fed. R.

Civ. P. 58.  The Clerk of the Court is respectfully directed to mark this case closed.

IT IS SO ORDERED.


Dated:  _____          _____
                                             The Honorable Lewis A. Kaplan
                                             United States District Judge

7

EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————x
**RONALD K. LINDE**, *et al.*, **Individually and on**    :
**Behalf of All Others Similarly Situated,**               :    **Case No. 1:16-cv-01941 (LAK)**
                                                           :
                        **Plaintiffs,**                    :
                                                           :
**v.**                                                     :
                                                           :
**FIFTH STREET ASSET MANAGEMENT**                          :
**INC.**, *et al.*,                                        :
                                                           :
                        **Defendants.**                    :
————————————————————————x

**NOTICE OF: (1) PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION;**
**(2) MOTION FOR ATTORNEYS' FEES AND EXPENSES; AND**
**(3) HEARING ON PROPOSED SETTLEMENT**

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:  Your rights may be affected by a class action (the "Action") pending in this Court if you purchased or otherwise acquired common stock of Fifth Street Asset Management Inc. ("FSAM") pursuant or traceable to the Registration Statement for FSAM's initial public offering, which began on approximately October 30, 2014 (the "IPO").**

**NOTICE OF SETTLEMENT:  Lead Plaintiffs Kieran and Susan Duffy ("Plaintiffs"), on behalf of the Class, have reached a proposed settlement (the "Settlement") with defendants FSAM, Leonard M. Tannenbaum, Bernard D. Berman, Alexander C. Frank, Steven M. Noreika, Wayne Cooper, Mark J. Gordon, Thomas L. Harrison, and Frank C. Meyer (collectively, "Defendants") to resolve all claims asserted in the Action.  The Settlement calls for Defendants to pay $9,250,000 for the benefit of the Class.**

**This Notice explains important rights you may have, including your possible receipt of cash from the Settlement.  If you are a Class Member, your legal rights will be affected whether you act or not.  Please read this Notice carefully!**

1.   **Description of the Lawsuit and Class:**  The Action is a securities class action filed against FSAM and the other Defendants.  Plaintiffs and Defendants have reached an agreement to settle the Action, subject to Court approval.  The proposed Settlement, if approved, will provide relief to all persons and entities who purchased FSAM common stock pursuant or traceable to the IPO Registration Statement and who qualify for a distribution under the Plan of Allocation described below.

2.   **Statement of Class's Recovery:**  The proposed Settlement provides for a payment of $9,250,000 in cash (the "Settlement Amount"), which will be deposited into an Escrow Account.  The Net Settlement Fund (meaning the Settlement Amount plus any interest that accrues, minus taxes, notice and administrative costs, and attorneys' fees and litigation expenses awarded to counsel representing Plaintiffs and the Class) will be distributed in accordance with the Plan of Allocation approved by the Court for determining how the Net Settlement Fund will be allocated among the Class Members.  The proposed Plan of Allocation is included in this Notice.  Plaintiffs' damages consultant estimates that approximately 14,123,733 shares of FSAM common stock might have been affected by the conduct alleged in the Action.  If all Class Members choose to participate in the Settlement, the average per-share recovery from the Net Settlement Fund will be approximately $0.66 per affected share before the deduction of attorneys' fees, costs, and expenses as approved by the Court.

3.   **Statement of Potential Outcome of Case:**  Plaintiffs and Defendants do not agree on the average amount of damages per share that would be recoverable if Plaintiffs were to prove their claims.  Defendants would expressly deny that any shares of FSAM common stock were damaged as alleged.  Instead, Defendants would contend that the price of FSAM common stock was not inflated by any allegedly false or misleading public statements and that the price decline alleged in the Action did not result from any misconduct.

4.   **Statement of Attorneys' Fees and Litigation Expenses Sought:**  Lead Counsel (Glancy Prongay & Murray LLP) will ask the Court for (*i*) an award of attorneys' fees of not more than 25% of the Settlement Fund, or $2,312,500, and (*ii*) litigation expenses not to exceed $175,000, with all amounts to be paid from the Settlement Fund.  In addition, Plaintiffs may seek reimbursement of their time and expenses, including lost wages, of not more than $2,500.  If the Court approves Lead Counsel's application, the average cost per affected share will be approximately $0.18.

5.   **Reasons for Settlement:**  Plaintiffs believe that their claims have merit and that they would prevail at trial. Defendants believe that the claims are without merit and that Plaintiffs would lose at trial.  Nevertheless, the parties have agreed to settle the case to avoid the risks, burdens, and expense of continued litigation, to provide relief to the Class, and to end the Action.

6.   **Identification of Lawyers' Representatives:**  Plaintiffs and the Class are being represented by Glancy Prongay & Murray LLP, the Court-appointed Lead Counsel.  Any questions about the Settlement should be sent to Glancy Prongay & Murray LLP at the address and telephone number given below.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **REMAIN A MEMBER OF THE CLASS AND SUBMIT A CLAIM FORM** | This is the only way to be eligible for a payment.  If you want to obtain a payment as a Class Member, you must submit a Claim Form (included with this Notice) *postmarked or received* **no later than _____, 2016. You can also visit www.FSAMSecuritiesSettlement.com to obtain, complete, and file a Claim Form online.** |
| **EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION *RECEIVED* NO LATER THAN _____, 2016** | Get no payment.  This is the only option that allows you to ever be part of any other lawsuit against Defendants and the other Releasees concerning the claims in this case. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING WRITTEN OBJECTIONS *RECEIVED* NO LATER THAN _____, 2016** | Write to the Court and explain why you do not like the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and litigation expenses.  You cannot object to the Settlement unless you are a Class Member and do not exclude yourself. |
| **GO TO THE HEARING ON _____, 2016, AT \_\_\_\_\_ \_\_.M., AND FILE A NOTICE OF INTENTION TO APPEAR, *RECEIVED* NO LATER THAN _____, 2016** | Ask to speak in Court about the fairness of the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and litigation expenses. |
| **DO NOTHING** | Get no payment.  Remain a Class Member.  Give up your rights. |

INQUIRIES:  Please do not contact the Court about this notice.  All inquiries about this Notice, the Claim Form, or anything else should be directed to the Claims Administrator or Lead Counsel:

**FSAM Securities Settlement**
c/o A.B. Data, Ltd..
P.O. Box 173018
Milwaukee, WI 53217
Tel.: 877-240-3531
info@FSAMSecuritiesSettlement.com
www.FSAMSecuritiesSettlement.com

**Glancy Prongay & Murray LLP**
Lionel Z. Glancy
1925 Century Plaza East, Suite 2100
Los Angeles, CA 90067
Tel.: 888-773-9224
settlements@glancylaw.com
www.glancylaw.com

| WHAT THIS NOTICE CONTAINS |
| --- |

Why Did I Get This Notice? — Page 1
What Is This Case About?  What Has Happened So Far? — Page 2
How Do I Know Whether I Am Affected By The Settlement? — Page 2
Why Have Defendants Agreed To The Settlement? — Page 3
Why Have Plaintiffs Agreed To The Settlement? — Page 3
What Might Happen Without A Settlement? — Page 3
How Much Will My Payment Be? — Page 3
What Rights Am I Giving Up By Agreeing To The Settlement? — Page 5
What Payment Are The Attorneys For The Class Seeking?  How Will The Lawyers Be Paid? — Page 6
How Do I Participate In The Settlement?  What Do I Need To Do? — Page 6
What If I Do Not Want To Be A Part Of The Settlement?  How Do I Exclude Myself? — Page 7
When And Where Will The Court Decide Whether To Approve The Settlement?  Do I Have To Come To The Hearing?  Can I Object To The Settlement?  May I Speak At The Hearing If I Don't Like The Settlement? — Page 7
What If I Bought Shares On Someone Else's Behalf? — Page 8
Can I See The Court File?  Whom Should I Contact If I Have Questions? — Page 9

| WHY DID I GET THIS NOTICE? |
| --- |

7.   This Notice is being sent to you by order of the United States District Court for the Southern District of New York (the "Court"), because you or someone in your family may have purchased FSAM common stock pursuant or traceable to FSAM's IPO Registration Statement.  As a potential Class Member, you should know about your options and how a class action and a class-action settlement may affect your legal rights.

8.   A class action is a type of lawsuit filed by a person or entity called a "plaintiff" against the "defendants" (FSAM and others).  A class action asks the court to resolve the claims of a number of persons and entities together, to provide consistency and efficiency.  The court selects one or more people, known as "class representatives" or "lead plaintiffs," to sue on behalf of all people with similar claims (the "class" or the "class members").  Once the class is certified, the court resolves all issues on behalf of the whole class, except for any persons who exclude themselves from the class.

9.   In this Action, which is known as *Linde v. Fifth Street Asset Management Inc.*, the Court has appointed Kieran and Susan Duffy as "Lead Plaintiffs" and Glancy Prongay & Murray LLP as "Lead Counsel" under a federal law governing this type of lawsuit.

10. This Notice explains the Action, the proposed Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.  The Notice tells you how you might be affected by the Action and how you can exclude yourself from the Class.  The Notice also describes the hearing that the Court will hold to consider the fairness, reasonableness, and adequacy of the proposed Settlement (the "Fairness Hearing").

11. The Fairness Hearing will be held on _____, 2016, at _____ __.m., before United States District Judge Lewis A. Kaplan, at the United States District Court for the Southern District of New York, located at 500 Pearl Street, Courtroom 2240, New York, New York 10007.  At the hearing, the Court will determine:

(i)    whether the proposed Settlement is fair, reasonable, and adequate and should be approved, and whether the claims against the Defendants should be dismissed with prejudice and a permanent injunction entered;

(ii)   whether the proposed Plan of Allocation is fair and reasonable and should be approved; and

(iii)  whether Lead Counsel's request for attorneys' fees and litigation expenses should be approved.

12. This Notice does not express the Court's opinion about the merits of any claims in the Action, and the Court has not yet decided whether to approve the proposed Settlement.  If the Court approves the Settlement, payments will be made after any appeals have been resolved and all claims have been processed.  Please be patient.

| WHAT IS THIS CASE ABOUT?  WHAT HAS HAPPENED SO FAR? |
| --- |

13. FSAM is a Connecticut-based asset-management company that (through subsidiaries) provides management and administrative services to two business-development companies:  Fifth Street Finance Corp. ("FSC") and Fifth Street Senior Floating Rate Corp ("FSFR").

14. Starting in January 2016, class actions were filed by purchasers of FSAM common stock alleging violations of the federal securities laws.  On April 22, 2016, the Court appointed the Lead Plaintiffs and Lead Counsel.

15. On June 13, 2016, Lead Plaintiffs filed an amended complaint (the "Complaint") asserting claims under the Securities Act of 1933.  The Complaint contends that FSAM's IPO Registration Statement contained material misrepresentations and omissions about the quality and value of FSC's assets, the management fees that FSC and FSFR paid to FSAM, FSAM's assets under management, and FSAM's dividends.  Lead Plaintiffs allege that Defendants engaged in a scheme to inflate FSC's and FSFR's assets and investment income in order to increase FSAM's fee revenue before FSAM's IPO.  The Complaint contends that those alleged misstatements and omissions inflated the price of FSAM's common stock in and after the IPO.

16. The parties engaged in settlement discussions – with the assistance of a mediator (a retired California Superior Court Judge) – and were able to reach the proposed Settlement described here.

| HOW DO I KNOW WHETHER I AM AFFECTED BY THE SETTLEMENT? |
| --- |

17. If you are a member of the Class, you are subject to the Settlement unless you timely and validly ask to be excluded from it.  The Class consists of all persons and entities (or legal beneficiaries) who purchased or otherwise acquired FSAM common stock pursuant or traceable to the IPO Registration Statement.

18. The Class does *not* include:  (*i*) all Defendants, any other individuals who were officers or directors (as determined under section 16 of the Exchange Act) of FSAM between the IPO and January 7, 2016 (the "Filing Date"), Family Members of any of the foregoing, and their legal representatives, trustees, administrators, heirs, successors, or assigns, and any entity in which any Defendant had a Controlling Interest between the IPO date and the Filing Date; (*ii*) persons or entities who submit timely and valid requests for exclusion from the Class; and (*iii*) persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against the Releasees and released the Releasees from any further Claims concerning their purchase or other acquisition of FSAM common stock issued pursuant or traceable to the Registration Statement.

**RECEIPT OF THIS NOTICE DOES NOT NECESSARILY MEAN THAT YOU ARE A CLASS MEMBER OR ARE ENTITLED TO RECEIVE MONEY FROM THE SETTLEMENT.  IF YOU WANT TO PARTICIPATE IN THE SETTLEMENT, YOU MUST SUBMIT THE CLAIM FORM ENCLOSED WITH THIS NOTICE.  THE CLAIM FORM MUST BE POSTMARKED OR RECEIVED NO LATER THAN _____, __ 2016.**

| WHY HAVE DEFENDANTS AGREED TO THE SETTLEMENT? |
|---|

19. Defendants deny that they engaged in any wrongdoing, violated any law, or breached any duty, and deny that the claims in the Complaint have any merit.  Defendants believe that they have substantial defenses to all of those claims and would prevail at trial.  Nevertheless, Defendants decided that settling the Action would be better than continuing to litigate, because a settlement would bring to an end the substantial expenses, burdens, and uncertainties of litigation, avoid further disruption of FSAM's management and operations, and provide benefits to Class Members.  The Settlement is not evidence of or an admission by Defendants of any fault or liability whatsoever, or of any weakness in any defenses that they have asserted or would assert in the Action.

| WHY HAVE PLAINTIFFS AGREED TO THE SETTLEMENT? |
|---|

20. Plaintiffs and Lead Counsel believe that the claims have merit and that Plaintiffs would prevail at trial.  But Plaintiffs and Lead Counsel also recognize the expense and length of continued proceedings necessary to pursue the claims through trial and appeals, the difficulties in establishing liability in complex actions such as this one, and the difficulties in collecting money even after a judgment.

21. The proposed Settlement would provide guaranteed cash compensation to eligible Class Members.  In light of the risks and expenses of continued litigation, the cash Settlement Amount, and the immediacy of recovery to the Class, Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Class.  Plaintiffs and Lead Counsel also recognize the risk that continued litigation of the claims in the Action could produce a similar or smaller recovery – or potentially no recovery at all – after motions to dismiss, summary judgment, trial, and appeals, possibly years in the future.

| WHAT MIGHT HAPPEN WITHOUT A SETTLEMENT? |
|---|

22. If there were no Settlement, and if Plaintiffs failed to establish any essential legal or factual element of their claims, neither Plaintiffs nor the Class would recover anything from Defendants.  Also, if Defendants were successful in proving any of their defenses, the Class would likely recover substantially less than the relief provided in the proposed Settlement, or nothing at all.

| HOW MUCH WILL MY PAYMENT BE? |
|---|

### THE PROPOSED PLAN OF ALLOCATION:  GENERAL PROVISIONS

23. As discussed above, the Settlement provides $9,250,000 in cash for the benefit of the Class.  The Settlement Amount and any interest it earns constitute the "Settlement Fund."  The "Net Settlement Fund" is the Settlement Fund after deduction of Court-approved attorneys' fees and litigation expenses, Notice and Administrative Expenses, Tax Expenses, and any other fees or expenses approved by the Court.  The Net Settlement Fund will be distributed to Authorized Claimants – *i.e.*, members of the Settlement Class who timely submit valid Claim Forms that show Recognized Claims pursuant to the Plan of Allocation and are approved by the Court.

24. The Net Settlement Fund will not be distributed unless and until the Court has approved the proposed Settlement and the Plan of Allocation (or some other allocation plan) and the Court's approval becomes "final" (meaning that the time to appeal the Order granting approval has expired, or, if the Order is appealed, that the appeal is decided without causing a material change in the Order or that the Order is upheld on appeal and is no longer subject to any further type of appellate review).  The Plan of Allocation is separate from the Settlement, so any decision by the Court concerning the Plan of Allocation will not affect the validity or finality of the Settlement.  The Court may approve the Plan of Allocation with or without modifications agreed to among the parties, or another plan of allocation, without further notice to Class Members.  Any orders about a modification of the Plan of Allocation will be posted to the Settlement website www.FSAMSecuritiesSettlement.com.

25. Payments under the Court-approved Plan of Allocation will be conclusive against all Authorized Claimants. No person shall have any claim against Plaintiffs, Lead Counsel, Defendants, Defendants' counsel, the Claims Administrator, or anyone else arising from distributions made substantially in accordance with the Settlement Agreement, the Plan of Allocation, or the Court's Orders.

26. The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim. **Please Note**: The formulas set forth herein are not intended to estimate either the amount that a Class Member might have been able to recover after a trial or the amount that will be paid to Authorized Claimants under the Settlement. The formulas are simply the basis upon which the Net Settlement Fund will be proportionately allocated to Authorized Claimants. Each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's Recognized Claim bears to the total Recognized Claims of all Authorized Claimants (*i.e.*, the Authorized Claimant's *pro rata* share). The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment would be $10.00 or greater, given the fees and expenses associated with printing and mailing payments.

27. The Plan of Allocation is designed to distribute the settlement proceeds fairly to those Class Members who suffered economic loss as a result of the alleged misconduct, as opposed to loss caused by general market conditions or other factors. The Plan reflects analyses conducted by Plaintiffs' damages consultant. In order to have a compensable loss, FSAM common stock must have been purchased or otherwise acquired pursuant or traceable to the Registration Statement and been held through an alleged corrective disclosure.

28. If any of the Net Settlement Fund remains (because of uncashed checks or otherwise) six (6) months after the initial distribution of such funds, and after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their initial distribution checks, such monies shall be (*i*) used for the payment of any unpaid Notice and Administrative Expenses and the costs or fees to be incurred in a redistribution of the remaining funds and then (*ii*) distributed in an economical fashion to Authorized Claimants who have cashed their initial distribution checks. If any funds remain in the Escrow Account after such redistribution(s), or if any such redistribution is not economically feasible, the unpaid residue shall be given to a nonprofit organization to be designated by Plaintiffs and approved by the Court and by FSAM (whose approval will not be unreasonably withheld).

## THE BASIS FOR CALCULATING YOUR RECOGNIZED CLAIM:

29. The Claims Administrator will calculate a "Recognized Loss Amount" for each purchase or acquisition of FSAM common stock listed in the Class Member's Claim Form and for which adequate documentation is provided. The Recognized Loss Amount will depend upon several factors, including (*i*) when the shares were purchased or acquired and (*ii*) whether they were held until the Filing Date or sold before the Filing Date, and, if so, when they were sold. In the calculations below, if a Recognized Loss Amount calculation results in a negative number, that Recognized Loss Amount shall be zero.

30. For shares of FSAM common stock purchased or otherwise acquired pursuant or traceable to the Company's Registration Statement between October 30, 2014 and January 7, 2016 and:

1.) sold prior to January 7, 2016, the Recognized Loss Amount is the lesser of (i) the purchase price per share less the sales price per share, or (ii) $17.00 less the sales price per share.

2.) retained at the close of trading on January 6, 2016, or sold on or after January 7, 2016, the Recognized Loss Amount is the lesser of (i) the purchase price per share less $3.44, (ii) $17.00 less $3.44, (iii) the purchase price per share less the sales price per share, or (iv) the purchase price per share less [the closing price of FSAM common stock on the date the Court enters the Notice Order].

31. An Authorized Claimant's "Recognized Claim" under the Plan of Allocation shall be the sum of his, her, or its Recognized Loss Amounts. Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants.

32. For purposes of calculating your Recognized Claim, all purchases, acquisitions, and sales shall be matched on a First In, First Out ("FIFO") basis in chronological order. Therefore, on the Claim Form enclosed with this Notice, you must provide all of your purchases and acquisitions of FSAM common stock during the time period from October 30, 2014 through January 7, 2016, inclusive.

33. For purposes of calculating your Recognized Claim, the date of purchase, acquisition, or sale – not the "settlement" or "payment" date – is the "contract" or "trade" date. The receipt or grant of FSAM stock by gift, inheritance, or operation of law shall not be deemed a purchase, acquisition, or sale of FSAM stock for the calculation of Recognized Claims. The covering purchase of a short sale is not an eligible purchase. Options are not eligible securities.

34. To the extent a claimant had an Out-Of-Pocket Trading Gain from his, her, or its overall transactions in FSAM common stock between the IPO date and the Filing Date, the value of the Recognized Claim will be zero, and the claimant will not be entitled to a share of the Net Settlement Fund. To the extent that a claimant suffered an Out-Of-Pocket Trading Loss on his, her, or its overall transactions in FSAM common stock between the IPO Date and the Filing Date, but that trading loss was less than the Recognized Claim calculated above, the Recognized Claim shall be limited to the amount of the claimant's actual Out-Of-Pocket Trading Loss. A Recognized Claim that calculates to yield a negative number is treated as a Recognized Claim of zero.

35. All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlement, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, shall be released and discharged from any and all claims arising out of such involvement, and all Class Members – whether or not they are to receive payment from the Net Settlement Fund – will be barred from making any further claim against the Net Settlement Fund beyond the amount allocated to them as provided in any distribution orders entered by the Court.

## WHAT RIGHTS AM I GIVING UP BY AGREEING TO THE SETTLEMENT?

36. If the Court approves the Settlement, it will enter a judgment (the "Judgment"). The Judgment will dismiss with prejudice the claims against Defendants and will say that, as of the Final Settlement Date, Plaintiffs and all other Class Members are deemed to have – and by operation of the Judgment shall have – fully, finally, and forever released, relinquished, settled, and discharged any and all "Released Plaintiffs' Claims," including "Unknown Claims," against the Releasees and any claims or potential claims that were, could have been, or could be asserted in connection with the Released Plaintiffs' Claims.

37. "Released Plaintiffs' Claims" means (in summary) every Claim that Plaintiffs or any Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in any complaint filed in the Action or in any action consolidated into it) or (*ii*) could have asserted or could assert against any of the Releasees in connection with the facts and circumstances alleged in the Action, whether arising under any federal, state, or other statutory or common-law rule, in any court, tribunal, agency, or other forum, that both (A) arises out of or relates to the purchase or other acquisition, on or before the Filing Date, of FSAM common stock issued pursuant or traceable to the Registration Statement, or any other Investment Decision concerning those securities on or before the Filing Date, and (B) relates directly or indirectly to (*1*) the valuation of any of FSC's investments, investment decisions concerning FSC's portfolio and the due diligence undertaken in connection with those decisions, FSC's investment strategy, decisions whether to place any of FSC's investments on non-accrual status, decisions whether to impair or write down any of FSC's investments and the timing and amount of any write-downs or impairments, recognition of revenue from any of FSC's investments, the renegotiation or modification of any of the terms of FSC's investments, decisions concerning FSC's payment of dividends, FSC's and FSFR's advisory and administration arrangements with their investment advisor and administrator, accounting decisions as to any of FSC's investments, the performance or risk of FSC's investments, FSAM's financial position and financial metrics, FSAM's decisions regarding its dividends, FSAM's revenue-recognition practices, FSAM's Registration Statement and financial reports, and/or (*2*) any alleged statements about or characterizations of – or alleged failures to disclose information about – any of the foregoing matters. An "Investment Decision" is any decision on or before the Filing Date about an investment in FSAM common stock issued pursuant or traceable to

– 5 –

the Registration Statement, including a decision to hold those securities.  The complete definition of Released Plaintiffs' Claims is printed in the Claim Form.  You should read it carefully.

38. The term "Releasee," which is also printed in full in the Claim Form, includes FSAM and its past and present officers, directors, employees, and agents, as well as related persons and entities.

39. The Judgment will also state that Releasees will be deemed to have – and by operation of the Judgment shall have – fully, finally, and forever released, relinquished, settled, and discharged all claims, whether known or unknown, that Releasees have or could have asserted, or could assert, against Plaintiffs, Plaintiffs' lawyers, and/or any of their agents, if such claims arise out of or relate in any way to the institution, prosecution, or settlement of the Action, except claims relating to the enforcement of the Settlement.  In addition, Defendants will release all Defendants' Mutually Released Claims that any Defendant could otherwise have asserted directly or derivatively against any other Defendant.

40. Defendants will also ask the Court to enter "bar orders" barring any person or entity from suing the Releasees – and barring the Releasees from suing any other person or entity – for contribution, indemnification, and any other injury that relates to a Released Plaintiffs' Claim and arises from the barred person's or entity's alleged liability to the Class or any Class Member.

> ### WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING?
> ### HOW WILL THE LAWYERS BE PAID?

41. Plaintiffs' counsel has not received any payment for its services or expenses in connection with the Action. Lead Counsel will therefore apply to the Court for an award of attorneys' fees from the Settlement Fund of not more than 25% of the Settlement Fund and for litigation expenses not to exceed $175,000.  The Court will determine the amount of the award.

42. The requested attorneys' fees and litigation expenses will be the only payment to Lead Counsel for its efforts in achieving this Settlement and for its risk in undertaking this representation on a wholly contingent basis. Lead Counsel has committed time and expenses in litigating this case for the benefit of the Class.  The Court will decide what is a reasonable fee award and may award less than the amount requested by Lead Counsel.

43. As a Class Member, you are represented by Plaintiffs and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense. **You do not need to hire your own lawyer,** but, if you choose to do so, he or she must file a notice of appearance on your behalf with the Court and must serve copies of his or her notice of appearance on the attorneys listed in paragraph 56, below.

> ### HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

44. If you purchased or otherwise acquired FSAM common stock pursuant or traceable to the Registration Statement and are not excluded from the definition of the Class, and if you do not exclude yourself from the Class, then you are a Class Member.  As a Class Member, you will be bound by the proposed Settlement, if the Court approves it, and by any judgment or determination of the Court affecting the Class.

45. If you are a Class Member and want to claim money from the Net Settlement Fund, you must submit a Claim Form and supporting documentation.  A Claim Form is included with this Notice, or you may go to the website www.FSAMSecuritiesSettlement.com to download a Claim Form or ask that one be mailed to you. You may also obtain, complete, and file a Claim Form online by _____, 2016. You may also request a Claim Form by calling 877-240-3531 or e-mailing info@FSAMSecuritiesSettlement.com. Those who exclude themselves from the Class, and those who do not submit timely and valid Claim Forms with adequate supporting documentation, will not be entitled to share in the settlement money.

46. The Claim Form and the required documents must be sent to the address (including the email address) printed in the Claim Form and must be **received or postmarked no later than _____, 2016**.  Unless the Court otherwise orders, any Class Member who fails to submit a timely Claim Form will be forever barred from receiving payments from the Settlement, but will remain a Class Member and be subject to the provisions of the

Settlement Agreement and the Court's Orders and Judgment.  This means that each Class Member will release the Released Plaintiffs' Claims against Defendants and the other Releasees and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiffs' Claims against Defendants regardless of whether such Class Member submits a Claim Form.

47. The Claim Form asks you to provide information and documentation about your purchases, holdings, and sales of FSAM common stock before the IPO, in and after the IPO, and as of the Filing Date.  Please retain all records of your ownership of, or transactions in, FSAM common stock so you can document your claim.

48. If you submit a Claim Form that is rejected in whole or in part, and if you want to dispute that decision, the Court will make a final, binding, and nonappealable decision on the dispute.

---

**WHAT IF I DO NOT WANT TO BE A PART OF THE SETTLEMENT?
HOW DO I EXCLUDE MYSELF?**

---

49. If you do *not* want to participate in the proposed Settlement and be bound by the rulings and judgments in this Action, you must exclude yourself from the Class.  To do so, you must submit a written Request for Exclusion by first-class mail (or its equivalent outside the U.S.) or other delivery to FSAM Securities Settlement - EXCLUSIONS, c/o A.B. Data, Ltd., P.O. Box 173018, Milwaukee, WI  53217.  The exclusion request must be ***received* no later than _____, 2016.**  You will not be able to exclude yourself from the Class after that date, unless the Court otherwise determines.

50. Each Request for Exclusion must (*i*) state the name, address, telephone number, and e-mail address (if available) of the person or entity requesting exclusion; (*ii*) state that such person or entity "requests exclusion from the Class in *Linde v. Fifth Street Asset Management Inc.*, No. 1:16-cv-01941 (LAK)"; (*iii*) be signed by the person or entity requesting exclusion; and (*iv*) provide the date(s), price(s), and number(s) of shares of all purchases and sales of FSAM common stock in and after the IPO through the Filing Date.

51. If you want to exclude yourself from the Class, you must follow these instructions even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiffs' Claims.

52. If you request exclusion from the Class, you will not receive any benefits from the proposed Settlement, and you cannot object to it.

---

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE
SETTLEMENT?  DO I HAVE TO COME TO THE HEARING?
CAN I OBJECT TO THE SETTLEMENT?
MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

---

53. The Fairness Hearing will be held on _____, 2016, at _____ _.m., before United States District Judge Lewis A. Kaplan, at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 2240, New York, New York 10007.  The Court reserves the right to approve the Settlement, the Plan of Allocation, and/or Lead Counsel's request for attorneys' fees and litigation expenses at or after the Fairness Hearing without further notice to the Class.  Lead Counsel intends to file papers in support of final approval of the proposed Settlement, the Plan of Allocation, and the request for attorneys' fees and litigation expenses on or before _____, 2016.  The papers will be posted at www.FSAMSecuritiesSettlement.com.

**54. You do not need to attend the Fairness Hearing.  You can participate in the Settlement without attending the Fairness Hearing.**

55. Any Class Member who does not submit a timely request for exclusion as described above may object to the proposed Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and litigation expenses.  Objections must be in writing and must include the following information:  (*i*) name and docket number of the Action (*Linde v. Fifth Street Asset Management Inc.*, Case No. 1:16-cv-01941 (LAK)); (*ii*) Class Member's name, address, telephone number, and e-mail address (if available); (*iii*) the date(s), price(s),

– 7 –

and number(s) of shares of all purchases and sales of FSAM common stock in and after the IPO through the Filing Date; (*iv*) account statements verifying all such transactions; (*v*) the reason(s) for the objection; (*vi*) any legal support that the Class Member wants to bring to the Court's attention; and (*vii*) any evidence or exhibits that the Class Member wants the Court to consider.

56. Objections must be timely filed with the Clerk of Court at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007. Objections must also be served on the Settling Parties' counsel by first-class mail, e-mail, or hand-delivery at:

| Lead Counsel for the Class | Defendants' Counsel |
|---|---|
| Lionel Z. Glancy, Esq. | Ralph C. Ferrara, Esq. |
| Glancy Prongay & Murray LLP | Proskauer Rose LLP |
| 1925 Century Plaza East, Suite 2100 | 1001 Pennsylvania Avenue, N.W. |
| Los Angeles, CA 90067 | Suite 600 South |
| settlements@glancylaw.com | Washington, DC 20004 |
| | rferrara@proskauer.com |

57. All objections must be ***received*** by the Court and the attorneys no later than _____, 2016.

58. You may file a written objection without appearing at the Fairness Hearing.

59. If you wish to speak at the Fairness Hearing, you must also file and serve a notice of intention to appear. The notice of intention to appear must include (*i*) name and docket number of the Action (*Linde v. Fifth Street Asset Management Inc.*, Case No. 1:16-cv-01941 (LAK)); (*ii*) your name, address, telephone number, and e-mail address (if available), and (*iii*) your attorney's contact information, if you have an attorney. You must file and serve your notice of intention to appear with the Court and the Settling Parties' counsel, at the addresses listed in paragraph 56 above, so that it is ***received*** on or before _____, **2016.**

60. You do not need to hire an attorney to represent you in making written objections or in appearing at the Fairness Hearing. However, if you decide to hire an attorney at your own expense, he or she must file a notice of appearance with the Court and serve it on the Settling Parties' counsel, at the above addresses, so that the notice is ***received*** on or before _____, 2016.

61. The Court may change the date of the Fairness Hearing without further written notice to the Class. If you intend to attend the hearing, you should confirm the date and time with Lead Counsel or by checking the settlement website.

**Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and will be forever foreclosed from objecting to the proposed Settlement, the Plan of Allocation, or Lead Counsel's request for attorneys' fees and litigation expenses. Class Members do not need to appear at the Fairness Hearing or take any other action to indicate their approval.**

| WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF? |
|---|

62. If you purchased or otherwise acquired FSAM common stock pursuant or traceable to the Registration Statement as a nominee or for the beneficial interest of a person or organization *other than yourself*, **YOU MUST, WITHIN FOURTEEN (14) CALENDAR DAYS** after receipt of the Individual Notice, **EITHER (A)** request from the Claims Administrator sufficient copies of the Individual Notice and Claim Form to forward to all such beneficial owners and, WITHIN FOURTEEN (14) CALENDAR DAYS after receipt of the copies of the Individual Notice and Claim Form, forward them to all such beneficial owners; **OR (B)** provide a list of the names and addresses of all such beneficial owners to FSAM Securities Settlement, c/o A.B. Data, Ltd., Fulfillment, 3410 West Hopkins Street, P.O. Box 173018, Milwaukee, WI 53217. If you mail Individual Notices and Claim Forms to beneficial owners, YOU MUST, upon making such mailing, send a statement to the Claims Administrator confirming that the mailing was made as directed, and retain the list of names and addresses for use in connection with any possible future notice to the Class. Upon full compliance with this directive, including the timely mailing

of the Individual Notices and Claim Forms to beneficial owners, you may seek reimbursement of your reasonable expenses actually incurred by providing the Claims Administrator with proper documentation supporting the reasonable expenses for which reimbursement is sought and reflecting compliance with these instructions, including timely mailing of the Individual Notices and Claim Forms.

63. In addition, you may download the Notice from the settlement website www.FSAMSecuritiesSettlement.com, where you also can view other documents relating to the proposed Settlement.

| CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS? |
|---|

64. This Notice contains only a summary of the terms of the proposed Settlement.  More detailed information about the Action is available at the settlement website, including copies of the Settlement Agreement, the Claim Form, the Complaint, the Court's orders about the Settlement, and the relevant motion papers.  All inquiries about this Notice should be directed to:

| Claims Administrator | Lead Counsel for the Class |
|---|---|
| FSAM Securities Settlement | Lionel Z. Glancy, Esq. |
| c/o A.B. Data, Ltd. | Glancy Prongay & Murray LLP |
| P.O. Box 173018 | 1925 Century Plaza East, Suite 2100 |
| Milwaukee, WI  53217 | Los Angeles, CA  90067 |
| Tel.:  877-240-3531 | Tel.:  888-773-9224 |
| Email:  info@FSAMSecuritiesSettlement.com | settlements@glancylaw.com |
| Website:  www.FSAMSecuritiesSettlement.com | www.glancylaw.com |

**PLEASE DO *NOT* CALL OR WRITE THE COURT OR THE CLERK OF COURT ABOUT THIS NOTICE.**

Dated: _____, 2016          By Order of the Clerk of Court
                                United States District Court for the Southern District of New York

# EXHIBIT E

**FIFTH STREET ASSET MANAGEMENT INC. SECURITIES SETTLEMENT**
**Case No. 1:16-cv-01941 (LAK) (S.D.N.Y.)**

**CLAIM FORM AND RELEASE**

**YOU MUST SUBMIT A COMPLETED CLAIM FORM THAT IS POSTMARKED OR RECEIVED BY A.B. DATA, LTD. (THE "CLAIMS ADMINISTRATOR") NO LATER THAN _____, 2016 TO BE ELIGIBLE TO SHARE IN THE SETTLEMENT.**

**TABLE OF CONTENTS**

**PAGE #**

**SECTION I – GENERAL INSTRUCTIONS** ......................................................................... 1

**SECTION II – CLAIMANT IDENTIFICATION.** ................................................................. 3

**SECTION III – TRANSACTIONS IN FSAM COMMON STOCK** ........................................ 4

**SECTION IV – RELEASE AND SIGNATURE** ................................................................... 6

**SECTION I -  GENERAL INSTRUCTIONS**

1.    You should read the "Notice of (1) Pendency and Proposed Settlement of Class Action; (2) Motion for Attorneys' Fees and Expenses; and (3) Hearing on Proposed Settlement" (the "Individual Notice") that accompanies this Claim Form, as well as the Plan of Allocation included in the Individual Notice.  The Individual Notice and the Plan of Allocation describe the proposed Settlement of this Action, how Class Members are affected by the Settlement, and how the Net Settlement Fund will be distributed if the Court approves the Settlement and the Plan of Allocation.  The Individual Notice also contains the definitions of many of the defined terms (shown with initial capital letters) used in this Claim Form.

2.    TO PARTICIPATE IN THE SETTLEMENT, YOU MUST SUBMIT YOUR COMPLETED AND SIGNED CLAIM FORM – WITH THE REQUIRED SUPPORTING DOCUMENTATION – SO THAT IT IS RECEIVED OR POSTMARKED ON OR BEFORE _____ 2016, ADDRESSED TO:

> FSAM Securities Settlement
> c/o A.B. Data, Ltd.
> P.O. Box 173018
> Milwaukee, WI  53217
> Tel.:  877-240-3531
> info@FSAMSecuritiesSettlement.com

You can also visit www.FSAMSecuritiesSettlement.com to obtain, complete, and file a Claim Form online.

IF YOU DO NOT SUBMIT A TIMELY, PROPERLY ADDRESSED AND COMPLETED CLAIM FORM, YOUR CLAIM MAY BE REJECTED, AND YOU MAY BE PREVENTED FROM RECEIVING ANY SETTLEMENT MONEY.

3.    This Claim Form is directed to all persons and entities (or legal beneficiaries) who purchased or otherwise acquired FSAM common stock pursuant or traceable to the Registration Statement issued in connection with FSAM's initial public offering (the "IPO") on approximately October 30, 2014 (the "Class").  The following persons and entities are *excluded* from the Class under the terms of the Settlement Agreement:  (a) all Defendants; any other individuals who were officers or directors of FSAM between the date of the IPO and January 7, 2016 (the "Filing Date"); Family Members of any of the foregoing, and their legal representatives, trustees, administrators, heirs, successors, or assigns; and any entity in which any Defendant had a Controlling Interest between the date of the IPO and the Filing Date; (b) persons or entities who submit timely and valid requests for exclusion from the Class; and (c) anyone who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against the Releasees (defined below) and released the Releasees from any further Claims concerning their purchase or other acquisition of FSAM common stock pursuant or traceable to the Registration Statement.

4.    "Authorized Claimant" means a Class Member who timely submits to the Claims Administrator a valid Claim Form that is approved pursuant to the terms of the Settlement Agreement.

5.    IF YOU ARE NOT A CLASS MEMBER, OR IF YOU OR SOMEONE ACTING ON YOUR BEHALF FILED A REQUEST FOR EXCLUSION FROM THE CLASS, DO NOT SUBMIT A CLAIM FORM.  YOU MAY NOT PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A CLASS MEMBER.

6.    Submission of this Claim Form does not guarantee that you will share in the Net Settlement Fund.  Distributions from the Net Settlement Fund are governed by the Plan of Allocation, which must be approved by the Court.  The proposed Plan of Allocation is included in the Individual Notice.

7.    If you have questions about the Claim Form or need additional copies of it or of the Individual Notice, you may contact the Claims Administrator at the above address or telephone number.  You may also send your questions to

info@FSAMSecuritiesSettlement.com or download the documents from www.FSAMSecuritiesSettlement.com.

8.    If you are a Class Member and you do not (or someone acting on your behalf does not) submit a timely request for exclusion from the Class, and if the Court approves the Settlement, you will be bound by the Court's orders and judgment whether or not you submit a Claim Form.  The proposed judgment enjoins the filing or continued prosecution of all Released Plaintiffs' Claims and also releases the Releasees from Released Plaintiffs' Claims (defined below), including those that are subject to pending lawsuits or arbitrations.

9.    You must submit sufficient documentation for your transactions in FSAM common stock pursuant or traceable to the Registration Statement through January 7, 2016 (inclusive).   Documentation may be photocopies of stockbrokers' confirmation slips or monthly statements (reflecting your opening and closing balances for the months that are specified on the Claim Form and in which transactions occurred during the relevant period).  **If you do not have such documents in your possession, you should obtain copies or equivalent contemporaneous documents from your broker. The Settling Parties and Claims Administrator do not have information about your transactions.  Failure to supply this documentation may cause your claim to be rejected.  Do not send original stock certificates.**

10.    The date of covering a "short sale" is deemed to be the date of purchase of FSAM common stock.  The date of a "short sale" is deemed to be the date of sale of FSAM common stock.

11.    All joint purchasers must each sign this Claim Form.

12.    Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

    (a)    expressly state the capacity in which they are acting;

    (b)    identify the name, account number, Social Security number (or taxpayer identification number), address, telephone number, and e-mail address (if available) of the beneficial owner of (or other person or entity on whose behalf they are acting as to) the FSAM common stock; and

    (c)    submit evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting.  (Stockbrokers cannot establish their authority to complete and sign a Claim Form by demonstrating merely that they have discretionary authority to trade stock in another person's accounts.)

13.    By submitting a signed Claim Form, you will be affirming that:

    (a)    you own(ed) the FSAM common stock you have listed in the Claim Form; or

    (b)    you are expressly authorized to act on behalf of the owner of that common stock.

NOTE: Separate Claim Forms should be submitted for each separate legal entity (for example, a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in non-IRA accounts).  However, a single Claim Form submitted on behalf of one legal entity should include all transactions made by that entity, no matter how many separate accounts that entity has (for example, a corporation with multiple brokerage accounts should include on one Claim Form all transactions made in FSAM common stock pursuant or traceable to the Registration Statement, no matter how many accounts the transactions were made in).

14.  **NOTICE REGARDING ELECTRONIC FILES:**  Certain Claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files.  To obtain the mandatory electronic filing requirements and file layout, you may visit the settlement website at FSAMSecuritiesSettlement.com, or you may email the Claims Administrator's electronic filing department at efiling@abdata.com.  Any file not in accordance with the required electronic filing format will be subject to rejection.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email after processing your file with your claim numbers and respective account information.  Do not assume that your file has been received or processed until you receive this email. If you do not receive such an email within 10 days after your submission, you should contact the electronic filing department at efiling@abdata.com to inquire about your file and confirm it was received and acceptable.

IF YOU DO NOT SUBMIT A COMPLETE CLAIM BY _____ 2016, YOUR CLAIM IS SUBJECT TO REJECTION.

341484.1 FIFTHSTREET

**FSAM Securities Settlement**
c/o A.B. Data, Ltd.
PO Box 173018
Milwaukee, WI  53217
**United States of America**

| Must be Postmarked or Received No Later Than _____2016 |
| --- |

**CLAIM FORM AND RELEASE**

Please Type or Print in the Boxes Below

Do NOT use Red Ink, Pencil, or Staples

**SECTION II - CLAIMANT INFORMATION**

**Claimant or Representative Contact Information:**

The Claims Administrator will use this information for all communications regarding this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above.

Claimant Name(s) (as the name(s) should appear on check, if eligible for payment; if the shares are jointly owned, the names of all beneficial owners must be provided):

Name of Person the Claims Administrator Should Contact Regarding this Claim Form (Must Be Provided):

Mailing Address – Line 1: Street Address/P.O. Box:

Mailing Address – Line 2 (If Applicable): Apartment/Suite/Floor Number:

City:                                        State:        Zip Code:

Foreign Province:                    Foreign Postal Code:        Foreign Country:

Social Security Number or Taxpayer Identification Number:

Daytime Telephone Number:                    Evening Telephone Number:

Email address (E-mail address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.):

**SECTION III – TRANSACTIONS IN FSAM COMMON STOCK**

3

**YOU MUST SUBMIT DOCUMENTATION SUPPORTING THE INFORMATION BELOW**

1.   **PURCHASES:** List all purchases of FSAM common stock during the period **October 30, 2014** through and including **[the date the Court enters the Notice Order]**.  (NOTE:  If you acquired your FSAM common stock during this period other than by an open-market purchase, please provide a complete description of the terms of the acquisition on a separate page.)  Be sure to attach the required documentation.

| Date of Purchase (List Chronologically) (Month/Day/Year) | Number of Shares Purchased | Purchase/Acquisition Price Per Share | Total Purchase/Acquisition Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

2.   **SALES:** List all sales of FSAM common stock during the period **October 30, 2014** through and including **[the date the Court enters the Notice Order]**.  Be sure to attach the required documentation.

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

3.   **UNSOLD HOLDINGS:** State the number of shares of FSAM common stock that the claimant owned at the close of business on **[the date the Court enters the Notice Order]**. Be sure to attach the required documentation.

**IF YOU REQUIRE ADDITIONAL SPACE FOR THE SCHEDULE ABOVE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT. PRINT THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY/TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE. IF YOU DO ATTACH EXTRA SCHEDULES, CHECK THIS BOX.**

YOU MUST READ AND SIGN THE RELEASE ON PAGE 6.  FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.

**SECTION IV - RELEASE AND SIGNATURE**

## I.     Definitions

Capitalized terms not already defined in this form have the following meanings.  Other defined terms have the meanings given them in the Stipulation of Settlement dated as of July 27, 2016 (the "Settlement Agreement").

**"Defendants' Mutually Released Claims"** means each and every Claim arising out of or relating to any or all of the acts, failures to act, omissions, misrepresentations, facts, events, matters, transactions, occurrences, or oral or written statements or representations on or before the Filing Date (including in the Registration Statement) that were or could have been alleged under the facts and circumstances pled in the Action (including in the Complaint and the original complaint filed in the Action), including the matters described in the definition of Released Plaintiffs' Claims; *provided, however,* that the term "Defendants' Mutually Released Claims" shall not apply to (*i*) any right to indemnification or advancement under any statute, charter, bylaw, or contract, (*ii*) any other contractual rights between or among Defendants, and (*iii*) any claims asserted in the FSC Derivative Actions.

**"Final Order"** is the Order of Dismissal to be entered by the Court upon approval of the Settlement, as contemplated by the Settlement Agreement, dismissing the Action with prejudice and without costs to any Releasee (except to the extent awarded by the Court), releasing all Released Plaintiffs' Claims as against the Releasees, and enjoining Class Members from instituting, continuing, or prosecuting any action asserting any Released Plaintiffs' Claims against any Releasee.

**"Released Defendants' Claims"** means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee, including any Defendant or the successors and assigns of any Defendant, against Plaintiffs, any other Class Members, or their attorneys (including Lead Counsel), that arises out of or relates in any way to the institution, prosecution, or settlement of the Action, except for claims to enforce the Settlement.

**"Released Plaintiffs' Claims"** means each and every Claim that Plaintiffs or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in any complaint filed in the Action or in any action consolidated into it) or (*ii*) could have asserted or could assert against any of the Releasees in connection with the facts and circumstances alleged in the Action, whether arising under any federal, state, or other statutory or common-law rule, in any court, tribunal, agency, or other forum, that both (A) arises out of or relates to the purchase or other acquisition, on or before the Filing Date, of FSAM common stock issued pursuant or traceable to the Registration Statement, or any other Investment Decision concerning those securities on or before the Filing Date, and (B) relates directly or indirectly to the matters described in Subsections a.-dd. below and/or any alleged statements about or characterizations of – or alleged failures to disclose information about – any of those matters, including with respect to both Subsections (*i*) and (*ii*) above:

a.   the valuation and management of Fifth Street Finance Corp.'s ("FSC's") investments, including the approach used in calculating the fair values of investments and the inputs used, assumptions made, and comparables and quotations relied upon, the quality checks that were conducted regarding valuation calculations, documentation concerning valuation decisions and calculations, decisions whether to write down or impair FSC's investments and the timing and amount of any investment write-downs, decisions whether to place investments on non-accrual status, decisions whether to obtain ITP valuations for particular investments, the selection of ITPs to perform such valuations, and the timing of ITP valuations of FSC's investments;

b.   the origination of investments for FSC's portfolio, including FSC's communications with and due diligence on investment sponsors, FSC's pre-investment due diligence and underwriting, the approval process for investments, and the structuring, negotiation, documentation, pricing, and terms of FSC's investments;

c.   FSC's risk management, including FSC's investment approach, the selection of its individual investments, creditor protections negotiated in connection with those investments, underwriting policies, the overall risk profile and credit quality of FSC's portfolio, and any characterizations or descriptions of those matters;

d.   FSC's leverage, including the aggregate amount of its indebtedness and the terms and structure of its various financing arrangements;

e.   the management of FSC's portfolio, including the processes used to manage the investments, the inputs into the Black Mountain platform regarding investments, the review, ranking, and rating of investments, and decisions to place investments on FSC's "Watchlist";

f.   waivers, amendments, and loan modifications effected regarding FSC's investments, including decisions regarding waivers of cash interest, conversion of loans to PIK interest, the modification of loan terms or interest rates, the provision of any additional financing to companies in which FSC had already made a debt or equity investment, the acquisition of control investments, or the sale, liquidation, or other disposal of investments;

g.   FSC's fair-value accounting and recognition of income, including its revenue recognition for original-issue discounts, accruals, accruals on contingent-payment debt instruments, PIK interest, loan-origination fee income, and other fee income;

h.   policies, processes, and procedures concerning the valuation of investments, portfolio management, revenue recognition, and disclosure, including FSC's Valuation Policy, Valuation Narrative, Portfolio Management Narrative, Revenue Recognition Narrative, and Disclosure Policy;

i.   decisions regarding FSC's dividends, including whether to pay dividends in any particular quarter, the amount of dividends to be paid, announcements of and statements regarding dividends, and the timing of dividend payments;

j.   FSC's investment-advisory arrangements with FSM and/or its Affiliates, including the services provided by FSM, all base, incentive, and other fees, costs, and expenses paid by FSC under the Investment Advisory Agreement ("IAA"), the provisions of the IAA, communications between FSC and its shareholders (including RiverNorth Capital Management LLC) regarding the IAA, and FSC's indemnity and advancement obligations to FSM or its Affiliates;

k.   FSC's administration arrangements with FSC CT and/or its Affiliates, including the services provided by FSC CT, all costs, fees, and expenses paid by FSC under the Administration Agreement with FSC CT, the provisions of the Administration Agreement, and FSC's indemnity and advancement obligations to FSC CT or its Affiliates;

l.   FSC's participation in investments in which other affiliates within the Fifth Street platform also participated, including the allocation of the investment participation among the various Fifth Street entities and implementation of the Investment Allocation Policy;

m.   FSC's participation in any agreements, ventures, partnerships, or any similar arrangements with any of its affiliates, including any alleged conflicts of interest and FSC's waiver of any alleged conflicts;

n.   FSC's partnership with Trinity Universal Insurance Company (a subsidiary of Kemper Corporation) to establish Senior Loan Fund JV 1, LLC ("SLF JV1"), and the financial performance and income generation of SLF JV1;

o.   FSC's September 26, 2013 follow-on offering of common stock, July 10, 2014 secondary offering of common stock, and September 2014 at-the-market offering of common stock, as well as any materials disseminated and statements made in connection with those offerings;

p.   accounting treatment relating to investments (including the recognition of revenue) and to fees paid to FSC's investment advisor and administrator;

q.   FSC's assets, asset quality, financial condition, revenues, income (including fee income, net investment income, and PIK income), expenses, earnings per share, and other financial metrics, and auditors' comments about FSC's financial condition;

r.   FSC's governance and internal controls, including any deficiencies and weaknesses in such controls;

s.   FSC's earnings announcements and other public statements about financial results on or before the Filing Date;

t.   FSFR's investment advisory agreements with FSM and/or its affiliates, including the services provided by FSM and/or its affiliates, all base, incentive, and other fees, costs, and expenses paid by FSFR under those agreements, and the provisions of those agreements;

u.   FSFR's August 19, 2014 follow-on offering of common stock, and any materials disseminated and statements made in connection with that offering;

v.   FSAM's IPO, the offering's alleged impact on FSAM's, FSM's, and/or FSC CT's performance of services for FSC or FSFR, and the uses of the IPO proceeds;

w.   FSAM's financial position and financial metrics, including assets under management, revenue, income, loan-origination income, receipt of management and advisory fees, and earnings per share;

x.   FSAM's decisions regarding its dividends, including the amount of dividends to be paid and announcements of and statements regarding dividends;

y.   FSAM's revenue-recognition practices and recognition of revenue from fees, loan originations, or other sources;

z.   the membership of FSAM's Board of Directors and/or any Committees of its Board of Directors (including the Corporate Governance Committee);

aa.        FSAM's governance, compliance procedures, and internal controls, including any deficiencies and weaknesses in such controls;

bb.        FSAM's membership interest in and dealings with IMME LLC;

cc.   FSAM's Registration Statement, earnings announcements, rescheduling of earnings announcements, and other public statements about financial results on or before the Filing Date; and

dd.        Releasees' statements about, characterizations of, or alleged omissions concerning any or all of the above matters, including any alleged failures to comply with Item 303 of SEC Regulation S-K.

The term "Released Plaintiffs' Claims" also includes any Claim relating to the initiation, litigation, settlement, or dissemination of notice of the Action, including the payment of any settlement relief to settle the Action; provided however, that the term "Released Plaintiffs' Claims" does not include any claims to enforce this Settlement Agreement or brought on behalf of FSC stock purchasers in the FSC Class Action.

**"Releasees"** means (a) Defendants and their Family Members, heirs, successors, representatives, agents, and assigns; (b) every entity that falls within the definition of FSAM Releasees; and (c) each of the FSAM Releasees' respective past and present directors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys (including in-house or outside attorneys (including Defendants' Counsel) employed or retained by the FSAM Releasees), advisors, investment bankers, trustees, administrators, fiduciaries, consultants, actuaries, representatives, accountants, accounting advisors, auditors, insurers, reinsurers, service providers, and valuation firms (including independent third-party firms).

**"Unknown Claims"** means any and all Released Plaintiffs' Claims that any Plaintiff or any other Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Releasees, and any Released Defendants' Claims or Defendants' Mutually Released Claims that any Defendant does not know or suspect to exist in his or its favor, which, if known by Plaintiffs, the other Class Member, or Defendants, might have affected his, her, its, or their decision(s) concerning the Settlement. As to any and all Released Plaintiffs' Claims, Released Defendants' Claims, and Defendants' Mutually Released Claims, the Settling Parties stipulate and agree that, upon the Final Settlement Date, Plaintiffs and Defendants shall expressly waive, and each other Class Member, Releasor, and releasee shall be deemed to have waived, and by operation of the Final Order and the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and Defendants acknowledge, and the other Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Plaintiffs' Claims, Released Defendants' Claims, and Defendants' Mutually Released Claims was separately bargained for and was a key element of the Settlement.

## II.     The Release

I (we) understand and acknowledge that, without further action by anyone, on and after the entry of the Final Order and Judgment, and upon the Final Settlement Date, I (we), as a Class Member(s) (even if I (we) have pending or later initiate any other actions, arbitrations, or other proceedings against Defendants or any related person or entity relating to Released Plaintiffs' Claims), on behalf of myself (ourselves), my (our) parents, predecessors, successors, heirs, executors, administrators, successors, assigns, and any person or entity claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of me (us), for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged all Released Plaintiffs' Claims against each and every one of the Releasees, including all Released Plaintiffs' Claims that may already have been asserted in any pending action, arbitration, or other proceeding, and whether or not a Claim Form is executed and delivered by, or on behalf of, me (us).

## SIGNATURE AND CERTIFICATIONS

By signing and submitting this Claim Form, the Claimant or the person who represents the Claimant certifies as follows:

1.   The claimant is a Class Member, as defined in the Individual Notice;

2.   I (we) have read and understand the contents of the Individual Notice and the Claim Form;

3.   I am (we are) not acting for FSAM; nor am I (are we) otherwise excluded from the Class;

4.   I (we) have not filed a request for exclusion from the Class, and I (we) do not know of any request for exclusion from the Class filed on my (our) behalf as to my (our) transactions in FSAM common stock;

5.   I (we) own(ed) the FSAM common stock identified in the Claim Form, or, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

6.   Claimant may be entitled to receive a distribution from the Net Settlement Fund;

7.   Claimant wants to participate in the Settlement described in the Individual Notice and agrees to the Settlement's terms and conditions;

8.   I (we) submit to the jurisdiction of the United States District Court for the Southern District of New York for all matters related to this Claim Form;

9.  I (we) agree to furnish such additional information concerning this Claim Form as the parties or the Court may require;

10.  I (we) waive trial by court or jury, to the extent it exists, concerning this Claim Form and any right to appeal the determination of this Claim Form, and agree to the Court's final disposition of any disputes about the validity or amount of the claim made by this Claim Form or the amount payable to any claimant; and

11.  I am (we are) not subject to backup withholding under the provisions of Section 3406(a)(1)(c) of the Internal Revenue Code.

**NOTE**: If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike the language that you are not subject to backup withholding in the certification above.  The Internal Revenue Service does not require your consent to any provision other than the certification required to avoid backup withholding.

I (we) declare, under penalty of perjury under the laws of the United States of America, that the statements made and answers given in this Claim Form are true and correct and that the documents submitted with this Claim Form are true and genuine.

Executed this _____day of _____ in _____

<table>
<tr><td>(Month/Year)</td><td>(City/State/Country)</td></tr>
</table>

_____      _____
(Sign your name here)                                       (Sign your name here)

_____      _____
(Type or print your name )                              (Type or print your name )

_____      _____
(Capacity of persons signing, e.g., Beneficial Purchaser, Executor or Administrator)      (Capacity of persons signing, e.g., Beneficial Purchaser, Executor or Administrator)

**ACCURATE CLAIM PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.
THANK YOU FOR YOUR PATIENCE.**

REMINDER CHECKLIST:

1.  Please sign the Certification Section of this Claim Form.

2.  Keep a copy of your Claim Form and all submitted documentation for your records.

3.  If this claim is made on behalf of joint claimants, then each claimant must sign.

4.  Please remember to attach copies of supporting documents.

5.  If you move, please send us your new address.

6.  DO NOT SEND ORIGINALS OF ANY SUPPORTING DOCUMENTS.

7.  **Do not use highlighter on the Claim Form or supporting documentation**.

THIS CLAIM FORM MUST BE POSTMARKED OR SUBMITTED NO LATER THAN
_____ __, 2016, AND SENT TO:

FSAM Securities Settlement
c/o A.B. Data, Ltd.
P.O. Box 173018
Milwaukee, WI  53217
info@FSAMSecuritiesSettlement.com

341484.1 FIFTHSTREET
61071455v2

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x
**RONALD K. LINDE,** *et al.,* **Individually and on** :
**Behalf of All Others Similarly Situated,**          :     **Case No. 1:16-cv-01941 (LAK)**
                                                                          :
                    **Plaintiffs,**                              :
                                                                          :
**v.**                                                                 :
                                                                          :
**FIFTH STREET ASSET MANAGEMENT**       :
**INC.,** *et al.,*                                               :
                                                                          :
                    **Defendants.**                           :
———————————————————————x

**SUMMARY NOTICE OF:**
**(1) PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION;**
**(2) MOTION FOR ATTORNEYS' FEES AND EXPENSES; AND**
**(3) HEARING ON PROPOSED SETTLEMENT**

TO:      ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED SHARES
            OF **FIFTH STREET ASSET MANAGEMENT INC.** ("FSAM") COMMON
            STOCK PURSUANT OR TRACEABLE TO THE REGISTRATION
            STATEMENT FOR FSAM'S INITIAL PUBLIC OFFERING:

            YOU ARE HEREBY NOTIFIED that the above-captioned action has been

certified as a class action for settlement purposes and that the Lead Plaintiffs have

reached a proposed settlement to resolve all claims in the case for $9,250,000 in cash.

            The settlement Class consists of all persons and entities who purchased or

otherwise acquired FSAM common stock pursuant or traceable to the Registration

Statement for FSAM's initial public offering (which began on approximately October 30,

2014), with some exclusions described in the full notice of the proposed Settlement (the

"Notice").  If you have not yet received the Notice, you may obtain it by contacting the

Claims Administrator at *FSAM Securities Settlement*, c/o A.B. Data, Ltd., P.O. Box

173018, Milwaukee, WI 53217; telephone: 877-240-3531; email: info@FSAMSecuritiesSettlement.com. You may also download the Notice and other documents from: www.FSAMSecuritiesSettlement.com.

A hearing will be held on _____, 2016, at _____ __.m., before United States District Judge Lewis A. Kaplan, at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 2240, New York, New York 10007, to determine whether the Court should (*i*) approve the proposed Settlement as fair, reasonable, and adequate, (*ii*) approve the proposed Plan of Allocation for distribution of the Settlement proceeds, and (*iii*) grant Lead Counsel's application for attorneys' fees and litigation expenses. The Court may change the date of the Fairness Hearing without further notice to the Class. If you intend to attend the hearing, you should confirm the date and time with Lead Counsel or by checking the Settlement website.

IF YOU ARE A CLASS MEMBER, YOUR RIGHTS WILL BE AFFECTED BY THIS SETTLEMENT, AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT MONEY.

To participate in the Settlement, you must submit a **Claim Form**. You may download the Claim Form from www.FSAMSecuritiesSettlement.com, or you may ask the Claims Administrator to send you a Claim Form and add you to the mailing list. You may also obtain, complete, and file a Claim Form online at www.FSAMSecuritiesSettlement.com by _____, 2016. Completed Claim Forms must be **postmarked or received by _____, 2016**, at the Claims Administrator's address (printed above).

2

If you purchased or otherwise acquired FSAM common stock pursuant or traceable to the Registration Statement, you will be deemed a Class Member unless you ask to be excluded from the Class.  Any **requests for exclusion must be received by** **_____, 2016**, at the Claims Administrator's address (printed above).  Each request for exclusion must (*i*) state the name, address, telephone number, and e-mail address (if available) of the person or entity requesting exclusion, (*ii*) state that such person or entity requests exclusion from the FSAM Settlement, (*iii*) be signed by the person or entity requesting exclusion, and (*iv*) provide the date(s), price(s), and number(s) of shares of all purchases and sales of FSAM common stock issued pursuant or traceable to the Registration Statement and before January 8, 2016.  You will be bound by any judgment rendered in the class action unless you timely request exclusion from the Class as explained in the Notice, even if you have pending or later file another lawsuit, arbitration, or other proceeding relating to the claims covered by the Settlement.  If you submit a valid and timely request for exclusion, you cannot share in the settlement money, cannot object to the Settlement, and will not be bound by the Settlement or the Court's rulings.

The Notice also describes how to object to the proposed Settlement, the Plan of Allocation, the request for attorneys' fees and litigation expenses, and/or Lead Plaintiffs' request for reimbursement of expenses (including lost wages).  All **objections must be received** by the Court (at the address printed above) and by the lawyers listed below **no later than _____, 2016**:

| Lead Counsel for the Class | Defendants' Counsel |
|---|---|
| Lionel Z. Glancy, Esq.<br>Glancy Prongay & Murray LLP<br>1925 Century Plaza East, Suite 2100<br>Los Angeles, CA  90067<br>Telephone:  888-773-9224<br>settlements@glancylaw.com | Ralph C. Ferrara, Esq.<br>Proskauer Rose LLP<br>1001 Pennsylvania Avenue, N.W.<br>Suite 600 South<br>Washington, DC  20004 |

Inquiries, other than requests for copies of the Notice or for inclusion in the mailing list for future notices, may be directed to Lead Counsel for the Class.  Please do not contact the Court or Defendants.

Dated:  _____, 2016                          BY ORDER OF THE COURT

# EXHIBIT G

EXHIBIT G

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————x

**RONALD K. LINDE,** *et al.,* **Individually and on**    :
**Behalf of All Others Similarly Situated,**    :    **Case No. 1:16-cv-01941 (LAK)**
    :
**Plaintiffs,**    :
    :
**v.**    :
    :
**FIFTH STREET ASSET MANAGEMENT**    :
**INC.,** *et al.,*    :
    :
**Defendants.**    :

————————————————————x

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") is entered into in this putative class action as of July 27, 2016, between and among lead plaintiffs Kieran and Susan Duffy ("Plaintiffs") and defendants Fifth Street Asset Management Inc. and the other named Defendants.[1]

WHEREAS this Agreement is an addendum to the May 20, 2016 Mediation Confidentiality Agreement (a copy of which is attached as Attachment 1), which agreement governed the production of documents and the presentation of information to Plaintiffs and Lead Counsel (and others) before and during the Mediation; and

WHEREAS the Mediation Confidentiality Agreement states that, "[i]f the parties enter into a Stipulation of Settlement in the Matters (or any of them), that document will address the manner in which Settlement Information may be used in connection with any court hearing to consider the proposed settlement"; and

---

[1]    All capitalized terms not defined in this Agreement shall have the definitions ascribed to them in the Stipulation of Settlement or in the Mediation Confidentiality Agreement.

WHEREAS the parties have executed a Stipulation of Settlement, with exhibits (including this Agreement) (collectively, the "Settlement Agreement"), which provides that Plaintiffs and Lead Counsel may conduct additional discovery pursuant to the terms of this Agreement to explore whether the underlying facts of the Action are consistent with Plaintiffs' and Lead Counsel's current understanding that the proposed Settlement is fair, reasonable, and adequate; and

WHEREAS the parties wish to have the meaning of Settlement Information as defined in the Mediation Confidentiality Agreement include the additional discovery that Defendants will make available to Plaintiffs and Lead Counsel;

NOW, THEREFORE, solely to advance Plaintiffs' and Lead Counsel's evaluation of the proposed Settlement, in consideration of the mutual promises and covenants made in this Agreement and in the Settlement Agreement, with the intent to be legally bound by the terms of this Agreement, and understanding that the Court may enforce the terms of this Agreement, Plaintiffs, Lead Counsel, Defendants, and Defendants' Counsel agree as follows:

1.      All documents and information provided to Plaintiffs and/or Lead Counsel in connection with the additional discovery described above shall constitute Settlement Information and shall be subject to the terms of the Mediation Confidentiality Agreement, except as otherwise modified below.  Settlement Information may be disclosed only as provided in the Mediation Confidentiality Agreement, except to the extent that this Confidentiality Agreement otherwise provides.

2.      The documentary Settlement Information will be made available on an electronic site for Lead Counsel's review.  The Settlement Information on the electronic site will be in

printable form, except that the PowerPoints presented during the Pre-Mediation Presentation will not be printable.

3.      If Lead Counsel wishes to print Settlement Information in the electronic database (other than the PowerPoints from the Pre-Mediation Presentation) for its own use consistent with this Agreement, Lead Counsel will either provide Defendants' Counsel with a copy of all printed documents or tell Defendants' Counsel which documents have been printed.

4.      Settlement Information shall be used solely for the purpose of evaluating the proposed settlement of the Action and for no other purpose whatsoever (including pursuing claims in the Action or in any other proceeding within or outside the United States).

5.      To the extent that any potential Class Members or their attorneys obtain access to Settlement Information, they must first sign the form attached as Attachment 2 and agree to be subject to all the terms of this Agreement.

6.      If Plaintiffs, Lead Counsel, or anyone else who gives notice of intent to appear at or present evidence in connection with the Fairness Hearing believe that they need to present any Settlement Information to the Court in connection with the Court's review of the proposed Settlement, such persons or entities shall first consult with Defendants' Counsel about the Settlement Information that they wish to present.  Such persons or entities shall file any such Settlement Information under seal except to the extent that Defendants' Counsel conclude that sealing is not necessary as to some or all of it.

7.      If (*i*) after review of the Settlement Information Material, Plaintiffs decide to terminate the proposed Settlement Agreement or (*ii*) the proposed Settlement is terminated for any other reason or (*iii*) the proposed Settlement is not approved by the Court, then Plaintiffs, Lead Counsel, and anyone else who has obtained access to Settlement Information shall, within

3

seven (7) business days after being notified by Defendants' Counsel to do so, return to

Defendants' Counsel all Settlement Information in their possession.  In any of the circumstances

described in this paragraph, Defendants' Counsel shall have custody and control of all Settlement

Information.

8.      Upon the occurrence of the Final Settlement Date, Lead Counsel and anyone else

who has obtained access to Settlement Information shall, within seven (7) business days after the

Final Settlement Date, either (*i*) return all Settlement Information in their possession to

Defendants' Counsel or (*ii*) certify that all Settlement Information in their possession has been

destroyed.

9.      If a document or information that is protected by the attorney-client privilege, the

attorney work-product doctrine, or any other applicable privilege is inadvertently made available

as Settlement Information, the document shall be removed from the electronic site upon

discovery that such document was inadvertently included among Settlement Information;

*provided, however*, that Defendants' Counsel shall notify Lead Counsel of any such removal by

providing a general description of each such document removed, including the date and the

number of pages of the document.  No individual or entity granted access to Settlement

Information shall be permitted to request a copy of any such privileged or protected document or

shall take the position that Defendants waived any privilege or protection through such

inadvertent production.

10.     Unless modified by this Agreement, the terms of the Mediation Confidentiality

Agreement remain in effect and are applicable to all Settlement Information.

11.     Unless modified by the Court or the Settling Parties, this Agreement shall survive

the final determination of, and shall remain in full force and effect after the conclusion of all

proceedings in, the Action.  The Court in which the Action is pending shall have jurisdiction to enforce and ensure compliance with its terms.

12.    This Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile shall be fully and legally binding.

13.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York, excluding its conflict-of-laws provisions.

Agreed as of this 27th day of July, 2016

Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Peter A. Binkow
Glancy Prongay & Murray LLP
1925 Century Plaza East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 432-1495

ON BEHALF OF PLAINTIFFS, THE
CLASS, AND LEAD COUNSEL

Ralph C. Ferrara
Jonathan E. Richman
Ann M. Ashton
Proskauer Rose LLP
1001 Pennsylvania Ave., N.W.
Suite 600 South
Washington, D.C.  20004
Telephone:  (202) 416-5820
Facsimile:  (202) 416-6899

ON BEHALF OF DEFENDANTS

5

Attachment 1

CONFIDENTIAL;                                                **ATTACHMENT 1**
FOR MEDIATION PURPOSES ONLY        **EXHIBIT G TO SETTLEMENT AGREEMENT**

## MEDIATION CONFIDENTIALITY AGREEMENT

This Mediation Confidentiality Agreement (the "Agreement") is entered between (*i*) the undersigned shareholders (the "Shareholders") who have filed lawsuits against or on behalf of, or have submitted certain inspection letters to, Fifth Street Finance Corp. ("FSC") and/or Fifth Street Asset Management Inc. ("FSAM"), (*ii*) FSC and FSAM (collectively, "Fifth Street"), (*iii*) the individual defendants in the lawsuits filed against or on behalf of FSC or FSAM (collectively with Fifth Street, the "Defendants"), and (*iv*) the parties' respective counsel.

WHEREAS, beginning in October 2015, several securities class actions were filed by FSC shareholders against FSC, FSAM, and various individual Defendants; and

WHEREAS the FSC securities class actions have been consolidated in the United States District Court for the Southern District of New York (the "Court") before the Honorable Lewis A. Kaplan, who has appointed Oklahoma Police Pension and Retirement System as lead plaintiff and the law firm of Labaton Sucharow LLP as lead counsel; and

WHEREAS various shareholder derivative actions have been filed in the United States District Court for the District of Connecticut, the Connecticut Superior Court for the Judicial District of Stamford/Norwalk, and the Delaware Court of Chancery on behalf of nominal defendant FSC against FSAM and various individual Defendants; and

WHEREAS various FSC shareholders have made requests to inspect FSC's books and records pursuant to 8 Del. Code § 220; and

WHEREAS a securities class action has been filed by an FSAM shareholder against FSAM and various individual Defendants; and

WHEREAS the FSAM securities class action is pending in the Court before Judge Kaplan, who has appointed Kiernan and Susan Duffy as lead plaintiffs and the law firm of Glancy Prongay & Murray LLP as lead counsel; and

WHEREAS, for purposes of this Agreement, the above lawsuits and requests shall be referred to collectively as the "Matters"; and

WHEREAS Shareholders and their counsel ("Shareholders' Counsel"), as well as Defendants and their counsel, wish to engage in discussions and mediation to explore the prospects for resolving the Matters, subject to the protections of Federal Rule of Evidence 408, any other potentially applicable statutes, rules, and privileges (including the settlement and mediation privileges), and the other protections provided under this Agreement; and

WHEREAS, solely for purposes of exploring the possibility of any potential settlement of the Matters, Fifth Street – in its sole discretion and subject to the terms and restrictions of this Agreement – may provide Shareholders' Counsel with certain documents and information concerning the allegations in the Matters; and

WHEREAS Defendants seek and intend to preserve all objections to discovery in the Matters and in any other actions or proceedings in any forum and to protect all applicable privileges and protections – including the attorney-client privilege and the attorney work-product protection – that might apply to such documents and information;

NOW, THEREFORE, solely to advance Shareholders' and Defendants' exploration of a potential settlement of the Matters, in consideration of the mutual promises and covenants made in this Agreement, with the intent to be legally bound by the terms of this Agreement, with the expectation that a separate Confidentiality Agreement and Order might be proposed and entered if the parties enter into a proposed settlement agreement, and understanding that the Court may

enforce the terms of this Agreement, Shareholders and their counsel as well as Defendants and their counsel agree as follows:

1.      All non-public documents, facts, opinions, estimates, and other information that are in or come into the possession of Shareholders or Shareholders' Counsel solely from Defendants – including, without limitation, writings, drawings, graphs, charts, photographs, microfilm, microfiche, drafts, deposition transcripts, non-identical copies of documents, and data compilations (including electronic or computerized data compilations) from which information can be obtained – and all non-public information (whether oral or written) that is contained in those materials or is otherwise provided to Shareholders or Shareholders' Counsel under the terms of this Agreement, or otherwise becomes known to Shareholders or Shareholders' Counsel solely through Defendants, shall be deemed to be "Settlement Information." Settlement Information also includes all documents and other materials that reflect non-public information that comes into the possession of Shareholders or Shareholders' Counsel solely from Defendants. Documents previously produced by Fifth Street pursuant to shareholder inspection requests or otherwise shall not be deemed to be Settlement Information and shall not be covered by this Agreement; *provided, however*, that, if such documents were produced pursuant to other confidentiality agreements, the obligations in any such agreements shall continue in full force and effect.

2.      Only the following individuals ("Eligible Persons") shall be allowed access to Settlement Information:

        a.      the Shareholders;

        b.      attorneys who are either partners in, or members or employees of, Shareholders' Counsel;

3

c.     any other attorneys whom Shareholders' Counsel designate solely for

purposes of exploring a potential settlement of the Matters or of any related litigation or

proceeding, and for no other purpose whatsoever; provided that Shareholders' Counsel will

disclose to Defendants' counsel the identities of any such attorneys three business days before

Shareholder's Counsel shares Settlement Information with them;

d.     non-attorney employees of Shareholders' Counsel, or of any other

attorneys designated pursuant to paragraph 2.c above, necessary to assist Shareholders' Counsel

or any of those other attorneys in reviewing Settlement Information solely for purposes of

exploring a potential settlement of the Matters or of any related litigation or proceeding;

e.     consultants or experts retained by Shareholders' Counsel, or by any other

attorneys designated pursuant to paragraph 2.c above, necessary to assist those attorneys in

reviewing Settlement Information solely for purposes of exploring a potential settlement of the

Matters or of any related litigation or proceeding; and

f.     any mediator(s) retained or appointed to help the parties resolve the

Matters or any related litigation or proceeding.

3.     Any individual given access to Settlement Information pursuant to paragraph 2

above shall, before being granted such access, be given a copy of this Agreement and agree, by

signing this Agreement or executing the undertaking in the form attached as Exhibit A, to be

subject to its terms.  Only one representative from each Shareholder Counsel shall be required to

sign this Agreement, or execute the undertaking in the form attached as Exhibit A, on behalf of

all attorneys or non-attorney employees of such Shareholder Counsel.

4.     Settlement Information shall be used solely for the purpose of exploring a

potential settlement of the Matters (and, if applicable, any related litigation or proceeding) and

for no other purpose whatsoever, including drafting or amending a pleading or other court filing

4

in the Matters or in any other proceeding, or pursuing claims in the Matters or in any other

proceeding.  All persons allowed access to Settlement Information pursuant to paragraph 2 above

(collectively, the "Reviewers") shall keep all Settlement Information strictly confidential and

shall not disclose, disseminate, discuss, or otherwise publish such material or information in

whole or in part, directly or indirectly, by any manner, method, or means whatsoever, to any

other person, firm, or entity, including any media organization; nor shall they use any Settlement

Information in connection with any purchase or sale of, or any other investment decision relating

to, Fifth Street securities; *provided, however*, that:

        a.     The Reviewers may discuss Settlement Information with their clients, and

with consultants or experts retained by the Reviewers, in accordance with the terms of this

Agreement;

        b.     The Reviewers may discuss Settlement Information among themselves;

and

        c.     Before any discussions take place regarding Settlement Information as

provided in this paragraph 4, all prospective recipients of Settlement Information must be given a

copy of this Agreement and agree, by signing this Agreement or executing the undertaking in the

form attached as Exhibit A, to be subject to its terms.

     5.     Shareholders' Counsel shall ensure that the undertakings required pursuant to

paragraphs 3 and 4 above have been obtained and shall retain those undertakings.

     6.     If any Shareholder or Reviewer receives a request to produce Settlement

Information by any means, including by written interrogatories or by deposition, the recipient of

such request shall give Defendants' counsel written notice of such request within five days and

as provided in this Agreement, so that Defendants may take any appropriate measures (including

seeking a protective order or attempting to quash such request) to oppose or to limit disclosures,

to require that disclosure be made under seal, or to seek any other available remedy.  Any

Shareholder or Reviewer receiving the request shall not oppose any efforts by Defendants and/or

their counsel to take whatever measures they deem appropriate to protect Settlement Information

from disclosure; *provided, however*, that the Shareholder or Reviewer receiving the request

(*i*) shall not be required to bring any motion, or join in any motion filed by Defendants and/or

their counsel, to prevent disclosure of Settlement Information and (*ii*) shall be able to make any

other arguments he, she, or it deems appropriate to the extent such arguments are not contrary to

Defendants' or their counsel's arguments regarding disclosure.  If a protective order cannot be

obtained, and if the Shareholder or Reviewer is compelled by a court order to disclose Settlement

Information, then such entity or individual shall disclose only such portion of such information

that the court requires be disclosed.  Any Shareholder or Reviewer so compelled shall, within

two days, give Defendants' counsel written notice of the information to be disclosed and shall

give Defendants' counsel a duplicate production of all documents that are required to be

disclosed; *provided, however,* that the Shareholder or Reviewer need not include in that duplicate

production any materials protected by the attorney-work product privilege or otherwise legally

privileged.  If Defendants seek to have the disclosed information filed under seal, the applicable

Shareholder or Reviewer will cooperate with Defendants' efforts to do so.

   7.  If the parties enter into a Stipulation of Settlement in the Matters (or any of them),

that document will address the manner in which Settlement Information may be used in

connection with any court hearing to consider the proposed settlement.

   8.  Defendants intend primarily to present, rather than provide, Settlement

Information to Shareholders' Counsel, although Defendants, in their sole discretion, may choose

to provide some Settlement Information as well.  Eligible Persons who attend any presentation

by Defendants may take handwritten notes, but may not use computers or other recording or

6

transmission devices (whether video, audio, or electronic) during the presentation.  Before attending the presentation and receiving any documents that Defendants might provide, one representative from each Shareholder Counsel must sign this Agreement, and all attending Shareholders and Shareholder experts must sign Exhibit A before the day of the presentation.

9.    If the parties do not ultimately enter into a Stipulation of Settlement, Shareholders and the Reviewers shall, within ten business days, certify to Defendants' counsel that they have destroyed all Settlement Information that Defendants in their discretion have provided to Shareholders and any other Reviewers, including copies of any such Settlement Information.  In the circumstances described in this paragraph, Defendants' counsel shall have custody and control of all Settlement Information, including all Settlement Information duplicated for any Shareholder or Reviewer; *provided, however,* that Defendants will not be deemed to have custody or control over any attorney work product or other legally privileged material generated by a Reviewer.  If any Shareholder or Reviewer creates any documents of any kind based on or related to Settlement Information, he, she, or it will collect and destroy all such documents and so certify in writing to Defendants' counsel; *provided, however,* that he, she, or it make keep copies of attorney work product or other legally privileged material generated by a Reviewer.

10.    Any presentation or production of Settlement Information shall not be deemed to be, and Defendants, Shareholders, and the Reviewers will not argue that such presentation or production is, (*i*) a general waiver of the attorney-client privilege, the attorney work-product doctrine, or any other potentially applicable privilege or protection (including for trade secrets or proprietary information), (*ii*) a specific waiver of any privilege or protection applicable to the documents or information being presented or produced, (*iii*) an admission that the documents or information are relevant to, or would or should be discoverable in, the Matters or in any other

litigation or proceeding in any forum, or (*iv*) a waiver of the discovery stay under the Private

Securities Litigation Reform Act of 1995 and/or any applicable court order.

11.     Pursuant to Federal Rule of Evidence 502(d), the parties to this Agreement agree

that the attorney-client privilege and attorney work-product protection are not waived in any

federal or state court by presentation or production of Settlement Information in connection with

the Matters.

12.     If the Matters are not ultimately settled, nothing in this Agreement shall preclude

Shareholders from seeking the production of documents and information from Defendants

pursuant to the applicable rules of procedure in the relevant court(s); *provided, however*, that

(*i*) Shareholders and Shareholders' Counsel shall not use any Settlement Information in any

proceeding relating to the Matters or any other action or proceeding or in any forum, except to

the extent such information is properly obtained otherwise than pursuant to this Agreement

(including through discovery in the relevant action or proceeding) and is used only to the extent

permitted by the applicable court and rules; and (*ii*) Shareholders shall not use the fact that they

or anyone else were allowed access to Settlement Information under this Agreement to argue that

Defendants have conceded that any such documents or information should or must be disclosed.

Notwithstanding anything in this Agreement, however, Shareholders shall not seek discovery of

any work product (including PowerPoint presentations) that Defendants or their counsel prepare

for and present to them and other Eligible Persons during the mediation or any pre-mediation

presentation.

13.     Defendants reserve all rights in the Matters, and in any other pending or future

proceeding, to object on any ground whatsoever to the production of any documents or

information included among Settlement Information.

14.    All Shareholders' Counsel who sign this Agreement will receive all Settlement Information previously produced to any other Shareholder's Counsel, to the extent that such signatory has not already received it.  All such productions shall be governed by this Agreement. All future productions of Settlement Information will be governed by this Agreement and will be produced to all signatories.

15.    Any violation of this Agreement shall entitle Defendants to injunctive or other equitable relief as a remedy for the violation without proof of actual damages and without limiting any other remedies that Defendants might have.  In agreeing to be subject to the terms of this Agreement, Shareholders and the Reviewers agree to submit to the jurisdiction of the Court for all matters concerning the enforcement of the terms of this Agreement.

16.    Any notice to Defendants required by this Agreement shall be addressed to the following:

> Ralph C. Ferrara, Esq.
> rferrara@proskauer.com
> Ann M. Ashton, Esq.
> aashton@proskauer.com
> Proskauer Rose LLP
> 1001 Pennsylvania Avenue, N.W.
> Suite 600 South
> Washington, D.C.  20004
> Telephone:  (202) 416-6800
> Facsimile:  (202) 416-6899
>
> Jonathan E. Richman, Esq.
> Proskauer Rose LLP
> Eleven Times Square
> New York, New York  10036-8299
> Telephone:  (212) 969-3448
> Facsimile:  (212) 969-2900
> jerichman@proskauer.com

9

Allen W. Burton, Esq.
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2282
Facsimile: (212) 326-2061
aburton@omm.com

17.     The parties to this Agreement agree that they will not oppose any request for an extension of any court filing deadlines that include a period during which the parties are participating in mediation through June 17, 2016.  Without limiting the foregoing, (*i*) the defendants in the FSC consolidated putative securities class action agree not to oppose lead plaintiff's request to extend the time to oppose the defendants' anticipated motion to dismiss that case until 60 days after June 17, 2016, and (*ii*) lead plaintiffs in the FSAM putative securities class action agree not to oppose the defendants' request to extend the time to move to dismiss or otherwise respond to the complaint in that case until 60 days after June 17, 2016.  The parties also agree to support or not oppose further requests for extensions if mediation discussions continue beyond June 17, 2016.

18.     This Agreement sets forth the entire agreement among the parties as to its subject matter and may not be altered or modified except by a written instrument executed by all parties' counsel.

19.     Unless modified by the parties in writing, this Agreement shall survive the final determination of, and shall remain in full force and effect after the conclusion of all proceedings in, the Matters.  The Court shall have exclusive jurisdiction to enforce and ensure compliance with the Agreement's terms.

20.     Any waiver of or failure to enforce any term of this Agreement shall not constitute a waiver of any other term or a waiver in any other circumstance.

21.     This Agreement shall be governed by and construed in accordance with the laws of the State of New York, excluding its conflict-of-laws provisions.

22.     This Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile shall be fully and legally binding.

Dated:  May 2*0*, 2016

_____
Joel H. Bernstein
Ira A. Schochet
Eric D. Gottlieb
Matthew J. Hrutkay
Labaton Sucharow LLP
140 Broadway
New York, NY  10005
Tel:  212-907-0700
Fax:  212-818-0477

*Counsel for Lead Plaintiff Oklahoma Police*
*Pension and Retirement System*

_____
Ralph C. Ferrara
Ann M. Ashton
Jonathan E. Richman
Proskauer Rose LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, DC  20004
Tel:  (202) 416-6800
Fax:  (202) 416-6899

*Counsel for Defendants Fifth Street Asset*
*Management Inc., Bernard Berman, Wayne*
*Cooper, Ivelin Dimitrov, Alexander Frank,*
*Mark Gordon, David Harrison, Tom Harrison,*
*Sandeep Khorana, Frank Meyer, Steven*
*Noreika, Todd Owens, Richard Petrocelli, and*
*Len Tannenbaum*

_____
Brian J. Robbins
Craig W. Smith
Gregory E. Del Gaizo
Shane P. Sanders
Robbins Arroyo LLP
600 B Street, Suite 1900
San Diego, CA  92101
Tel:  619-525-3990
Fax:  619-525-3991

*Counsel for Plaintiff Solomon Chau*

_____
Allen W. Burton
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY  10036
Tel:  (212) 326-2282
Fax:  (212) 326-2061

*Counsel for Defendants Fifth Street Finance*
*Corp., James Castro-Blanco, Brian Dunn,*
*Richard Dutkiewicz, Byron Haney, and*
*Douglas Ray*

11

21.     This Agreement shall be governed by and construed in accordance with the laws of the State of New York, excluding its conflict-of-laws provisions.

22.     This Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile shall be fully and legally binding.

Dated: May __, 2016

---

Joel H. Bernstein
Ira A. Schochet
Eric D. Gottlieb
Matthew J. Hrutkay
Labaton Sucharow LLP
140 Broadway
New York, NY  10005
Tel:  212-907-0700
Fax:  212-818-0477

*Counsel for Lead Plaintiff Oklahoma Police
Pension and Retirement System*

---

Ralph C. Ferrara
Ann M. Ashton
Jonathan E. Richman
Proskauer Rose LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, DC  20004
Tel:  (202) 416-6800
Fax:  (202) 416-6899

*Counsel for Defendants Fifth Street Asset
Management Inc., Bernard Berman, Wayne
Cooper, Ivelin Dimitrov, Alexander Frank,
Mark Gordon, David Harrison, Tom Harrison,
Sandeep Khorana, Frank Meyer, Steven
Noreika, Todd Owens, Richard Petrocelli, and
Len Tannenbaum*

---

Brian J. Robbins
Craig W. Smith
Gregory E. Del Gaizo
Shane P. Sanders
Robbins Arroyo LLP
600 B Street, Suite 1900
San Diego, CA  92101
Tel:  619-525-3990
Fax:  619-525-3991

*Counsel for Plaintiff Solomon Chau*

---

Allen W. Burton
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY  10036
Tel:  (212) 326-2282
Fax:  (212) 326-2061

*Counsel for Defendants Fifth Street Finance
Corp., James Castro-Blanco, Brian Dunn,
Richard Dutkiewicz, Byron Haney, and
Douglas Ray*

---

11

Brian J. Robbins
Craig W. Smith
Gregory E. Del Gaizo
Shane P. Sanders
Robbins Arroyo LLP
600 B Street, Suite 1900
San Diego, CA 92101
Tel: 619-525-3990
Fax: 619-525-3991

Allen W. Burton
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
Tel: (212) 326-2282
Fax: (212) 326-2061

Thomas G. Amon
Law Offices of Thomas G. Amon
156 West 56th Street, Suite 1102
New York, NY 10019
Tel: 212-810-2430
Fax: 212-810-2427

Katharine M. Ryan
Richard A. Maniskas
Ryan & Maniskas, LLP
995 Old Eagle School Road
Wayne, PA 19087
Tel: 484-588-5516
Fax: 484-450-2582

Robert B. Weiser
Brett D. Stecker
James M. Ficaro
The Weiser Law Firm, P.C.
22 Cassatt Avenue
Berwyn, PA 19312
Tel: 610-225-2677
Fax: 610-408-8062

10

Thomas G. Amon
Law Offices of Thomas G. Amon
156 West 56th Street, Suite 1102
New York, NY  10019
Tel: 212-810-2430
Fax: 212-810-2427

*Counsel for Plaintiff Scott Avera*

Katharine M. Ryan
Richard A. Maniskas
Ryan & Maniskas, LLP
995 Old Eagle School Road
Wayne, PA  19087
Tel: 484-588-5516
Fax: 484-450-2582

*Counsel for Plaintiff Kamile Dahne*

Robert B. Weiser
Brett D. Stecker
James M. Ficaro
The Weiser Law Firm, P.C.
22 Cassatt Avenue
Berwyn, PA  19312
Tel: 610-225-2677
Fax: 610-408-8062

*Counsel for Plaintiff John Durgerian*

Gregory M. Egleston
Thomas J. McKenna
Gainey McKenna & Egleston
440 Park Avenue South, 5th Floor
New York, NY  10016
Tel: 212-983-1300
Fax: 212-983-0383

*Counsel for Plaintiff Justin A. Tuttelman*

12

Thomas G. Amon
Law Offices of Thomas G. Amon
156 West 56th Street, Suite 1102
New York, NY 10019
Tel: 212-810-2430
Fax: 212-810-2427

*Counsel for Plaintiff Scott Avera*


Katharine M. Ryan
Richard A. Maniskas
Ryan & Maniskas, LLP
995 Old Eagle School Road
Wayne, PA 19087
Tel: 484-588-5516
Fax: 484-450-2582

*Counsel for Plaintiff Kamile Dahne*


Robert B. Weiser
Brett D. Stecker
James M. Ficaro
The Weiser Law Firm, P.C.
22 Cassatt Avenue
Berwyn, PA 19312
Tel: 610-225-2677
Fax: 610-408-8062

*Counsel for Plaintiff John Durgerian*


Gregory M. Egleston
Thomas J. McKenna
Gainey McKenna & Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: 212-983-1300
Fax: 212-983-0383

*Counsel for Plaintiff Justin A. Tuttelman*

12

Thomas G. Amon
Law Offices of Thomas G. Amon
156 West 56th Street, Suite 1102
New York, NY 10019
Tel: 212-810-2430
Fax: 212-810-2427

*Counsel for Plaintiff Scott Avera*

_____
Katharine M. Ryan
Richard A. Maniskas
Ryan & Maniskas, LLP
995 Old Eagle School Road
Wayne, PA 19087
Tel: 484-588-5516
Fax: 484-450-2582

*Counsel for Plaintiff Kamile Dahne*

_____
Robert B. Weiser
Brett D. Stecker
James M. Ficaro
The Weiser Law Firm, P.C.
22 Cassatt Avenue
Berwyn, PA 19312
Tel: 610-225-2677
Fax: 610-408-8062

*Counsel for Plaintiff John Durgerian*

_____
Gregory M. Egleston
Thomas J. McKenna
Gainey McKenna & Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: 212-983-1300
Fax: 212-983-0383

*Counsel for Plaintiff Justin A. Tuttelman*

_____

12

Thomas G. Amon
Law Offices of Thomas G. Amon
156 West 56th Street, Suite 1102
New York, NY 10019
Tel: 212-810-2430
Fax: 212-810-2427

*Counsel for Plaintiff Scott Avera*

---

Katharine M. Ryan
Richard A. Maniskas
Ryan & Maniskas, LLP
995 Old Eagle School Road
Wayne, PA 19087
Tel: 484-588-5516
Fax: 484-450-2582

*Counsel for Plaintiff Kamile Dahne*

---

Robert B. Weiser
Brett D. Stecker
James M. Ficaro
The Weiser Law Firm, P.C.
22 Cassatt Avenue
Berwyn, PA 19312
Tel: 610-225-2677
Fax: 610-408-8062

*Counsel for Plaintiff John Durgerian*

---

Gregory M. Egleston
Thomas J. McKenna
Gainey McKenna & Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: 212-983-1300
Fax: 212-983-0383

*Counsel for Plaintiff Justin A. Tuttelman*

---

12

Lewis Kahn
Melinda Nicholson
Kahn Swick & Foti, LLC
206 Covington Street
Madisonville, LA  70447
Tel:  504-455-1400
Fax:  504-455-1498

*Counsel for Plaintiff James C. Cooper*


David Wales
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas
New York, NY  10020
Tel:  212-554-1409
Fax:  212-554-1444

*Counsel for Shareholder Matt Gordon*


Beth A. Keller
Hynes Keller & Hernandez, LLC
100 South Bedford Road, Suite 340
Mount Kisco, NY  10549
Tel:  914-752-3040
Fax:  914-752-3041

*Counsel for Shareholder Judy Mesirov*


Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Peter A. Binkow
Leslie F. Portnoy
Glancy Prongay & Murray LLP
1925 Century Plaza East, Suite 2100
Los Angeles, CA  90067
Tel:  310-201-9150
Fax:  310-432-1495

*Counsel for Lead Plaintiffs*
*Kiernan and Susan Duffy*

13

---

David Wales
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas
New York, NY  10020
Tel:  212-554-1409
Fax:  212-554-1444

*Counsel for Shareholder Matt Gordon*

Beth A. Keller
Hynes Keller & Hernandez, LLC
100 South Bedford Road, Suite 340
Mount Kisco, NY  10549
Tel:  914-752-3040
Fax:  914-752-3041

*Counsel for Shareholder Judy Mesirov*

---

Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Peter A. Binkow
Leslie F. Portnoy
Glancy Prongay & Murray LLP
1925 Century Plaza East, Suite 2100
Los Angeles, CA  90067
Tel:  310-201-9150
Fax:  310-432-1495

*Counsel for Lead Plaintiffs*
*Kiernan and Susan Duffy*

13

Lewis Kahn
Melinda Nicholson
Kahn Swick & Foti, LLC
206 Covington Street
Madisonville, LA  70447
Tel:  504-455-1400
Fax:  504-455-1498

*Counsel for Plaintiff James C. Cooper*

---

David Wales
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas
New York, NY  10020
Tel: 212-554-1409
Fax: 212-554-1444

*Counsel for Shareholder Matt Gordon*

---

Beth A. Keller
Hynes Keller & Hernandez, LLC
100 South Bedford Road, Suite 340
Mount Kisco, NY  10549
Tel:  914-752-3040
Fax:  914-752-3041

*Counsel for Shareholder Judy Mesirov*

---

Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Peter A. Binkow
Leslie F. Portnoy
Glancy Prongay & Murray LLP
1925 Century Plaza East, Suite 2100
Los Angeles, CA  90067
Tel:  310-201-9150
Fax:  310-432-1495

*Counsel for Lead Plaintiffs*
*Kiernan and Susan Duffy*

13

14

**EXHIBIT A:**

**UNDERTAKING REGARDING
SETTLEMENT INFORMATION**

I hereby attest that I have been provided with a copy of the attached Mediation

Confidentiality Agreement (the "Agreement") and that I understand that Settlement Information

(as that term is defined in the Agreement) will be provided to me pursuant to the terms,

conditions, and restrictions set out in the Agreement.

I further attest that I have read the Agreement and that I understand that, by signing this

Undertaking, I have agreed, as a condition to my receipt of Settlement Information, to be bound

by the Agreement and its terms, including, without limitation, that the United States District

Court for the Southern District of New York shall have personal jurisdiction over me to enforce

the terms of the Agreement.

_____
Name:
Date:

15

Attachment 2

**ATTACHMENT 2**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————————x
                                                              :
**IN RE FIFTH STREET FINANCE CORP.**    :  **Case No. 15-cv-7759 (LAK)**
**SECURITIES LITIGATION**                        :
                                                              :
——————————————————————          :
                                                              :
**This Matter Relates To:**                         :
                                                              :
**All Actions**                                            :
                                                              :
——————————————————————————x

**UNDERTAKING REGARDING**
**SETTLEMENT INFORMATION**

     I hereby attest that I have been provided with a copy of the attached Confidentiality Agreement (the "Agreement") and that I understand that Settlement Information (as that term is defined in the Agreement) will be provided to me pursuant to the terms, conditions, and restrictions set out in the Agreement.

     I further attest that I have read the Agreement and that I understand that, by signing this Undertaking, I have agreed, as a condition to my receipt of Settlement Information, to be bound by the Agreement and its terms, including, without limitation, that the Court in which the Action is pending shall have personal jurisdiction over me to enforce the terms of the Agreement.

     I further agree and attest to my understanding that, if I should fail to abide by the terms of the Agreement, I may be subject to claims for damages and sanctions, including monetary sanctions and/or sanctions by way of contempt of court, for such failure.


———————————————                    ———————————————
           Date                                                                     Name

57647044v4