# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD K. LINDE, MAXINE H. LINDE, THE RONALD AND MAXINE LINDE FOUNDATION, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>   v.<br><br>FIFTH STREET ASSET MANAGEMENT INC., LEONARD M. TANNENBAUM, BERNARD D. BERMAN, ALEXANDER C. FRANK, STEVEN M. NOREIKA, WAYNE COOPER, MARK J. GORDON, THOMAS L. HARRISON and FRANK C. MEYER,<br><br>     Defendants. | Case No. 1:16-cv-01941-LAK |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR (I) CERTIFICATION OF THE SETTLEMENT CLASS, (II) AUTHORIZATION TO NOTIFY THE SETTLEMENT CLASS OF A  PROPOSED SETTLEMENT, <u>AND (III) SCHEDULING A SETTLEMENT FAIRNESS HEARING</u>**

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...................................................................... 1

II.    NOTICE SHOULD BE DISSEMINATED TO THE SETTLEMENT CLASS AS THE
       SETTLEMENT IS THE RESULT OF EXTENSIVE, ARM'S-LENGTH
       NEGOTIATIONS ...................................................................................... 4

       A.    The Settlement Resulted from Arm's-Length Negotiations Conducted by Well-
             Informed and Experienced Counsel .......................................................... 6

       B.    The Settlement Falls Within the Range of Possible Approval .............................. 9

III.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
       SETTLEMENT PURPOSES ....................................................................... 11

       A.    The Proposed Settlement Class Meets the Requirements of Federal Rule of Civil
             Procedure 23(A) and 23(B)(3) ............................................................... 11

             1.    The Settlement Class Satisfies the Requirements of Rule 23(a)............... 12

                   a)    The Settlement Class Members are too Numerous to be Joined .. 12

                   b)    There are Common Questions of Law and Fact ........................... 13

                   c)    Lead Plaintiffs' Claims are Typical of Those of the Settlement
                         Class ........................................................................... 14

                   d)    Lead Plaintiffs Will Fairly and Adequately Protect the Interests of
                         the Settlement Class ....................................................... 15

             2.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3).......... 16

                   a)    Common Legal and Factual Questions Predominate.................... 17

             3.    A Class Action Is Superior to Other Methods of Adjudication ............... 18

       B.    The Court Should Appoint Lead Counsel as Counsel for the Settlement Class ... 18

IV.    THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE PROOF OF
       CLAIM AND RELEASE FORM ARE APPROPRIATE ................................................. 19

       A.    The Scope of the Notice Program Is Adequate.................................................... 19

       B.    The Proposed Form of Notice Comports With the Requirements of Due Process,
             the Private Securities Litigation Reform Act of 1995, and Rule 23 and Is the

Same as or Similar to Forms of Notice Routinely Approved by Courts In This
Jurisdiction .......................................................................................................... 20

V.   THE PROPOSED SETTLEMENT SCHEDULE ............................................................ 22

VI.   CONCLUSION ................................................................................................................ 23

# TABLE OF AUTHORITIES

<u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009)......................................................................................... 7

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................................... 12, 15, 17, 18

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) ............................................................................................... 16

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015)................................................................................. 9

*Bourlas v. Davis Law Assocs.*,
   237 F.R.D. 345 (E.D.N.Y. 2006) ........................................................................ 12, 13

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) .................................................................................................. 5

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007).................................................................................. 12, 14

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............... 9, 20, 21

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)..................................................................................... 12

*Dallas v. Alcatel-Lucent USA, Inc.*,
   No. 09-14596, 2013 WL 2197624 (E.D. Mich. May 20, 2013)................................. 9

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006).................................................................................. 11

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001).................................................................................... 6

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012)............................................................................... 8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014)..............................................................................11

*In re BankAtlantic Bancorp, Inc.*,
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ...........................8

*In re Bisys Sec. Litig.*,
   No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007)...................10

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992) ...........................................................................15, 16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ......................................................................................15

*In re Giant Interactive Grp, Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011)......................................................................10, 11

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007)..............................20

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012)............................................................................11

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007)................................................................................5

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009)..............................................................................12

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................6, 11, 14, 17

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   No. 02 MDL 1484(JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)................10, 19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998)..............................................................................8

*In re Oxford Health Plans, Inc.*,
   191 F.R.D. 369 (S.D.N.Y. 2000)............................................................................13

iv

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012)...................................................................... 13, 14

*In re Platinum & Palladium Commodities Litig.*,
   No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................... 5

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006)............................................................................ 16

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996).......................................................................... 20

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
   107 F.3d 3 (2d Cir. 1996)................................................................................... 20

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995)............................................................................ 5

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Penn. 2001) ................................................................ 10

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010).................................................................... 13, 14

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962(RCC), 2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ...................... 20

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002)..................................................................... 15

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)......................... 8

*In re Veeco Instruments, Inc. Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006)................................................................... 15, 17

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 CIV. 11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)................... 20

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003).......................................................................... 16

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)............................................................................ 22

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) ................................................................................ 7

*Palacio v. E\*TRADE Fin. Corp.,*
   No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419 (S.D.N.Y. June 22, 2012) ........................... 6

*Roach v. T.L. Cannon Corp.,*
   778 F.3d 401 (2d Cir. 2015) ................................................................................ 17

*Robbins v. Koger Props., Inc.,*
   116 F.3d 1441 (11th Cir. 1997) ............................................................................ 8

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993) ......................................................................... 12, 14

*Seijas v. Republic of Argentina,*
   606 F.3d 53 (2d Cir. 2010) ................................................................................ 17

*Shapiro v. JPMorgan Chase & Co.,*
   No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 (S.D.N.Y. March 24, 2014) .............. 7, 15

*Silverman v. Motorola, Inc.,*
   No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012) ....................................... 6

*Sykes v. Mel S. Harris and Assocs. L.L.C.,*
   780 F.3d 70 (2d Cir. 2015) ................................................................................ 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005) ................................................................................. 9

*Weigner v. New York,*
   852 F.2d 646 (2d Cir. 1988) .............................................................................. 19

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982) .......................................................................... 11, 21

## STATUTES

15 U.S.C. §78u-4(a)(7)(A)-(F) ............................................................................ 21

## RULES

Fed. R. Civ. P. 23 ............................................................................... *passim*

## I.     PRELIMINARY STATEMENT

The Parties have reached a proposed settlement[1] of this securities class action (the "Settlement").[2]   The Settlement provides for the creation of a $9,250,000 settlement fund for the benefit of all persons and entities (or legal beneficiaries) who purchased or otherwise acquired the common stock of Fifth Street Asset Management Inc. ("FSAM" or the "Company") pursuant or traceable to the Registration Statement issued in connection with FSAM's initial public offering (the "IPO").   In order to facilitate the Settlement, Court-appointed Lead Plaintiffs Kieran and Susan Duffy ("Lead Plaintiffs") respectfully request the Court enter the accompanying Order Provisionally Certifying Settlement Class and Approving Notice to Settlement Class (the "Notice Order").   The Notice Order provides for:

1.        Provisional certification of a Settlement Class;

2.        Approval of the form of and method for giving notice, as provided in the Settlement Agreement, which describes, *inter alia*, the pendency of this action, the terms of the proposed Settlement, Settlement Class Members' rights with respect thereto, the proposed release of claims, the proposed Plan of Allocation of the Settlement proceeds, the request for an award of attorneys' fees and expenses, and the procedures for submitting a Claim Form; and

3.        Setting the date for a hearing (the "Fairness Hearing") to consider whether: (i) the proposed Settlement provided for in the Settlement Agreement is fair, reasonable and adequate; (ii) the Settlement Class should be certified; (iii) the Plan of Allocation should be approved; (iv) the Action should be dismissed with prejudice, in accordance with the terms of the Settlement

---

[1] A copy of the extensively negotiated Stipulation of Settlement dated July 27, 2016 (the "Settlement Agreement") and its exhibits, which have been amended by the Parties, is attached hereto as Exhibit 1.

[2] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Settlement Agreement.

Agreement; and (v) to award Lead Counsel attorneys' fees and reasonable expenses in accordance with their application therefor.[3]

The proposed Settlement was reached only after a comprehensive investigation by Lead Counsel consisting of, among other things: a review of the public filings with the United States Securities and Exchange Commission ("SEC") of FSAM, Fifth Street Finance Corp. ("FSC") and Fifth Street Senior Floating Rate Corp. ("FSFR") (collectively, "Fifth Street"); public statements issued by Fifth Street; public conference calls, media, analyst and news reports about Fifth Street; and other publicly available information, including, but not limited to, publicly available trading data relating to the price and trading volume of FSAM securities.  In addition, Lead Counsel retained accounting and damages experts to analyze the complex transactions and accounting treatments at issue.  After analyzing this information, Lead Counsel synthesized it into a detailed and extensive amended complaint (the "Complaint"), which alleged that the Registration Statement issued in connection with the Company's more than $100 million IPO was materially false and misleading.[4]  *See* Docket Entry No. 42.

---

[3] Defendants do not oppose entry of the Notice Order.

[4] Specifically, the Complaint alleged that in the Registration Statement:

> Defendants made materially false and misleading statements of fact and failed to disclose facts necessary to make the statements made therein not misleading, including, among other statements: (1) that FSC's investments in certain investments should have been put on non-accrual status prior to the IPO; (2) that, as a result, the value of these assets were overstated, as was FSC's "Pre-Investment Fee Net Investment Income"; (3) that FSC had overpaid FSAM fees; (4) that FSAM's AUM [Assets Under Management], revenue, net income and fees from FSC were all overstated; and (5) that, as a result, FSAM's announced dividend was not maintainable.

*See, e.g.*, Docket Entry No. 42 at ¶4.  Moreover, the Complaint alleged that "the Registration Statement failed to disclose that FSAM's conduct as the investment manager for FSC . . . had impaired its ability to maintain its AUM growth and its ability to generate additional fee income,

Rather than engage in extremely costly, complex and contentious litigation, the Parties decided to explore an out-of-court settlement with the assistance of a well-respected mediator, the Hon. Daniel H. Weinstein (Ret.).  Prior to the mediation, Defendants produced thousands of pages of internal documents, which were reviewed by Lead Counsel.  Thereafter, Defendants made a two-day presentation regarding the underlying claims, and also previewed their liability and damages defenses.  This presentation was attended by Lead Counsel and Lead Counsel's retained accounting expert, who evaluated the accuracy of Defendants' representations and accounting treatments.  Following this two-day presentation, the Parties engaged in a three-day mediation.[5]  On the third day of the mediation, the Parties were able to reach a basic framework for the resolution of the Action.  Over the following three weeks, the Parties bargained over the terms of the various settlement documents and a comprehensive due diligence process so that Lead Plaintiffs and Lead Counsel could confirm the accuracy of Defendants' representations at the two-day presentation.

Lead Plaintiffs ultimately agreed to the Settlement, subject to their right to conduct extensive due diligence.  The due diligence process included Lead Counsel's review and analysis of over 90,000 pages of documents produced by Defendants, and interviews of multiple senior FSAM and FSC officers, including FSAM's Chief Financial Officer (CFO), its Chief Investment Officer and its Co-President and Chief Compliance Officer.  The due diligence confirmed Lead Plaintiffs' and Lead Counsel's belief that the Settlement is in the best interests of the Settlement

---

which put its investment advisory contract with FSC at risk[]" and that "the Registration Statement falsely portrayed the credit quality of FSC's portfolio by failing to disclose that it had been negatively impacted by the degradation in credit quality of certain of its investments."  *Id.* at ¶5.

[5] Counsel for the action entitled *In re Fifth Street Finance Corp. Securities Litigation*, Case No. 15-cv-7759 (LAK) (S.D.N.Y.) and various derivative actions brought on behalf of Fifth Street Finance Corp. also attended the presentation and mediation.

Class.

While Lead Plaintiffs and Lead Counsel believe the merits of the case are strong, they recognize that the proposed Settlement represents a substantial and certain recovery of the Class's estimated damages (13% of the Settlement Class's estimated *maximum provable* damages)[6] and that continued litigation is not without risk.  Indeed, at the pre-mediation presentation, Defendants raised significant factual and legal arguments against liability and damages.  They also made clear that they were prepared to exhaust their limited insurance coverage defending the Action.

In light of what was learned as a result of their investigation, consultation with experts, and participation in the mediation process and post-mediation due diligence, Lead Plaintiffs and their counsel believe that the settlement represents an excellent result for the Settlement Class.   Accordingly, Lead Plaintiffs respectfully submit that the Court should authorize dissemination of notice of the proposed Settlement to members of the Settlement Class and schedule a Fairness Hearing to consider final approval of the proposed Settlement.

## II.   NOTICE SHOULD BE DISSEMINATED TO THE SETTLEMENT CLASS AS THE SETTLEMENT IS THE RESULT OF EXTENSIVE, ARM'S-LENGTH NEGOTIATIONS

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time and cost of prolonged litigation. *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 DLC, 2005 WL1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."); Newberg on Class Actions § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  Due to the presumption in favor of

---

[6] The Defendants would likely argue that Lead Plaintiffs are not entitled to recover damages stemming from declines in the Company's stock that occurred prior to any corrective disclosures.

settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).  More explicitly, the Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981).

At this stage, the Court's function is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citation omitted). This requires only "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) (citation omitted).  In making this determination, a court considers both the "'negotiating process leading up to the settlement, *i.e*., procedural fairness, as well as the settlement's substantive terms, *i.e*., substantive fairness.'" *Platinum & Palladium*, 2014 WL 3500655, at *11 (citation omitted).  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval," the Court should permit the notification of the proposed settlement to the class to proceed. *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (citation omitted); *accord Platinum & Palladium*, 2014 WL 3500655, at *11.

As demonstrated below, the Court should approve notice of the proposed Settlement to the putative Settlement Class because the Settlement is both procedurally and substantively fair.

### A.   The Settlement Resulted from Arm's-Length Negotiations Conducted by Well-Informed and Experienced Counsel

The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator like Judge Weinstein support the conclusion that the Settlement is fair and was achieved free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009) (finding "no reason to doubt that the Settlement is procedurally fair" when "negotiations were conducted with the assistance of Judge Weinstein, a highly regarded mediator with extensive experience in securities litigation"); *see also Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012) (approving settlement and describing Judge Weinstein as "a nationally-recognized and highly-respected mediator"), *aff'd sub nom. Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013).   Moreover, courts routinely give weight to the parties' judgment that the settlement is fair and reasonable.  *See Palacio v. E*TRADE Fin. Corp.*, No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419, at *2 (S.D.N.Y. June 22, 2012).

Here, the proposed Settlement is presumed fair as it was achieved only after a comprehensive factual investigation, arm's-length negotiation during a multi-day mediation under the auspices of an experience mediator, and weeks of further negotiation.  Prior to the three-day mediation with Judge Weinstein, Lead Counsel had already conducted a substantial factual investigation, filed an extensive amended Complaint, and attended a two-day presentation where Defendants outlined their factual and legal defenses.  During the in-person mediation sessions, Lead Counsel and attorneys for Defendants, as well as representatives of Defendants' insurance companies, extensively discussed the merits of the claims and defenses and the relief

available to the Settlement Class.  While the Parties were able to enter into a term sheet outlining the potential resolution of the Action at the mediation, thereafter the Parties extensively negotiated the terms and precise wording of the Settlement Agreement, the long-form and summary notices, the Claim Form, a Supplemental Agreement, as well as drafts of the Notice Order, the Order Approving Class Action Settlement, the Final Judgment, and a Confidentiality Agreement governing the due diligence process.

As evidenced by the arm's-length and adversarial mediation and negotiation process, there was no collusion between the parties in reaching the proposed Settlement.  All counsel vigorously advocated the interests of their respective clients and devoted a considerable amount of time, effort, and resources to securing the terms of the Settlement.  The result of these hard-fought negotiations was a true compromise, based on each side's recognizing and balancing the potential risks and rewards of continued litigation. *See Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *12 (S.D.N.Y. March 24, 2014) ("the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982)).

It is also important to recognize that Lead Plaintiffs were represented by attorneys who are highly experienced in complex litigation and extremely familiar with the legal and factual issues presented by this case.  *See* Docket Entry No. 17, Exhibit D.  In Lead Counsel's view, the Settlement is an excellent result for the Settlement Class, especially when juxtaposed against the many potential obstacles to recovery in this Action.  Among the hurdles faced by Lead Plaintiffs were highly skilled defense counsel, and the applicable heightened pleading standards.  *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and

smaller over the years by judicial decree and congressional action."). Prevailing on a motion to dismiss is not a given, as demonstrated by the fact that a significant number of securities cases are dismissed at the outset.[7] Nor do the risks end at the pleading stage. Lead Plaintiffs still faced the substantial burdens of a class certification motion, summary judgment motions, trial and likely appeals – a process which could possibly extend for years and might lead to a smaller recovery, or no recovery at all. Indeed, even prevailing at trial would not have guaranteed a recovery larger than the $9.25 million Settlement.[8] Based on these risks, among many others, Lead Counsel fully support the Settlement. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

The proposed Settlement is also supported by the Court-appointed Lead Plaintiffs. The Lead Plaintiffs suffered the largest financial loss of any lead plaintiff movants, include an extremely sophisticated investor,[9] have supervised this litigation from inception and recommend that the Settlement be approved. The fact that they support the Settlement further militates in favor of approval. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007

---

[7] In a study of securities class actions resolved during 2015, approximately 47% were dismissed. *See* Svetlana Starykh & Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review, Record Number of Cases Being Filed Faster than Ever with the Shortest Alleged Class Period* at 21, Figure 19 (NERA Jan. 25, 2016).

[8] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following jury verdict in plaintiff's favor on liability, district court granted defendants' motion for judgment as matter of law because there was insufficient evidence to support finding of loss causation), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

[9] Kieran Duffy has over thirty years of Wall Street experience, was a member of the American Stock Exchange and the Chicago Board Options Exchange, and was a principal at numerous brokerage houses during his career.

WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("under the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness . . . .  Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.'") (citation omitted).

Given that the Settlement is the product of an arm's-length negotiation involving the participation of an experienced mediator, has been approved by the lead plaintiffs and was entered into by experienced and informed counsel, the Court should permit the notification of the proposed Settlement to the Class to proceed.  *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) ("This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations and, ultimately, with the assistance of Judge Daniel Weinstein, one of the nation's premier mediators in complex, multi-party, high stakes litigation."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

### B.    The Settlement Falls Within the Range of Possible Approval

"The determination of a reasonable settlement is not susceptible to mathematical precision."  *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, at *9 (E.D. Mich. May 20, 2013).  Rather, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).  Thus, the adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in

the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

Here, the proposed Settlement provides for a cash payment of $9.25 million, approximately 13% of the Settlement Class's estimated maximum provable damages.  This is more than many courts consider to be a "typical" recovery in a securities class action.  *See, e.g.*, *In re Giant Interactive Grp, Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding settlement representing recovery of approximately 6.25% of estimated damages to be "at the higher end of the range of reasonableness of recovery in class actions securities litigations"); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) ("the more typical recovery rate in class actions is between 5% and 6%") (citing *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Penn. 2001), which cites a 1999 study showing that securities class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses").

Additionally, while Lead Plaintiffs believe that the claims asserted against Defendants had merit, they also recognize that the Action presented a number of significant risks to establishing both liability and damages. As amply demonstrated in their two day pre-mediation presentation, Defendants had strong defenses to liability, including serious factual and legal arguments supporting their claim that: (i) the registration statement was not false; (ii) the Company had conducted adequate due diligence with respect to FSC's investment portfolio; (iii)

the alleged misrepresentations and omissions were not material because they only involved four of FSC's many assets; (iv) many of the allegations with respect to FSC's accounting were actually non-actionable, subjective judgment calls that FSC had fully disclosed; and (v) in any event, FSC had utilized appropriate accounting procedures.  Defendants also had substantial negative causation arguments regarding damages and had made clear that they believed that damages in this case were minimal, if they existed at all.

In sum, the Parties disagreed on numerous complex issues of fact and law.  While Lead Plaintiff and Lead Counsel believe that this case has substantial merit and that they had significant responses to each of Defendants' arguments, it is nevertheless true that Defendants had serious defenses that, if successful, would have resulted in the class's recovering far less than the proposed Settlement or nothing at all.  In the context of these risks, Lead Plaintiff and Lead Counsel believe that the Settlement is an excellent result for the Settlement Class.

## III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A. The Proposed Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(A) and 23(B)(3)

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014); *Marsh & McLennan*, 2009 WL 5178546, at *8.  Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012) (quoting *In re Giant Interactive*, 279 F.R.D. at 158).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b).  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  However,

the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

As demonstrated below, the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and Rule 23(b)(3).

### 1.       The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

### a)       The Settlement Class Members are too Numerous to be Joined

The first element of the four-part threshold for class certification requires that "the class [be] so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007).   In this Circuit, numerosity is presumed when a class consists of 40 or more members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009).  "While 'a precise quantification of [the] class is not required, some evidence . . . or [a] reasonabl[e] estimate [of] the number of class members' must be provided."  *Bourlas*

*v. Davis Law Assocs.*, 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006) (ellipses and alterations in original).   In making this determination, "the court may 'make some common sense assumptions' and 'rely on reasonable inferences drawn from the available facts.'"   *Id.* at 351. Consequently, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period."   *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).

The Settlement Class easily satisfies the numerosity requirement, as there were six million shares offered in the IPO, all of which are alleged to be damaged and are covered by this Action.   Thus, while the precise number of Settlement Class Members cannot be identified with specificity at this time, it is likely to be at least in the hundreds, if not thousands.   Accordingly, the Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied.

### b)   There are Common Questions of Law and Fact

Rule 23(a)(2) requires "questions of law or fact common to the class."   Fed. R. Civ. P. 23(a)(2).   Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions."   *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Here, as alleged in the Complaint, common questions include: whether Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") were violated by Defendants as alleged by Lead Plaintiffs; whether statements issued by FSAM in connection with the IPO

negligently omitted and/or misrepresented material facts about the business and prospects of FSAM; and, whether the putative class suffered damages and, if so, what is the proper measure of damages.  In the context of a Settlement Class, additional common questions include whether the Proposed Settlement is fair, reasonable and adequate and, thus, should be approved.  Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

c)    **Lead Plaintiffs' Claims are Typical of Those of the Settlement Class**

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Cent. States*, 504 F.3d at 245; *accord Pfizer*, 282 F.R.D. at 44; *Sadia*, 269 F.R.D. at 304-05.  "Typical" does not mean "identical."  *Marsh & McLennan*, 2009 WL 5178546, at *10.  The critical question is whether the proposed class representatives and the class can point to a "common course of conduct" by defendants to support a claim for relief.  Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct."  *Id.*; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, the alleged injuries to Lead Plaintiffs and the other members of the Settlement Class are attributable to the same alleged course of conduct by Defendants and the same

allegedly misleading Registration Statement, and liability for this conduct is predicated on the same legal theories. Specifically, Lead Plaintiffs allege that they, like the rest of the Settlement Class, were damaged by Defendants' allegedly false and misleading statements in violation of the Securities Act. As such, Lead Plaintiffs "have the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006). The typicality requirement is, therefore, satisfied. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

> ### d)      Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Finally, Rule 23(a)(4) requires that the class representative must "fairly and adequately protect the interests of the class." This inquiry focuses "on uncovering 'conflicts of interest between named parties and the class they seek to represent.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Amchem*, 521 U.S. at 625). Adequacy of representation is measured by two standards: (i) whether the claims of the proposed class representatives conflict with those of the class; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro*, 2014 WL 1224666, at *15. First, there is no antagonism or conflict of interest between Lead Plaintiffs and the proposed Settlement Class. Lead Plaintiffs and Settlement Class Members purchased FSAM common stock pursuant and/or traceable to the Registration Statement and they were all injured by the same alleged materially false statements and omissions. If Lead Plaintiffs were to prove their claims at trial, they would

also prove the Settlement Class's claims.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).  Thus, the interests of Lead Plaintiffs and the other members of the Settlement Class are aligned, and they share the common objective of maximizing their recovery from Defendants.  *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citing *Drexel*, 960 F.2d. at 291); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) ("named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments").

Second, Lead Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel.  Lead Counsel, Glancy Prongay & Murray LLP ("GP&M") has extensive experience and expertise in the field of class action and securities litigation. Docket Entry No. 17, Exhibit D (firm resume).  For more than two decades, the firm has been appointed as lead or co-lead counsel in complex securities class actions throughout the country and has achieved numerous significant recoveries for its clients and class members.  *See Id*.  Lead Counsel has expended and will continue to commit adequate resources to ensure that the Settlement Class is properly represented in the Action.  Accordingly, Rule 23(a)(4) is satisfied.

### 2.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed Settlement Class satisfies these requirements.

a)  **Common Legal and Factual Questions Predominate**

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class."  *Veeco*, 235 F.R.D. at 240.  "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues."  *Id*.  Indeed, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification."  *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010); *Sykes v. Mel S. Harris and Assocs. L.L.C.*, 780 F.3d 70, 88 (2d Cir. 2015).  Thus, "if the liability issue is common to the class, common questions are held to predominate over individual questions."  *Marsh & McLennan*, 2009 WL 5178546, at *11.  This "test [is] readily met in certain cases alleging . . . securities fraud."  *Amchem*, 521 U.S. at 625.

Here, Lead Plaintiffs allege that Defendants, in connection with FSAM's IPO, made materially false and misleading statements in the Company's Registration Statement, in violation of Sections 11, 12(a)(2), and 15 of the Securities Act.  These allegations give rise to factual and legal issues common to all Class members, including whether FSAM's Registration Statement was materially false and misleading and the proper measure of damages.  Each of these issues is susceptible of generalized proof and, accordingly, the predominance requirement of Rule 23(b)(3) is satisfied.

### 3.    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation:  "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *See* Fed. R. Civ. P. 23(b)(3).

Here, there is no evidence that putative class members desire to bring separate individual actions, and the Parties are unaware of any individual securities fraud litigation involving the same issues.  Furthermore, it is desirable to concentrate the claims in this Court as FSAM securities were traded on the NASDAQ Stock Exchange, which is located in this district, and the Court is already familiar with the factual and legal issues in the case.  In fact, this case was transferred to this Court because of its relationship to securities class actions pending in this forum against FSC (*In re Fifth Street Finance Corp. Securities Litigation*, No. 15-cv-7759 (LAK) (S.D.N.Y.)).  Finally, since this is a request for class certification only for the purposes of settlement, the Court need not inquire as to whether the case, if tried, would present management problems.  *See Amchem*, 521 U.S. at 620.

In sum, the proposed Settlement Class meets all of the requirements of Rule 23(a) and 23(b)(3) and should be preliminarily certified for purposes of the Settlement.

### B.    The Court Should Appoint Lead Counsel as Counsel for the Settlement Class

A court that certifies a class must also appoint class counsel.  *See* Fed. R. Civ. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions,

other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

GP&M was appointed Lead Counsel by Order dated April 22, 2016 (*see* Docket Entry No. 35), and has done considerable work identifying and investigating potential claims in this matter, as evidenced by the 59-page Amended Class Action Complaint for Violations of the Federal Securities Laws Lead Plaintiffs filed on June 13, 2016.  Docket Entry No. 42.  The firm's significant knowledge of the securities laws may be gleaned by its work in this case, as well as its long history of successfully prosecuting securities class actions in this and other courts throughout the country.  Docket Entry No. 17, Exhibit D.  Finally, GP&M has devoted substantial time, effort and resources to the prosecution of this Action.

For these reasons, among others, Lead Plaintiffs respectfully request that the Court appoint GP&M to serve as Class Counsel.

## IV.   THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE PROOF OF CLAIM AND RELEASE FORM ARE APPROPRIATE

### A.   The Scope of the Notice Program Is Adequate

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement.  Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, the court should look to its reasonableness.  *Merrill Lynch*, 2007 WL 313474, at *8.  It is clearly established that "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."  *Id.* (citing *Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988)).  Notice programs, such as the one proposed

here, which include individual notice by first-class mail to all class members who can be reasonably identified, supplemented by additional publication and internet notice, have been approved as adequate under the Due Process Clause and Rule 23 in a multitude of class action settlements.[10]   *See, e.g.*, *Aeropostale*, 2014 WL 1883494, at *2; *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *11 (E.D.N.Y. Apr. 19, 2007) (approving proposed notice program where notice was mailed to shareholders of record listed on transfer records and to "more than 2,500 of the largest banks, brokerages, and other nominees"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (approving proposed notice and noting that the mailing of notice to each identifiable class member's last known address is "a procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996).[11]   Lead Plaintiffs respectfully submit that the proposed notice program, as set forth in the Notice Order, is adequate and should be approved by the Court.

> **B.    The Proposed Form of Notice Comports With the Requirements of Due Process, the Private Securities Litigation Reform Act of 1995, and Rule 23 and Is the Same as or Similar to Forms of Notice Routinely Approved by Courts In This Jurisdiction**

The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder."   *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962(RCC), 2006

---

[10] In addition to the mailing of the Individual Notice, Lead Counsel propose publication of the Publication Notice once in each of *The Wall Street Journal* and *Investor's Business Daily*, as well as on *PRNewswire*.

[11] Lead Plaintiffs request that the Court approve retention of A.B. Data, Ltd., as the claims administrator for this case.  Lead Counsel negotiated competitive and favorable terms with A.B. Data, and A.B. Data has successfully administered numerous complex securities class action settlements, including *Aeropostale*, 2014 WL 1883494, at *2 ($15 million settlement); and *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 CIV. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008) ($16.5 million settlement).

WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006); *see also Weinberger*, 698 F.2d at 70 (the settlement notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings'") (citation omitted).  Specifically with respect to cases filed under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), notices of settlements must state: (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis; (ii) the average amount of damages per share that would be recoverable in the event plaintiff prevailed; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (iv) the name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to the class; (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) such other information as may be required by the court.  *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA.  *See* Notice, Exhibit D to the Settlement Agreement.  The information is also provided in a format that is accessible to the reader.  In addition, the Notice advises recipients that they have the right to exclude themselves from the Settlement, or to object to any aspect of the Settlement.  Furthermore, the Notice provides recipients with the contact information for the claims administrator and Lead Counsel.  Finally, the proposed format is the same as or similar to formats that have been approved by many other courts in this Circuit.  *See, e.g.*, *Aeropostale*,

2014 WL 1883494, at *2; *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D. Conn. 2010).

Therefore, Lead Plaintiffs respectfully submit that the Court should approve the form of notice.

## V.     THE PROPOSED SETTLEMENT SCHEDULE

The Court's entry of the proposed Notice Order would, among other things: (i) provisionally certify, for settlement purposes, this Action as a class action; (ii) direct notice of the proposed Settlement to all members of the Settlement Class; and (iii) schedule the Fairness Hearing to consider whether the proposed Settlement should be approved as being fair, reasonable and adequate.  Additionally, the Notice Order sets a proposed schedule for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims and/or objecting to or opting out of the proposed Settlement or opting out of the Settlement Class.   The schedule provided in the Notice Order is driven by the date selected for the Fairness Hearing, as follows:

| | |
|---|---|
| Fairness Hearing<br><br>(Notice Order ¶5) | To be determined by the Court.  (The Parties propose that the hearing be set a minimum of 100 days after entry of the Notice Order so that there is time for the CAFA Notice process.) |
| Notice Mailed to Settlement Class Members (Notice Order ¶10) | At least sixty (60) days prior to the deadline for Class Members to object to the Settlement (the "Notice Date") |
| Summary Notice published<br><br>(Notice Order ¶11) | Within ten (10) days of the Notice Date |

| Deadline for Settling Parties to file papers in support of final approval and application for fees and expenses<br><br>(Notice Order ¶34(a)) | 35 days prior to the Fairness Hearing |
| --- | --- |
| Deadline for Objections to the Settlement, the proposed Plan of Allocation, and the application for attorneys' fees and expenses<br><br>(Notice Order ¶27) | 21 days prior to the Fairness Hearing |
| Deadline for Requesting Exclusion from the Settlement<br><br>(Notice Order ¶22) | 21 days prior to the Fairness Hearing |
| Deadline for Submitting Claim Forms<br><br>(Notice Order ¶19(a)) | 120 days following the Notice Date |
| Deadline for Settling Parties to file papers in further support of final approval and counsel's application for fees and expenses<br><br>(Notice Order ¶34(c)) | 7 days prior to the Fairness Hearing |

## VI.    CONCLUSION

In light of the foregoing, Lead Plaintiffs respectfully request that the Court enter the proposed Notice Order.

23

Respectfully submitted,

DATED: September 23, 2016     **GLANCY PRONGAY & MURRAY LLP**

By:   _s/ Casey E. Sadler_
Lionel Z. Glancy
Robert V. Prongay
Peter A. Binkow
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
info@glancylaw.com

- and -

**GLANCY PRONGAY & MURRAY LLP**
Lesley F. Portnoy (LP-1941)
122 East 42nd Street, Suite 2920
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

*Lead Counsel for Lead Plaintiff Kieran Duffy
and Susan Duffy and for the Class*

**PROOF OF SERVICE BY ELECTRONIC POSTING PURSUANT TO SOUTHERN
DISTRICT OF NEW YORK ECF AND LOCAL RULES AND BY MAIL
ON ALL KNOWN NON-REGISTERED PARTIES**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On September 23, 2016, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 23, 2016, at Los Angeles, California.

*s/ Casey E. Sadler*
Casey E. Sadler

# Mailing Information for a Case 1:16-cv-01941-LAK Linde et al v. Fifth Street Asset Management, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Eric James Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Peter Arthur Binkow**
  info@glancylaw.com,pbinkow@glancylaw.com

- **Sean K. Collins**
  sean@neinsurancelaw.com

- **Ralph Carmine Ferrara**
  rferrara@proskauer.com,sjohnson@proskauer.com,LSOSDNY@proskauer.com

- **Lionel Z. Glancy**
  lglancy@glancylaw.com,csadler@glancylaw.com,pbinkow@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Christopher J. Keller**
  ckeller@labaton.com,drogers@labaton.com,ElectronicCaseFiling@labaton.com

- **Lesley Frank Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,csadler@glancylaw.com,echang@glancylaw.com

- **Jonathan E. Richman**
  jerichman@proskauer.com,LSOSDNY@proskauer.com,courtalert@dl.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com,info@glancylaw.com

- **David C. Shufrin**
  dshufrin@hssklaw.com

- **Michael Walter Stocker**
  mstocker@labaton.com,electroniccasefiling@labaton.com

- **Jonathan P. Whitcomb**
  jwhitcomb@dmoc.com

- **Andrew M. Zeitlin**
  azeitlin@goodwin.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)